## MARINO, TORTORELLA & BOYLE, P.C.

ATTORNEYS AT LAW

KEVIN H. MARINO
JOHN D. TORTORELLA
JOHN A. BOYLE
————
EREZ J. DAVY*
MICHAEL J. FLYNN

437 SOUTHERN BOULEVARD
CHATHAM, NEW JERSEY 07928-1488
TELEPHONE (973) 824-9300
FAX (973) 824-8425
www.khmarino.com

875 THIRD AVENUE, 21ST FLOOR
NEW YORK, NEW YORK 10022
TELEPHONE (212) 864-7200
e-mail: kmarino@khmarino.com
*OF COUNSEL

August 15, 2025

**VIA ECF**

Honorable Justin T. Quinn, U.S.M.J.
United States District Court, District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Room 2020
Trenton, NJ 08608

  Re: *City of Warwick Ret. Sys. v. Catalent, Inc., et al.*, Case No. 3:23-cv-1108-ZNQ-JTQ

Dear Judge Quinn:

  Pursuant to Section 6 of your Honor's Civil Case Management Order, Defendants Catalent, Inc. ("Catalent"), John Chiminski, Alessandro Maselli, and Thomas Castellano respectfully submit this letter to request that the Court compel Lead Plaintiffs SEB Investment Management AB ("SEB") and Public Employees' Retirement System of Mississippi ("MPERS") to answer Defendants' second set of interrogatories (the "Interrogatories") by September 15, 2025.

  The Interrogatories seek basic factual information—namely, the identification of what was revealed publicly to the market on the corrective disclosure dates that Lead Plaintiffs alleged in the complaint caused Catalent's stock price to drop, causing Lead Plaintiffs' purported damages. Lead Plaintiffs should have known this information as early as September 15, 2023, when they filed their complaint. ECF No. 47. Defendants will be prejudiced if they do not have responses to the Interrogatories prior to their September 30, 2025 deadline to respond to Lead Plaintiffs' motion for class certification.

**A. Relevant Procedural History**

  On May 8, 2025, Defendants served interrogatories intended to help Defendants understand what information Lead Plaintiffs contend was revealed in the alleged corrective disclosures that

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Justin T. Quinn, U.S.M.J.
August 15, 2025—Page 2

supposedly corrected Defendants' purportedly false or misleading statements. Specifically,

Defendants asked the following Interrogatories:

> **Interrogatory No. 4**: For each allegedly misleading SOX Certification, identify all information disclosed to the market that revealed the representation was inaccurate or misleading and explain how such information revealed the statement's inaccuracy.

> **Interrogatory No. 5**: Identify all information that was disclosed to the market that revealed that each of the following representations was inaccurate or misleading and explain how such information revealed the statement's inaccuracy:

> a. Defendants Maselli stated: "[W]e have not experienced any slowdown in our commercial activity or any impact there. And in fact, I can confirm that the demand and the requests for Catalent's services is as high as ever been…" Defendant Castellano added: "We said from the start that this was not a material financial contributor or impact for the company."

> b. Catalent's 2022 10-K stated: "During fiscal 2022, we did not identify any significant risk, delay, or concern that had a substantial effect on such delivery, in part because of our adoption of various procedures to minimize and manage supply disruptions to our ongoing operations, including through business continuity plans and careful attention to inventory levels to assure supply of needed inputs."

> c. Catalent's 2022 10-K stated: "We believe that our sites and equipment are in good condition, are well maintained, and are able to operate at or above present levels for the foreseeable future, in all material respects."

> **Interrogatory No. 6**: For each Corrective Disclosure, identify the alleged misrepresentation(s) that were corrected, in full or in part, by the Corrective Disclosure and explain how the alleged misrepresentation(s) were corrected, in full or in part, by the Corrective Disclosure.

On June 9, Lead Plaintiffs served their responses and objections. Lead Plaintiffs objected

that the Interrogatories are contention interrogatories, arguing they "seek[] information or facts

that support specific legal contentions made by Lead Plaintiffs." Citing Local Rule 33.1(d),[1] Lead

Plaintiffs stated that they did not need to respond to the Interrogatories at this time and would

---

[1] Local Rule 33.1(d) provides that "[c]ontention interrogatories shall not be served until 60 days prior to the close of fact discovery unless otherwise permitted by the Court."

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Justin T. Quinn, U.S.M.J.
August 15, 2025—Page 3

amend their responses at the "appropriate time."

In a July 1 letter, Defendants outlined the deficiencies with Lead Plaintiffs' responses and objections. First, Defendants explained that the Interrogatories are not contention interrogatories because they do not ask Lead Plaintiffs whether they are making a particular contention but rather seek clarification of Lead Plaintiffs' allegations. Second, Defendants stated that, even treating the Interrogatories as contention interrogatories, it is appropriate for Lead Plaintiff to answer them because substantial discovery has been conducted to date. Defendants then asked Lead Plaintiffs to confirm by July 9 "(i) whether Lead Plaintiffs intend to rest on their R&Os to Defendants' second set of interrogatories and (ii) if so, whether Lead Plaintiffs will, at a minimum, supplement their responses to Defendants' second set of interrogatories on or before September 15, 2025" (which, as of the date of Defendants' letter, was 30 days before the close of fact discovery).

On July 23, Lead Plaintiffs responded, largely reiterating the same objections but citing the modified discovery schedule to justify their refusal to provide the requested discovery. The parties met and conferred via video conference on July 31, but remained at an impasse.

On August 5, Defendants advised Lead Plaintiffs that "[g]iven our upcoming deadline to oppose class certification, Defendants intend to seek relief from the Court on this issue this week to ensure adequate time for briefing and oral argument. To that end, please let us know by noon ET on Friday whether Plaintiffs stand on their objections to Defendants' second set of interrogatories." On August 8, Lead Plaintiffs wrote, "[u]pon further review, we will be providing an additional written response relating to Defendants' second set of interrogatories." That same day, Defendants sought confirmation that Lead Plaintiffs will "provide fully responsive answers to Defendants' second set of interrogatories and that Lead Plaintiffs will do so by Friday, August

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Justin T. Quinn, U.S.M.J.
August 15, 2025—Page 4

15" and, hearing no response, followed up on August 12. On August 14, Lead Plaintiffs served a short letter that does not answer the Interrogatories. The parties remain at an impasse.

**B.      The Interrogatories Are Not Contention Interrogatories**

The Interrogatories "seek specific factual support for Plaintiffs' allegations" and thus "do not fit within the definition of contention interrogatories." *In re Auto. Refinishing Paint Antitrust Litig.*, 2006 WL 1479819, at *4 (E.D. Pa. May 26, 2006). Specifically, the Interrogatories seek information that forms the basis for Lead Plaintiffs' allegations pertaining to loss causation—i.e., what disclosures Lead Plaintiffs claim are corrective and what purportedly fraudulent statements those corrective disclosures are said to correct. *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 228, 230 (E.D. Pa. May 12, 2014) (finding the "interrogatories are not truly 'contention' interrogatories" because they "seek facts on which Plaintiffs base their claims"). Lead Plaintiffs own objections seem to agree: "Lead Plaintiffs further object to this Interrogatory as it ***seeks information or facts that support*** specific legal contentions made by Lead Plaintiffs." (emphasis added). And "the words 'contention' or 'contend' do not appear anywhere in the body of the [I]nterrogatories." *U.S. ex rel. Hunt v. Merck-Medco Managed Care, LLC*, 2005 WL 1971885, at *2 (E.D. Pa. Aug. 15, 2005).

To avoid answering the Interrogatories, Lead Plaintiffs mischaracterize them, claiming that Defendants seek "all information that supports the fundamental elements of [Lead] Plaintiffs' claims, such as falsity, materiality[,] and loss causation." Not so. The Interrogatories are not that far-reaching; indeed, the Interrogatories only concern loss causation and price impact, not falsity. Interrogatory No. 4, for example, seeks "all information disclosed to the market that revealed the representation was inaccurate or misleading"; it does not seek all information that makes the

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Justin T. Quinn, U.S.M.J.
August 15, 2025—Page 5

misstatements false or misleading.  This is a significant distinction because Lead Plaintiffs should

have known by September 15, 2023, when they filed their complaint, what the purported corrective

disclosures are and which statements they purportedly correct.

Because the Interrogatories do not ask Lead Plaintiffs whether they are making a particular

contention, but rather seek to discover the factual basis of Lead Plaintiffs' allegations, the Court

should find that the Interrogatories do not constitute contention interrogatories.

**C.      Even If The Interrogatories Are Contention Interrogatories, The Court Should Require Lead Plaintiffs To Answer Them By September 15, 2025**

Even if the Court were to treat the Interrogatories as contention interrogatories, it has broad

discretion—under Local Rule 33.1(d) and pursuant to its authority to manage discovery, *see United*

*States v. Washington*, 869 F.3d 193, 220 (3d Cir. 2017)—to require Lead Plaintiffs to answer the

Interrogatories by September 15, 2025.  This District permits early answers to contention

interrogatories where those answers "will contribute meaningfully to clarifying the issues in the

case, narrowing the scope of the dispute, setting up early settlement discussions, or that such

answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56." *Conopco,*

*Inc. v. Warner-Lambert Co.*, 2000 WL 342872, at *4 (D.N.J. Jan. 26, 2000).  Answers to the

Interrogatories are appropriate at this time.

*First*, Lead Plaintiffs' answers to the Interrogatories will contribute meaningfully to the

prompt resolution of critical issues in this case.  Their answers will sharpen issues related to class

certification and simplify discovery related to a key element of Lead Plaintiffs' claims.  *Santos v.*

*Carrington Mortg. Servs.*, 2016 WL 7018523, at *2 (D.N.J. Nov. 30, 2016) ("[P]rompt and

efficient discovery serves judicial economy just as the narrowing of issues favors settlement

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Justin T. Quinn, U.S.M.J.
August 15, 2025—Page 6

discussions or critical motions practice[.]”).

Lead Plaintiffs’ responses to the Interrogatories are particularly relevant to price impact arguments at the class-certification stage. *In re Celgene Corp. Sec. Litig.*, 2020 WL 8870665, at *10 (D.N.J. Nov. 29, 2020) (“[P]rice impact is shown if, when the truth is revealed, the artificial inflation in the stock price (maintained as a result of a repeated misrepresentation) dissipated and the price of the stock fell.”). Specifically, to analyze back-end impact, Defendants need to know what it is Lead Plaintiffs claim was revealed to the market via the alleged corrective disclosures. *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 123 (2021) (noting that “back-end price drop” is not equal to “front-end inflation”—and therefore, not indicative of price impact— where “there is a mismatch between the [genericness of the] contents of the misrepresentation and the corrective disclosure”). Indeed, if there was no new, corrective information revealed to the market or the allegedly corrective information had no impact on the Catalent’s stock price, Defendants can rebut the presumption of reliance. Before such analysis can occur, Defendants need clarity from Lead Plaintiffs regarding what corrective information they allege was revealed to the market on the corrective disclosure dates. Given that Defendants’ opposition to Lead Plaintiffs’ motion for class certification is due September 30, a response to the Interrogatories by September 15 is appropriate, and Defendants will be prejudiced if they have to oppose Lead Plaintiffs’ motion without responses to the Interrogatories.

*Second*, the Court need not delay Lead Plaintiffs’ answers to the Interrogatories because the policy rationale for delaying answers to contention interrogatories—namely, to allow time for discovery before requiring parties to take legal positions—is not present here. It is not clear what additional discovery Lead Plaintiffs could take that would be relevant to the Interrogatories. The

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Justin T. Quinn, U.S.M.J.
August 15, 2025—Page 7

Interrogatories seek information about what was revealed publicly to the market on the corrective disclosure dates that Lead Plaintiffs pled in their complaint. In contrast, the Interrogatories do *not*, for example, ask Lead Plaintiffs to identify all evidence showing the alleged misstatements are false or misleading—such a request, of course, requires discovery. Because additional discovery will not alter Lead Plaintiffs' response, there is no reason to delay Lead Plaintiffs' answers to the end of fact discovery.

Further, in their July 23 letter, Lead Plaintiffs did not identify any discovery they need to answer the Interrogatories. And, tellingly, when Defendants asked during the parties' July 31 meet and confer what discovery Lead Plaintiffs believe they need in order to answer the Interrogatories, Lead Plaintiffs were unable to provide a response, claiming the question requires Lead Plaintiffs to "speculate." In light of this, Lead Plaintiffs' claim that they need to first conduct additional discovery before they can answer the Interrogatories is unpersuasive.[2]

For this reason, cases stating that "responses to contention interrogatories will do more to advance litigation when the parties are in possession of facts and knowledge obtained from a meaningful amount of document discovery and witness testimony," *e.g.*, *United States v. Bayer Corp.*, 2020 WL 13189534, at *3 (D.N.J. Apr. 16, 2020), are inapposite. Indeed, this case stands in stark contrast to those in which contention interrogatories seek information about a plaintiff's

---

[2] In any event, the parties have engaged in substantial discovery to date. Defendants have produced 377,364 documents, and Lead Plaintiffs have produced 1,005 documents. The parties have sought discovery from numerous third parties, including but not limited to thirteen confidential witnesses cited in the amended complaint; Lead Plaintiffs' five investment managers; the U.S. Food and Drug Administration, Ernst & Young LLP; Sarepta Therapeutics, Inc.; PricewaterhouseCoopers LLP; Novartis Gene Therapies f/k/a AveXis; Lachman Consultant Services Inc.; and eight former employees of Catalent. Defendants have also taken the deposition of Lead Plaintiffs on July 16, July 30, and August 6 and Lead Plaintiffs' class certification expert on August 8.

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Justin T. Quinn, U.S.M.J.
August 15, 2025—Page 8

legal theory that by the theory's very nature—such as a plaintiff's damages theory—requires fulsome fact discovery and expert discovery. *See MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, 2022 WL 20359241, at *16 (D.N.J. Feb. 8, 2022) (contention interrogatory requesting the amount of damages, how each item of the alleged damages will be calculated, and the identification of every document the plaintiff will rely on to support its alleged damages).

*Third*, Defendants are prejudiced by Lead Plaintiffs' failure to answer the Interrogatories because Defendants do not have other discovery tools at their disposal to get these answers. While "[a] party may make inquiries similar to contention interrogatories at a [Rule] 30(b)(6) deposition," *Yerkes v. Weiss*, 2019 WL 12056384, at *6 n.2 (D.N.J. Sept. 30, 2019), Lead Plaintiffs' Rule 30(b)(6) designees refused to provide substantive responses to Defendants' questions regarding the alleged corrective disclosures and instead deferred to counsel. Lead Plaintiff SEB's Rule 30(b)(6) designee, Ms. Caroline Rifall, answered "I would rely on counsel for that analysis" in response to questions concerning the alleged corrective disclosures.[3] Similarly, Lead Plaintiff MPERS's Rule 30(b)(6) designee, Ms. Laken Ryals, answered "I would have to rely on counsel and on our expert" in response to questions regarding the alleged corrective disclosures.[4] Further,

---

[3] *See* SEB 30(b)(6) Tr. at 265:14-266:12 ("Q. Did the disclosures described in those paragraphs from September 20th and 21st, 2022 reveal the falsity of any of the alleged misstatements that we just discussed? . . . A. I would rely on counsel for that. Q. Okay. And if I asked you how any of the disclosures on September 20th and 21st revealed the falsity of the statements SEB claims [are] false, would your answer be that you rely on counsel for that? A. Yes. . . . Q. And if I asked you those questions for each and every corrective disclosure that SEB has alleged in the amended complaint, would it be the same answer, that you rely on counsel for those facts? A. Correct.").

[4] *See* MPERS 30(b)(6) Tr. at 135:5-136:4 ("Q. So before the break we were talking about the first corrective disclosure that MPERS alleges in the amended complaint, right? A. Yes. Q. And I believe you told me you need the benefit of an expert opinion or expert testimony to tell me which specific alleged false statements that corrective disclosure corrected, right? A. Yes. Q. And if I asked you the same questions about all of the corrective disclosures that MPERS alleges in the

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Justin T. Quinn, U.S.M.J.
August 15, 2025—Page 9

during Lead Plaintiff MPERS's Rule 30(b)(6) deposition, counsel repeatedly objected to questions regarding Lead Plaintiffs' corrective disclosure allegations,[5] despite Lead "Plaintiffs' allegations in the Complaint in this Action, including the factual bases for the allegations in the Complaint" being one of the noticed Rule 30(b)(6) topics.  Thus, Lead Plaintiffs have blocked other avenues for seeking discovery on this topic.  *Cf. In re: Riddell Concussion Reduction Litig.*, 2016 WL 7365508, at *2 (D.N.J. Jan. 6, 2016) ("If defendants want to receive immediate answers [to the contention interrogatories] under oath they may question plaintiffs at their depositions.").

Further, contrary to Lead Plaintiffs' arguments, resolving the Interrogatories will not inappropriately lock Lead Plaintiffs into certain legal positions.  The fact that responses to contention interrogatories might not be fully fleshed out at the time they are answered is irrelevant because all that is required is that a party state the facts in its possession.  And "there should be some such facts from the outset of the litigation because" a party must "have a good faith basis for the assertions in the pleadings." *Livingston v. Berger*, 2022 WL 613277, at *4 (D.V.I. Mar. 1,

---

complaint, would your answer be the same? A. Yes. Q. You can't, sitting here today, tell me which corrective disclosures corrected or partially corrected which false statements that MPERS has alleged in the amended complaint? A. I would have to rely on counsel and on our expert."); *see also id.* at 134:11-18 (answering "I don't believe so but I would defer to counsel" regarding a question about the September 20, 2022 corrective disclosure).

[5] *E.g.*, MPERS 30(b)(6) Tr. at 122:21-123:3 ("Q. What new information does MPERS claim became public on September 20th, 2022 that related to quality control at Catalent? Ms. Fox: Objection. Ms. Ryals is not here to testify about loss causation issues."); *id.* at 123:11-17 ("Q. So that information that came out on September 20th, 2022 related to Catalent's Bloomington, Indiana facility; is that correct? Ms. Fox: Objection, calls for expert testimony, and that hasn't happened yet."); *id.* at 123:20-124:3 ("Q. And so which statements does MPERS claim were corrected or partially corrected by the disclosures on September 20th, 2022? Ms. Fox: Objection, calls for [] legal and expert testimony about loss causation for which Ms. Ryals is not here to testify about.").

MARINO, TORTORELLA & BOYLE, P.C.
ATTORNEYS AT LAW

Honorable Justin T. Quinn, U.S.M.J.
August 15, 2025—Page 10

2022).[6]  "While the facts may change or evolve as the parties engage in discovery, the Rules provide the opportunity—indeed the duty—to supplement responses as appropriate." *Id.* (citing Fed. R. Civ. P. 26(e)).

\*      \*      \*

For the foregoing reasons, Defendants respectfully request that the Court require Lead Plaintiffs to answer the Interrogatories by September 15, 2025.  Thank you for your consideration of this submission.

Respectfully submitted,

Kevin H. Marino

cc:  All counsel of record

---

[6] *See also Engage Healthcare Comm'cns, LLC v. Intellisphere, LLC*, 2017 WL 2371834, at \*11 (D.N.J. Feb. 10, 2017) ("[B]y virtue of Plaintiffs' Amended Complaint alleging violation of the Lanham Act, Plaintiffs have either explicitly, or by implication, asserted that each of these sixteen marks fall into one of the three protectable categories.  Defendants['] pending interrogatories now seek the factual basis [for that assertion]. . . . [I]t is simply not credible for Plaintiffs to [] assert that they 'are simply not in position to' respond to these interrogatories[.]").