# CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
### COUNSELLORS AT LAW

September 26, 2025

**VIA ECF**

Honorable Justin T. Quinn, U.S.M.J.
United States District Court, District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Room 2020
Trenton, NJ 08608

> Re:   *City of Warwick Ret. Sys. v. Catalent, Inc. et al.*, Case No. 3:23-cv-1108-ZNQ-JTQ

Dear Judge Quinn:

Pursuant to Section 6(a) of your Honor's Civil Case Management Order, Lead Plaintiffs respectfully request that the Court compel Defendants Catalent, Inc., John Chiminski, Alessandro Maselli, and Thomas Castellano to search for and produce responsive text, WhatsApp and other messages from their and the agreed-upon custodians' mobile devices, and use appropriate queries to identify such messages.

Text messages are an important form of discovery in modern litigation. *See, e.g.*, *We the Protesters, Inc. v. Sinyangwe*, 348 F.R.D. 175, 177 & n.1 (S.D.N.Y. 2024). Documents in discovery here—reflecting thousands of business-related text messages sent to or from the agreed-upon custodians on Catalent-issued devices—establish that messages from current and former Catalent employees are likely a significant source of discoverable information in this case. Nevertheless, Defendants refuse to search for messages from any but ***four*** custodians (Maselli, Castellano, Barbara Sambuco, and Wim Blendeman) because the other custodians they

September 26, 2025
Page 2

interviewed claimed they would not have texted substantively about business. Any texts on their phones are therefore irrelevant, Defendants insist. Beyond the deficiencies of Defendants' investigation (e.g., they did nothing to test or verify the custodians' representations about their messaging practices),[1] their assertion that all texts were merely logistical and thus irrelevant is meritless. It is both undercut by the documents herein (*see infra* §B)—which show multiple custodians messaging about substantive matters—and misplaced, as logistical or planning messages can plainly reveal relevant facts, such as participants, dates, topics discussed, and more.

Further problematic is the fact that, while text messages are often informal, with misspellings, typos, shorthand terms and emojis, Defendants used the same complex Boolean terms they applied to emails and eDocs to search for messages. Plaintiffs therefore seek an order compelling Defendants to search the agreed-upon custodians' mobile devices for text and WhatsApp messages using an appropriate search methodology, and produce all responsive messages without further delay.

## A.    RELEVANT BACKGROUND

In a May 12, 2025, Joint Status Report to the Court on discovery, Defendants stated that, in response to Plaintiffs' document requests, they had "agreed to conduct searches of [] the text messages for the custodians *who confirm* that they discussed

---

[1] Defendants have not stated which custodians they interviewed or when.

September 26, 2025
Page 3

Catalent business via text (including WhatsApp or other messaging phone applications) and whose phones are within Defendants' possession, custody, or control." Dkt. No. 106 at 2 (emphasis added).

The day prior, Defendants represented that the only custodian who fit the aforementioned criteria was Maselli, and that they "w[ould] produce responsive text messages" for him. On May 12, Defendants stated they had identified two other custodians "who may have responsive text[s]"—Sophia Percival and Sambuco—but were "considering whether their cell phones are in Catalent's possession, custody, or control" because they were no longer employees.[2] Three months later, Defendants informed Plaintiffs that: (i) Percival said "she would not have been communicating about substantive matters on her phone," and "any messages from the relevant time period" were destroyed "due to an automated deletion function";[3] and (ii) they would produce responsive messages from Sambuco.

On August 26, Plaintiffs learned that custodian Michael Riley—who Plaintiffs

---

[2] Percival and Sambuco were Catalent employees when this case began and a duty to preserve arose; their phones were within Catalent's control. *See Matter of Skanska USA Civ. Se. Inc.*, 2021 WL 4953239, at *3 (N.D. Fla. Aug. 5, 2021) (employers have control over current employees and business communications on their devices).
[3] "The principles of the standard reasonableness framework require a party to 'suspend its routine document retention/destruction polic[ies]" and ensure preservation, including suspension of auto-delete features on phones. *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 233 (D. Minn. 2019) ("It takes, at most, only a few minutes to disengage the auto-delete function on a cell phone.").

September 26, 2025
Page 4

had subpoenaed—also had potentially responsive text messages. Two days later, on August 28, Plaintiffs notified Defendants of text message deficiencies. *See* Ex. 1 at 1-2 (8/28/25 Ltr.) (pointing to documents showing that: (i) thousands of Catalent employees had Company-owned devices and used them to text, including at least ten custodians; (ii) Maselli texted with Castellano, Chief Accounting Officer Ricky Hopson, and other custodians about Catalent business; and (iii) other custodians regularly either said or were told to "text" about business matters).

On September 3, Defendants "identified potentially responsive Whats[A]pp messages from one additional custodian," Blendeman. In a meet and confer that day regarding Defendants' efforts to identify, preserve and produce mobile device data, Defendants were unable or refused to answer basic questions regarding: (i) which custodians had Catalent-issued devices; (ii) which devices were preserved; and (iii) whether any custodians' devices (besides Maselli's) were imaged at the outset of the litigation, or since, and when. *See* Ex. 2 (9/9/25 Ltr.) at 1-2. Plaintiffs noted concern about the adequacy of Defendants' investigation and search methods, and again requested Defendants conduct additional searches for messages. *See id.* at 6.

Defendants have maintained that they have no obligation to provide this information or search any other custodians' devices because the witnesses they interviewed stated they ***would not*** have texted "substantively" about work. *Id.* at 2. Defendants, however, apparently did little, if anything, to test or verify these

September 26, 2025
Page 5

assertions. *Id.* They did not, for example, collect, review, query, or sample any of the custodians' devices, or have custodians conduct supervised searches of their devices. Only where irrefutable evidence was presented indicating a custodian's representation was inaccurate would they inquire further—but Defendants insist that the evidence identified by Plaintiffs does not warrant such inquiry. *Id.* at 2-3.

On September 12, Defendants agreed "to conduct [an] additional investigation to confirm [Castellano's] prior representations" about messaging, but have not committed to search his devices, and still refuse to do so for any other custodians.

**B.    PLAINTIFFS ARE ENTITLED TO THE DISCOVERY OF RELEVANT TEXT MESSAGES**

Under Federal Rules of Civil Procedure ("FRCP") 26(b)(1) and 37(a)(3)(B)(iv), a party may move to compel the production of documents that are both (i) "relevant to any party's claim or defense" and (ii) "proportional to the needs of the case."[4] Once the party moving for discovery meets its "initial burden of proving . . . relevance," *Ford v. City of Pittsburgh*, 2015 WL 12777652, at *1 (W.D. Pa. Aug. 17, 2015), the burden shifts to the party opposing discovery to "show that the requested materials do not fall within the broad scope of relevance . . . or else are of such marginal relevance that the potential harm occasioned by discovery would

---

[4] At the discovery stage, courts "construe relevanc[e] broad[ly]." *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 344 F.R.D. 207, 215 (D.N.J. 2023).

September 26, 2025
Page 6

outweigh the ordinary presumption in favor of broad disclosure," *Clemens v. New York Cen. Mut. Fire Ins. Co.*, 300 F.R.D. 225, 227 (M.D. Pa. 2014).

"Text messages are an increasingly common source of relevant and often critical evidence in twenty-first century litigation." *We the Protesters*, 348 F.R.D. at 177 & n.1; *see also* Dkt. No. 106 (Parties agreeing to search for responsive text messages).[5] Evidence here shows that text messages are a relevant source of information and should be produced.

Notably, Catalent issued mobile devices to thousands of its employees, including at least ten custodians that Defendants claim did not text about business. Ex. 1 (8/28/25 Ltr.), at 2.[6] Usage records for these devices show texting was a routine practice by custodians in the Class Period. *See* Ex. 3 (Catalent_01161097).

**Figure A.** Sample of Custodian Text Usage from June–November 2022

| Custodian | Most Texts in a Month from June–November 2022 | Total Texts from June–November 2022 |
|---|---|---|
| Castellano | 263 | 882 |
| Chiminski | 477 | 1,239 |
| Hopson | 116 | 587 |
| Stancampiano | 165 | 629 |
| Gunther | 97 | 345 |

---

[5] Research shows that "[t]ext[s] . . . have become increasingly important in securities fraud matters," as "***the most interesting, and sometimes most problematic, communications often do not take place via email***." *See Text Messages Lead to $4.47B Liability in Securities Fraud Case*, Cromwell (June 27, 2024), https://www.crowelldatalaw.com/2024/06/text-messages-lead-to-4-47b-liability-in-securities-fraud-class-action/ (emphasis added).

[6] They are: Chiminski, Castellano, Michael Stancampiano, Hopson, Sharad Dubey, Scott Gunther, Paul Surdez, Lauren Smith, Shetal Patel, and Andrew Espejo.

September 26, 2025
Page 7

| Smith | *84* | *279* |
|-------|------|-------|

*Id.* This data is corroborated by documents produced in discovery which show—contrary to Defendants' claims—that custodians whose phones have not been searched (including current Catalent employees) texted about relevant matters, including the operations of, and "impact[]" of FDA inspections at, facilities at issue. *See* Dkt. No. 47. For instance, messages from Maselli's phone show he texted with Castellano, who stated: "BMT at it again with the surprises. . . . Pointing to FDA distractions impacting operations, batch release and absorption." Ex. 4 (Catalent_02110864).[7] Maselli also texted with Hopson about an "FDA issue in Bloomington," with Hopson stating: "John is recommending we increase our hedge by $30-$40M, Sarepta risk. If we did, cash flow becomes break-even." Ex. 6 (Catalent_02341113). Documents also show Chiminski texted about Catalent business. Ex. 7 (Catalent_02263790) (Castellano saying Chiminski "[s]ent [him a] text string"). Messages from Riley's phone show that he texted about Catalent business with custodians Karen Flynn, Jesse Boyd, Gunther, Ricardo Zayas, and

---

[7] *See also* Ex. 5 (Catalent_02110861) (Castellano texted Maselli: "[W]hat I learned this AM from Manja is [a] real[ ]problem [sic]. They are way behind on BWI execution. Missed Jan by $25M and have a $55M total risk ($30 more in Feb and Mar) after $25M in Jan.").

September 26, 2025
Page 8

Espejo.[8] In sum, texting was prevalent at Catalent among key players in this case.[9]

Ignoring this evidence, Defendants assert that mobile devices are not a relevant data source because custodians only used messaging to engage in non-substantive logistical conversations, such as setting meetings. But a review of the documents Defendants characterize as non-substantive, *see supra* (discussing Exs. 4-6), show this claim to be wrong. Further, logistical conversations are relevant, as they may reveal the proverbial who, what, when, where, and how about a conversation or meeting. *See, e.g.*, *GN Netcom, Inc. v. Plantronics, Inc.*, 2016 WL 3792833, at *10 (D. Del. July 12, 2016) ("substantively-devoid meeting invitations" can "provide valuable insights" in discovery); *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 2019 WL 1500698, at *5 (D. Or. Apr. 5, 2019) (logistical documents like calendar entries are relevant and can lead to "discovery of further relevant information"). Defendants have proffered no sufficient basis for their claim that all of the other custodians' text messaging was non-substantive, and have not conducted **any** review of the underlying messages to which they refer.

---

[8] Exs. 8-14 (MRILEY00003; MRILEY00032; MRILEY00034; MRILEY00054; MRILEY00068; MRILEY00070; MRILEY00081). Likewise, messages from Sambuco show she messaged custodians Bruno Stutzmann and Zayas about Catalent business, further undermining Defendants' claims. *See* Exs. _15-16 (Catalent_03592520; Catalent_03592549).

[9] Blendeman testified that his "SLT or [] OLT group" "used text messages," and he would "typically," "over the weekend, [at] night," "send something, it is more direct or accessible than an email." Ex. 17 (Blendeman Rough Tr. at 230:22-231:9).

September 26, 2025
Page 9

## C.    DEFENDANTS HAVE NOT CONDUCTED A REASONABLE INQUIRY INTO CUSTODIANS' TEXT MESSAGING PRACTICES

The signatory to a discovery response "certifies that" the response was made "to the best of the[ir ] knowledge, information, and belief formed **after a reasonable inquiry**." Fed R. Civ. P. 26(g)(1) (emphasis added). An attorney makes such an inquiry "if the investigation . . . and the conclusions drawn therefrom are reasonable under the circumstances." *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 707 (D.N.J. 2015). Witness interviews alone are "likely to provide, at best, an incomplete picture of the content of relevant and discoverable ESI." *Thomas v. City of New York*, 336 F.R.D. 1, 4 (E.D.N.Y. 2020). Accordingly, courts compel text message searches where a party shows that "responsive documents w[ould] reside" in the files of custodians "other than those who self-identified as using text messag[ing]." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2025 WL 27487, at *1 (S.D.N.Y. Jan. 3, 2025).

Here, Defendants took custodians at their word and failed to test or verify their assertions. Defendants' "attempt to avoid text message collection" because individuals said there were "no other text[s]" is "unpersuasive." *Thomas*, 336 F.R.D. at 4-5. Even when confronted with evidence casting doubt on their position, Defendants refuse to conduct any additional inquiry for nineteen of the twenty-three custodians. This is not reasonable. *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 920 (N.D. Ill. 2021) ("[b]lindly relying on a client" to

September 26, 2025
Page 10

"identif[y]" ESI is unreasonable); *Burgess v. Central Bucks School Dist.*, 2023 WL 7329501, at *1 (E.D. Pa. Nov. 6, 2023) (similar).

Finally, as to the few devices Defendants did search, the search was deficient because Defendants applied the same search terms used for emails and eDocs. *See* Ex. 2 (9/9/25 Ltr.) at 6. But "[s]uch communications often use informal [language] and contain typographical errors, shorthand, symbols, and abbreviations" and it was unreasonable for Defendants to apply complex Boolean terms negotiated in a separate context to mobile device data. *Inter-Coop. Exch. v. United States Dep't of Com.*, 36 F.4th 905, 913 (9th Cir. 2022); *see also William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) (terms must contain "appropriate keywords" and reflect "words and abbreviations" used). This problem is underscored by the scant number of messages produced—just one day of messages from Blendeman, seven days from Sambuco, and 67 days from Maselli.

**D.    CONCLUSION**

In light of the foregoing, Plaintiffs respectfully request that the Court compel Defendants to search for and produce responsive text, WhatsApp and other messages (as well as any other responsive ESI) from their and the agreed-upon custodians' mobile devices, and use appropriate queries to identify such messages. Plaintiffs further note that depositions are currently underway, and timely production of this material is critical to ensure witnesses can be examined on a complete factual record.

September 26, 2025
Page 11

Respectfully submitted,

CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.

*/s/ Kevin G. Cooper*
Kevin G. Cooper

cc: Counsel of record

# EXHIBIT 1



Writer's Direct Dial:  415-400-3005
Email:  mjohnson@ktmc.com
*Please reply to the San Francisco Office*

August 28, 2025

**VIA E-MAIL**
Hope Skibitsky, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
295 5th Avenue, 9th Floor
New York, NY 10016

> **Re:** *City of Warwick Retirement System v. Catalent, Inc., et al.*, No. 3:23-cv-1108-ZNQ-JTQ (D.N.J.)

Dear Counsel:

We write regarding Catalent's efforts to identify and search custodians' mobile devices for potentially responsive text messages in this litigation. In particular, you have represented that: (i) only two of the twenty-three custodians utilized text messaging for Catalent business and used phones that were in Catalent's possession, custody, or control (Defendant Maselli and Ms. Sambuco); (ii) Ms. Percival used a phone in Catalent's possession, custody, or control but did not text about Catalent business; (iii) there are not text messages between Defendant Maselli and Defendant Chiminski from December 2021; and (iv) your interview of all custodians who were Catalent employees at the time of your interview process did not identify any custodians beyond Maselli and Sambuco who were communicating substantively about work. *See* 8/15/25 A. Federer Email; 8/19/25 E. Erickson Email.

However, a growing body of evidence produced by Catalent suggests that many of the custodians—who were employees of Catalent at the time this litigation arose, and whose Catalent-issued and/or personal devices, therefore, were within Catalent's possession, custody, or control—communicated extensively via text message. As a result, their devices were potentially relevant data sources and should have been preserved and searched for this case.

We wanted to identify this evidence for you in advance of our call, so that our call can be as productive as possible.

## Catalent's Extensive Issuance of Company-Owned Devices to Employees

As an initial matter, it appears that through most of the Class Period, including the time this litigation commenced, many Catalent employees—including most of the custodians—had Company-issued devices that they used in connection with their work. *See* Catalent_01161094, at -1097 (identifying over 2,600 employees who had Company-issued devices, along with minute

Hope Skibitsky, Esq.
August 28, 2025
Page 2



and message details for November 2022); Catalent_03567051, at -7053 (listing over 900 BMT employees with active corporate mobile devices as of April 20, 2023, along with average minute and message details). In particular, these documents establish that the following custodians—who are either Defendants in this action or were current employees of Catalent when this litigation commenced in February 2023—had Catalent-issued devices that were clearly within Catalent's possession, custody or control: Chiminski, Percival, Castellano, Stancampiano, Hopson, Maselli, Dubey, Gunther, Surdez, Smith, Patel, Espejo, and Riley. *Id.*

Additionally, contrary to your representations, this documentation shows significant text messaging on their Catalent-issued devices by our agreed-upon custodians. *See* Catalent_03567053 (showing texting by Percival and Espejo); Catalent_01161097 (showing texting by Castellano, Chiminski, Stancampiano, Hopson, Smith, Maselli, Gunther, Riley, Dubey, Surdez, and Patel).

Other documents confirm the text messaging practices of these and numerous other Catalent employees. For example, while it is unclear whether they came from his Catalent-issued or personal device, text messages produced from Maselli's phone plainly reflect text messages with custodians Castellano (Catalent_02110861; Catalent_02110864; Catalent_02110866), Riley (Catalent_02110912), and Hopson (Catalent_02341113) regarding Catalent business relevant to this litigation. In other documents, the custodians either instructed others or were themselves instructed to "text" someone else regarding Catalent business. *See, e.g*., Catalent_00006023 (Castellano instructing Boyd to "[t]ext me"); Catalent_00197955 (Mossack instructing Henrickson to "[t]ext [him] in the morning"); Catalent_00261549 (Boyd telling McErlane to "[p]lease text me at any time" re: financial planning and forecasting); Catalent_01518973 (Kacsmar telling Hopson, Zayas, Arnold, and Flynn (among others) to "text me" as CTLT nears close of audit); Catalent_02108185 (Conca telling Surdez to "text me"); Catalent_03139201 (Conca telling Surdez "[t]ext me if you would like to chat tonight"); Catalent_03214959 (Kacsmar telling Hopson to text him).[1]

It also bears mentioning that Catalent did not implement a BYOD program until late February 2023. *See* Catalent_00510385 (BYOD Policy with effective date of February 23, 2023). Notably, however, even after shifting some corporate mobile device users to BYOD, many employees, including the custodians, still qualified for Company-issued devices under Catalent's newly-created guidelines on US Corporate Mobile Device Eligibility. Catalent_00510393 (employees eligible for company-issued devices continued to include: employees expected to respond outside of normal working hours; sales and executive employees frequently travelling for company business; employees whose work responsibilities require them to be away from their assigned location for more than 50% of their time and whose duties require immediate response to service clients; and remote employees that require external contact with clients/suppliers/etc.). Moreover, under Catalent's Mobile Device Policy, employees' text messages remained within Catalent's possession, custody or control. *See, e.g.*, Catalent_00510385 (stating that the policy applies to Catalent-issued mobile devices and/or personal mobile devices and that "all Catalent

---

[1]    *See also* Catalent_00084865 (Dubey telling Gunther that he can text him if there's an urgent need); Catalent_01331786 (Arnold telling members of the Novo Nordisk team to "text me and I'll call you back asap"); Catalent_02104616 (Hufford telling Fields to "text me or come down to my office"); Catalent_02105919 (Boerman telling Henrickson to "text me when we can call").

Hope Skibitsky, Esq.
August 28, 2025
Page 3



data is in scope for this policy," and further defining Catalent data as "text, videos, images, graphics, audio, messages, personal information, customer information, and any other content in whatever form and any application allowing access to such data").

In light of the foregoing, we wish to discuss details of your investigation that led to the conclusion that Catalent employees did not have relevant text messages within Catalent's possession, custody or control, including, but not limited to, (i) which devices you concluded to be within and outside of Catalent's possession, custody or control and at which time, (ii) the basis for your conclusion, and (iii) the basis for your conclusion that Catalent employees did not text regarding Catalent business. Further, we would also like to discuss Catalent's preservation, collection, search and production efforts with respect to mobile devices, including:

(i)     whether each of the custodians' Catalent-issued and personal devices were within the scope of Catalent's legal hold from the outset of this litigation;

(ii)    what Catalent did to ensure adequate preservation of potentially responsive text messages on the custodians' Company-issued and personal devices;

(iii)   with respect to any custodian who is no longer employed by the Company, what Catalent did to preserve potentially relevant data on their device at the time of separation;

(iv)    whether any of the custodians upgraded or replaced their Catalent-issued and/or personal devices from the time this action commenced through the present;

(v)     whether any of the custodians still have their Catalent-issued and/or personal devices that were used during the relevant time period;

(vi)    what collection tools and methods Catalent used to collect potentially relevant data from the custodians' Catalent-issued and/or personal devices for this litigation; and

(vii)   what search tools and methods Catalent used to collect potentially relevant data from the custodians' Catalent-issued and/or personal devices for this litigation.

We look forward to a productive discussion on these points.

Sincerely,

*Max Johnson*

Max Johnson

cc:     All counsel of record

3

# EXHIBIT 2



Writer's Direct Dial:  415-400-3005
Email:  mjohnson@ktmc.com
*Please reply to the San Francisco Office*

September 9, 2025

**VIA E-MAIL**
Hope Skibitsky, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
295 5th Avenue, 9th Floor
New York, NY 10016

> **Re:** *City of Warwick Retirement System v. Catalent, Inc., et al.*, No. 3:23-cv-1108-ZNQ-JTQ (D.N.J.)

Dear Counsel:

We write to memorialize the Parties' discussions during our September 3, 2025, meet and confer regarding Catalent's efforts to identify and search its agreed upon custodians' mobile devices for potentially responsive text messages and other data in this litigation. We requested the call in light of Defendants' scant production of text messages to date, compared to the mounting evidence of extensive text messaging by the custodians and other Catalent employees that Plaintiffs have unearthed in discovery, and to better understand what Defendants did to preserve, search, and produce responsive information on these custodians' mobile devices for this litigation.

Additionally, we write to address deficiencies in the search methodology that Defendants applied to identify responsive ESI in the few mobile devices they have searched, and to request that Defendants: (i) search the Catalent-issued and personal devices of each of the agreed-upon custodians and produce any responsive text, WhatsApp, and other messages, as well as any other responsive ESI (e.g., photos) on those devices; and (ii) conduct additional searches of any Catalent-issued and personal mobile devices already searched in connection with this litigation—beyond the narrow search terms previously employed—for responsive information.

**Call Summary:**

After deferring our previously scheduled call last week to review our August 28, 2025 letter (the "8/28/25 Johnson Letter") and make the call productive, you were unable (or unwilling) to answer many of our questions, claiming a lack of knowledge regarding basic components of the text message identification and search process. In particular, you: (i) did not know which of the agreed upon custodians had Catalent-issued phones during the relevant period for which you

Hope Skibitsky, Esq.
September 9, 2025
Page 2



agreed to produce documents;[1] (ii) did not know whether Catalent paid for any of the custodians' phone lines during the relevant period; and (iii) did not investigate what responsive text and other messages may exist even though evidence showed that custodians had Catalent-issued devices and phone lines, as we had previously pointed out. *See* 8/28/25 Johnson Letter (citing Catalent_01161097; Catalent_03567053).

Additionally, you: (i) did not know, or would not share with us, whether any custodians' phones (Catalent-issued or personal), besides Defendant Maselli's, had been imaged at the outset of this litigation for preservation purposes; (ii) did not know, or would not share with us,  when Barbara Sambuco, Wim Blendeman, and Michael Riley's mobile devices—the only other custodians whose phones Defendants have agreed, to date, to search for responsive text messages—had been imaged, but that it was "more recently"; (iii) did not know, or would not share with us, whether any other custodians' devices had been imaged at any other point for this litigation; (iv) were "unsure" whether any of the custodians' mobile devices had previously been imaged in connection with the Cadwalader investigation;[2] and (v) did not know whether any other custodians' devices (besides Maselli's) had been preserved at the outset of this litigation, or how.[3] You also refused to confirm whether each custodian's Catalent-issued and personal devices were within the scope of the litigation hold—either the initial litigation hold or Defendants' ongoing responsibilities under the litigation hold.[4]

Moreover, you claimed Defendants do not have to provide any of this information to Plaintiffs and had no obligation to search any other custodians' mobile devices because the custodians stated during their interviews that they did not text "substantively" about work. Yet, you admitted that you "did not probe further" to test or verify these representations. In fact, you conceded that the only time you did anything to investigate this issue further was when information became available, indicating the custodians' representations were not accurate. That information, of course, was unearthed through Plaintiffs' discovery efforts.[5]

---

[1]      Despite not knowing which custodians had Catalent-issued devices, you confirmed that Defendants are ***not*** taking the position that the custodians were not issued mobile devices by Catalent, and conceded that the "best data source" for who had Catalent-issued devices during the relevant time period are the spreadsheets Plaintiffs identified in our August 28, 2025 letter. *See, e.g.,* Catalent_01161097; Catalent_03567053.

[2]      This refers to the investigation into the allegations in Plaintiffs' Complaint performed by Cadwalader, Wickersham & Taft LLP. *See* Catalent_00006509.

[3]      All you stated in this regard was that a litigation hold was issued, and that each of the custodians were subject to the hold.

[4]      Your reasoning was that the initial litigation hold was issued before the Parties agreed to the 23 custodians in the fall of 2024. But Plaintiffs note that more than half of the agreed-upon custodians were listed on Defendants' Initial Disclosures exchanged on September 6, 2024.

[5]      Notably, you only agreed to search Mr. Blendeman's mobile device on September 3, 2025, shortly after producing text messages for Ms. Sambuco which in turn revealed messages to Mr. Blendeman's WhatsApp account. *See* 9/3/25 Erickson Email. And Mr. Riley's device is being searched in response to a subpoena Plaintiffs issued to him in his individual capacity—not by

Hope Skibitsky, Esq.
September 9, 2025
Page 3



You also claimed that other documents cited in the 8/28/25 Johnson Letter showed only that the custodians texted about "logistics" or to "coordinate" about business activities, which you claimed did not call into question their prior representations. Accordingly, you indicated you would only revisit a particular custodian's mobile device if presented with direct and convincing evidence that responsive, "substantive" text messaging had occurred and has not been produced.

Finally, as to the few custodians whose phones were or are being searched, you stated that Defendants' search was limited to running the Parties' agreed upon search terms for emails and eDocs across the messages collected, and then reviewing those documents for responsiveness.

**Defendants Failed to Conduct a Reasonable Investigation**

Federal Rule of Civil Procedure 26(g) requires you to certify that a reasonable investigation was conducted in response to Plaintiffs' document requests. *See IQVIA, Inc. v. Veeva Sys., Inc.*, 2021 WL 12319551, at \*46 (D.N.J. May 7, 2021) ("An attorney makes a 'reasonable inquiry' under Rule 26(g) if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances.") (quoting *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 703 (D.N.J. 2015) ("An objective standard is used to determine if a [Rule 26(g)] certification is reasonable.")). Here, your reliance on assertions made during custodian interviews and subsequent failure to search these custodians' devices without undertaking *any* steps to test, confirm, or verify those assertions despite contrary facts from discovery presented by Plaintiffs is objectively unreasonable. *See, e.g.*, *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 920 (N.D. Ill. 2021) ("Blindly relying on a client about the identification, preservation, and collection of ESI is also not reasonable."). Had you undertaken any of these validation measures, you would in all likelihood have seen the custodians' information to be inaccurate and contradicted by ample evidence.

The custodial interview is merely the starting point, and a reasonable inquiry requires more than simply taking a custodian at his or her word. *See DR Distributors*, 513 F. Supp. 3d at 927 (noting that "a reasonable custodian interview can require counsel to cross-examine the client and test the accuracy of the client's response to document requests to ensure that all appropriate sources of data have been searched" and that "the failure to adequately interview key custodians that results in the failure to identify, preserve, collect and produce ESI can result in sanctions"); *Thomas v. City of New York*, 336 F.R.D. 1, 4 (S.D.N.Y. 2020) ("Interviews of witnesses about the content of their electronic communications is likely to provide, at best, an incomplete picture of the content of relevant and discoverable ESI."). This is particularly true here, where Catalent issued mobile devices and phone plans to thousands of its employees to use for Company business, *see* Catalent_01161097; Catalent_03567053 (showing that custodians had Company-issued phones), and incontrovertible evidence shows that: (i) numerous Catalent employees used their Catalent devices extensively to send text messages during the relevant time period; (ii) custodians and other

---

Defendants in his capacity as a document custodian for Defendants' production. *See* 8/26/25 J. Palmerson Email.

Hope Skibitsky, Esq.
September 9, 2025
Page 4



Catalent employees routinely instructed each other to communicate via text; and (iii) those text messages and other discussions concerned substantive Catalent matters.

Indeed, data reflecting just one month of usage shows that custodians sent thousands of text messages on their Catalent-issued devices in a single month. Catalent_01161097; *see also* Catalent_03567053 (showing average text messages for custodians and hundreds of other employees of Catalent's manufacturing facility located in Bloomington, Indiana).

In other documents, custodians specifically instructed other Catalent employees, or were themselves instructed, to "text" about or when available to discuss various substantive matters. *See, e.g.*, Catalent_02110861; Catalent_02341113 (Maselli and Ricky Hopson making plans over text to discuss FDA development); Catalent_00006023 (Defendant Castellano instructing Jesse Boyd to text regarding time to discuss November 2022 "Results & Concerns"); Catalent_00197955 (John Mosack instructing Randy Henrickson to text if he had questions about BioPark slides); Catalent_00261549 (Boyd instructing David McErlane to text at any time regarding OpMerch and financial reference slides); Catalent_01518973 (EY instructing custodians Hopson, Jonathan Arnold, Karen Flynn, and Ricardo Zayas each to text when they were available to discuss audit inquiries); Catalent_02108185 (Nicholas Conca telling Paul Surdez to text about connecting regarding FY2023 guidance); Catalent_03139201 (Conca instructing Surdez to text if he'd like to chat regarding a COVID impact graph); Catalent_03214959 (EY instructing Hopson to text when they turn another draft of the 12b-25 form for him to send to the national office for review).

Moreover, documents confirm, at the very least, that custodians Castellano, Hopson, Riley and Maselli texted about "substantive" Catalent business. *See, e.g.*, Catalent_02110861 (Castellano texting Maselli: "[W]hat I learned this AM from Manja is [a] real[]problem [sic]. They are way behind on BWI execution. Missed Jan by $25M and have a $55M total risk ($30 more in Feb and Mar) after $25M in Jan."); *id.* (Maselli texting Castellano that he "exchange[d] text with Zayas" regarding a "plan to minimize gap"); Catalent_02110864 (Castellano texting: "BMT at it again with the surprises. . . . Pointing to FDA distractions impacting operations, batch release and absorption"); Catalent_02110866 (Castellano stating on 5/11/22, "Just finished with investors and heading home. Great few days. On another note got a read on FCST, not good. I'm sure you already know the BMT dynamic from your visit. We can discuss tomorrow."); Catalent_02110912 (Riley texting Maselli about "align[ing] on communication plan, transition timing and plans for upcoming meetings (eg Kaizen, Board)" and describing his "biggest issue" with a Moderna proposal); Catalent_02341113 (Maselli and Hopson texting about a "new development" that day regarding "th[e] FDA issue in Bloomington with Regeneron," with Maselli stating he is "very worried," and Hopson providing financial impact estimates of hedging risk there).[6]

This evidence casts substantial doubt on the custodians' recollections and representations regarding their text messaging practices, and at the very least should have triggered a further investigation, including reviewing their text messages to test their recollections. *See Thomas*, 336

---

[6]    It also bears mentioning that Bryce Hufford testified during his deposition that he "can't remember" **whether** he texted about Catalent business—which is a far cry from confirming that he did not ever text substantively about work. Hufford Dep. Tr. (Rough) 124:4-12.

Hope Skibitsky, Esq.
September 9, 2025
Page 5



F.R.D. at 4 (warning against "rely[ing] on a witness's recollection" about communications as "unlikely to provide an accurate accounting" of all relevant communications); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2025 WL 27487, at *1 (S.D.N.Y. Jan. 3, 2025) (finding party made an adequate showing that responsive documents will reside in the text message files of some persons other than those who self-identified as using text messages for substantive reasons and compelling search). Instead, you ignored this evidence and now attempt to discredit its contents, claiming you do not know whether any of the texts reflected in these documents were made for personal or business reasons, and that others were simply for logistical coordination.

Your speculation about, and downplaying of, this evidence is belied by the documents themselves and does not justify Defendants' failure to search the custodians' devices. For example, you noted that "some" custodians were associated with multiple phone lines on the spreadsheet we identified and claimed you did not know which messages attributed to them were actually theirs or which "could" have been someone else's. But the only custodians for which the spreadsheet listed multiple phone numbers were Castellano, Chiminski, Sophia Percival, Riley and Lauren Smith, and a simple search of Defendants' production confirms their mobile numbers and associated text messages. *Compare* Catalent_00143824 (Percival email signature line identifying her mobile number as (812) 327-8609), *with* Catalent_01161097 (Monthly Details Tab, Rows 9893-9898, Column O, showing hundreds to thousands of texts each month in June-November 2022 for this number); *compare* Catalent_02110861 (identifying Castellano's mobile number as +17326475013), *with* Catalent_01161097 (Monthly Details Tab, Rows 6018-6023, Column O, showing 59-232 texts per month in June-November 2022 for this number); *compare* Catalent_00166379 (Chiminski identifying his mobile number as 732-595-6851), *with* Catalent_01161097 (Monthly Details Tab, Rows 5988-5993, Column O, showing 477, 185, 145, 127, 130, and 175 texts in June-November 2022 for this number); *compare* Catalent_00206408 (Riley email signature block reflecting mobile number (732) 556-7951), *with* Catalent_01161097 (Rows 5952-5957, showing texts in June-November); *compare* Catalent_01710635 (Smith email signature block showing mobile number of (812) 320-9555), *with* Catalent_01161097 (Rows 8999-9004, Column O, showing 20, 51, 24, 61 39, and 84 messages in June-November for this number).[7] Your further suggestion that these texts may be personal is unsupported and does nothing to undermine the need to search these devices to confirm the nature of these exchanges.

Finally, even to the extent emails suggest some texts were about "logistics," those messages may still reflect important information such as who participated in a conversation and when, and the produced emails confirm that the conversations concerned matters relevant to this litigation.

---

[7] The documents also confirm text messages in the six-month span from June-November 2022 for numbers associated with custodians Hopson, Michael Stancampiano, Scott Gunther, Shetal Patel, Sharad Dubey, Paul Surdez, and Andrew Espejo. *Compare* Catalent_02431113, Catalent_00680612, Catalent_00189183, Catalent_01446194, Catalent_00176653, and Catalent_00189844 (email signature blocks confirming numbers for Hopson, Stancampiano, Gunther, Patel, Dubey, and Espejo), *with* Catalent_01161097 (Monthly Details Tab, Column O, showing text messages for Hopson (Rows 5783-5788), Stancampiano (Rows 8-13), Gunther (Rows 5559-5563), Patel (Rows 5958-5963), Dubey (5675-5680), Surdez (Rows 5964-5969), and Espejo (Rows 12084-12089)).

Hope Skibitsky, Esq.
September 9, 2025
Page 6



Such messages would provide foundational information about which to inquire at deposition. These documents confirm that the custodians used mobile devices to text in connection with their work, warranting a search. *See, e.g.*, *Thomas*, 336 F.R.D. at 4-5 (granting motion to compel and stating that "Defendants' attempt to avoid text message collection from these individuals because they have said there are no other text messages is unpersuasive").

In light of the foregoing, Plaintiffs request that Defendants conduct a reasonable search of the remaining 20 custodians' mobile devices for responsive text messages, WhatsApp messages, and any other responsive ESI on their devices (Catalent-issued and personal).

Plaintiffs also request that Defendants search these devices using appropriate methods for identifying potentially responsive text messages and other ESI—not the agreed search terms for emails—and re-search any custodians' devices already searched, using the new parameters.[8]

To the extent Defendants refuse to search any further custodians' mobile devices, or to conduct additional searches of custodians' devices already searched, we request you state so, in writing, by the close of business on September 12, 2025.

**<u>Defendants' Preservation Efforts</u>**

Plaintiffs also have serious concerns about the adequacy of Defendants' efforts to preserve potentially relevant mobile device data for this litigation, including that relevant ESI may have been destroyed. In particular, Defendants admitted on August 14, 2025 that Ms. Percival no longer has any text messages to search because they were all subject to an "automated deletion function." *See* 8/14/25 Zoellner Email. But Ms. Percival was a current employee of Catalent at the time this litigation began and a duty to preserve arose. Her devices, therefore, were within Catalent's possession, custody, or control at that time and should have been adequately preserved for this litigation—a hallmark of which is ensuring that auto-deletion features are turned off. *See Vander Pas v. Board of Regents of Univ. of Wisconsin Sys.*, 664 F. Supp. 3d 893, 906 (E.D. Wis. Mar. 27, 2023) ("[C]ounsel shares the blame for the autodeleted text messages" because "[a]utodelete features are now nearly ubiquitous in ESI-producing and storage devices, like [a] cell phone," and simply "informing a client of preservation obligations is insufficient; counsel must 'take affirmative steps to monitor compliance.'"); *DR Distributors*, 513 F. Supp. 3d at 905, 912, 931 (stating "any competent counsel should have" informed custodians to disable autodelete function, describing party's argument that the failure to disable autodelete function was reasonable as "legally meritless," and noting the "phalanx of publications warning litigators of the need to clearly and adequately inform their clients to investigate and turn off autodelete functions as part of their litigation hold processes"). The fact that Ms. Percival no longer has any text messages from the

---

[8]    As you know, people communicate much differently over text than email. Texts often contain abbreviated words and phrases, misspellings, acronyms, emojis, reactions, and other linguistic differences compared to emails and eDocs. As such, it is not appropriate to use the same narrow Boolean search terms that were developed here for searching emails and eDocs, to search for responsive text messages.

Hope Skibitsky, Esq.
September 9, 2025
Page 7



relevant time period to search because this feature was not turned off as required will need to be addressed.

Additionally, you previously claimed on June 19, 2025 that collecting and producing texts from Barbara Sambuco and Sophia Percival required "additional steps" due to the fact that they were no longer Catalent employees. *See* 6/19/25 Erickson Email. But Catalent had the "right to remove any Catalent data" from its employees' devices (Company-issued and personal) when a user is separated from Catalent through resignation or termination and should have taken possession of or copied all Catalent data on their devices for preservation in this litigation when these individuals left the Company. *See* Catalent_00510385 at -0389.

It is for these reasons that we attempted to meet and confer regarding the scope of Catalent's preservation efforts, including which custodians were subject to a legal hold in this action, whether their mobile devices were subject to the legal hold, and what methods of preservation were employed with respect to their mobile devices and messaging data. Although these subjects are appropriate topics for discovery, you refused to provide that information on privilege grounds. *See* Fed. R. Civ. P. 26(f) (requiring discussion of any issues concerning preservation). We requested you put your refusal in writing in response to our August 28, 2025 letter, which you agreed to do, and ask for that statement by Friday, September 12, 2025.

Plaintiffs reserve all rights.

Sincerely,

Max Johnson

cc:    All counsel of record

# EXHIBIT 3

**Document Produced in Native Format**

CONFIDENTIAL

Catalent_01161097

| | A | B | I | J | K | L | M | N | O | P | Q | R | S |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Invoice Item ID | Personnel | Total Charges | Upgrade Eligibility Date | Termination Date | Term Date | Site Location | Usage (Data: Usage) | Usage (Messaging: Text) | Usage (Voice: Anytime) | Site Code | Device Used | Joined |
| 8 | ███ | Stancampiano, Michael | $46.90 | 11/20/2022 | | | USA-Somerset HQ | 1.74 | 94.00 | 566.00 | GLOBAL | 9/21/2022 | 20134193 41-Nov |
| 9 | ███ | Stancampiano, Michael | $46.86 | 11/20/2022 | | | USA-Somerset HQ | 1.73 | 115.00 | 364.00 | GLOBAL | 7/21/2022 | 20134193 41-Nov |
| 10 | ███ | Stancampiano, Michael | $132.28 | 11/20/2022 | | | USA-Somerset HQ | 2.11 | 95.00 | 292.00 | GLOBAL | 6/21/2022 | 20134193 41-Nov |
| 11 | ███ | Stancampiano, Michael | $49.00 | 11/20/2022 | | | USA-Somerset HQ | 3.87 | 78.00 | 320.00 | GLOBAL | 11/21/2022 | 20134193 41-Nov |
| 12 | ███ | Stancampiano, Michael | $46.87 | 11/20/2022 | | | USA-Somerset HQ | 0.84 | 165.00 | 339.00 | GLOBAL | 8/21/2022 | 20134193 41-Nov |
| 13 | ███ | Stancampiano, Michael | $46.69 | 11/20/2022 | | | USA-Somerset HQ | 8.90 | 82.00 | 521.00 | GLOBAL | 10/21/2022 | 20134193 41-Nov |
| 5559 | ███ | Gunther, Scott G | $53.95 | 9/4/2023 | | | USA-Somerset HQ | 0.00 | 11.00 | 26.00 | GLOBAL | 7/21/2022 | 73220899 54-Nov |
| 5560 | ███ | Gunther, Scott G | $55.33 | 9/4/2023 | | | USA-Somerset HQ | 0.00 | 37.00 | 8.00 | GLOBAL | 6/21/2022 | 73220899 54-Nov |
| 5561 | ███ | Gunther, Scott G | $196.76 | 9/4/2023 | | | USA-Somerset HQ | 9.09 | 57.00 | 273.00 | GLOBAL | 9/21/2022 | 73220899 54-Nov |
| 5562 | ███ | Gunther, Scott G | $75.68 | 9/4/2023 | | | USA-Somerset HQ | 0.04 | 77.00 | 113.00 | GLOBAL | 11/21/2022 | 73220899 54-Nov |
| 5563 | ███ | Gunther, Scott G | $108.26 | 9/4/2023 | | | USA-Somerset HQ | 0.49 | 66.00 | 52.00 | GLOBAL | 8/21/2022 | 73220899 54-Nov |
| 5564 | ███ | Gunther, Scott G | $122.09 | 9/4/2023 | | | USA-Somerset HQ | 2.38 | 97.00 | 286.00 | GLOBAL | 10/21/2022 | 73220899 54-Nov |
| 5783 | ███ | Hopson, Ricky W | $155.25 | 3/1/2024 | | | USA-Somerset HQ | 16.00 | 92.00 | 595.00 | GLOBAL | 11/21/2022 | 73235760 04-Nov |
| 5784 | ███ | Hopson, Ricky W | $147.98 | 3/1/2024 | | | USA-Somerset HQ | 7.30 | 112.00 | 362.00 | GLOBAL | 6/21/2022 | 73235760 04-Nov |
| 5785 | ███ | Hopson, Ricky W | $76.20 | 3/1/2024 | | | USA-Somerset HQ | 10.58 | 75.00 | 250.00 | GLOBAL | 7/21/2022 | 73235760 04-Nov |
| 5786 | ███ | Hopson, Ricky W | $76.30 | 3/1/2024 | | | USA-Somerset HQ | 14.50 | 102.00 | 328.00 | GLOBAL | 9/21/2022 | 73235760 04-Nov |
| 5787 | ███ | Hopson, Ricky W | $76.21 | 3/1/2024 | | | USA-Somerset HQ | 15.82 | 116.00 | 536.00 | GLOBAL | 8/21/2022 | 73235760 04-Nov |
| 5788 | ███ | Hopson, Ricky W | $141.96 | 3/1/2024 | | | USA-Somerset HQ | 9.64 | 90.00 | 302.00 | GLOBAL | 10/21/2022 | 73235760 04-Nov |
| 5988 | ███ | Chiminski, John | $71.36 | 9/10/2018 | | | USA-Florida - FIELD | 3.73 | 145.00 | 1,357.00 | GLOBAL | 8/21/2022 | 73259568 51-Nov |
| 5989 | ███ | Chiminski, John | $71.13 | 9/10/2018 | | | USA-Florida - FIELD | 3.89 | 130.00 | 1,146.00 | GLOBAL | 10/21/2022 | 73259568 51-Nov |
| 5990 | ███ | Chiminski, John | $20.45 | 9/10/2018 | | | USA-Florida - FIELD | 2.52 | 175.00 | 810.00 | GLOBAL | 11/21/2022 | 73259568 51-Nov |
| 5991 | ███ | Chiminski, John | $71.42 | 9/10/2018 | | | USA-Florida - FIELD | 4.72 | 127.00 | 1,151.00 | GLOBAL | 9/21/2022 | 73259568 51-Nov |
| 5992 | ███ | Chiminski, John | $71.10 | 9/10/2018 | | | USA-Florida - FIELD | 5.56 | 477.00 | 1,347.00 | GLOBAL | 6/21/2022 | 73259568 51-Nov |
| 5993 | ███ | Chiminski, John | $71.35 | 9/10/2018 | | | USA-Florida - FIELD | 6.92 | 185.00 | 1,044.00 | GLOBAL | 7/21/2022 | 73259568 51-Nov |
| 6018 | ███ | Castellano, Thomas P | $56.23 | 7/28/2022 | | | USA-Somerset HQ | 8.43 | 186.00 | 830.00 | GLOBAL | 9/21/2022 | 73264750 13-Nov |
| 6019 | ███ | Castellano, Thomas P | $53.27 | 7/28/2022 | | | USA-Somerset HQ | 6.02 | 75.00 | 450.00 | GLOBAL | 6/21/2022 | 73264750 13-Nov |
| 6020 | ███ | Castellano, Thomas P | $154.19 | 7/28/2022 | | | USA-Somerset HQ | 3.72 | 67.00 | 441.00 | GLOBAL | 11/21/2022 | 73264750 13-Nov |
| 6021 | ███ | Castellano, Thomas P | $53.96 | 7/28/2022 | | | USA-Somerset HQ | 3.52 | 232.00 | 455.00 | GLOBAL | 7/21/2022 | 73264750 13-Nov |
| 6022 | ███ | Castellano, Thomas P | $56.20 | 7/28/2022 | | | USA-Somerset HQ | 4.25 | 263.00 | 391.00 | GLOBAL | 8/21/2022 | 73264750 13-Nov |

| | A | B | I | J | K | L | M | N | O | P | Q | R | S |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Invoice Item ID | Personnel | Total Charges | Upgrade Eligibility Date | Termination Date | Term Date | Site Location | Usage (Data: Usage) | Usage (Messaging: Text) | Usage (Voice: Anytime) | Site Code | Device Used | Joined |
| 6023 | | Castellano, Thomas P | $72.21 | 7/28/2022 | | | USA-Somerset HQ | 4.56 | 59.00 | 472.00 | GLOBAL | 10/21/2022 | 73264750 13-Nov |
| 8999 | | Smith, Lauren R | $58.41 | 4/3/2019 | | | USA-Ohio - FIELD | 7.20 | 84.00 | 269.00 | GLOBAL | 11/21/2022 | 81232095 55-Nov |
| 9000 | | Smith, Lauren R | $33.96 | 4/3/2019 | | | USA-Ohio - FIELD | 10.70 | 39.00 | 232.00 | GLOBAL | 10/21/2022 | 81232095 55-Nov |
| 9001 | | Smith, Lauren R | $34.14 | 4/3/2019 | | | USA-Ohio - FIELD | 4.04 | 24.00 | 279.00 | GLOBAL | 8/21/2022 | 81232095 55-Nov |
| 9002 | | Smith, Lauren R | $34.13 | 4/3/2019 | | | USA-Ohio - FIELD | 8.48 | 51.00 | 73.00 | GLOBAL | 7/21/2022 | 81232095 55-Nov |
| 9003 | | Smith, Lauren R | $34.13 | 4/3/2019 | | | USA-Ohio - FIELD | 6.18 | 61.00 | 182.00 | GLOBAL | 9/21/2022 | 81232095 55-Nov |
| 9004 | | Smith, Lauren R | $34.02 | 4/3/2019 | | | USA-Ohio - FIELD | 6.33 | 20.00 | 74.00 | GLOBAL | 6/21/2022 | 81232095 55-Nov |

# EXHIBIT 4

## Short Message Report

| Conversations: 1 | Participants: 2 |
|---|---|
| Total Messages: 6 | Date Range: 9/9/2022 |

### Outline of Conversations

💬 **CHAT - CB0000001 - 01586** · 6 messages on 9/9/2022 · Maselli, Alessandro ███████████ · Tom Castellano ███████████

CONFIDENTIAL

Catalent_02110864

**Messages in chronological order** (times are shown in GMT -04:00)

---

💬    **CHAT - CB0000001 - 01586**

TC    **Tom Castellano** ▇▇▇▇▇▇                                    ▶ 9/9/2022, 6:18 PM

BMT at it again with the surprises. Mike called me and just sent a note to us. He and Steve are flying there on Monday and I scheduled a late-afternoon review with them and the site. Pointing to FDA distractions impacting operations, batch release and absorption. They have no clue. I will handle this.

AM    **Maselli, Alessandro** ▇▇▇▇▇▇                                  ◀ 9/9/2022, 6:21 PM

Okay

AM    **Maselli, Alessandro** ▇▇▇▇▇▇                                  ◀ 9/9/2022, 6:22 PM

Saw the note from Mike. I will NOT over react

AM    **Maselli, Alessandro** ▇▇▇▇▇▇                                  ◀ 9/9/2022, 6:22 PM

Will leave it to you

TC    **Tom Castellano** ▇▇▇▇▇▇                                    ▶ 9/9/2022, 6:22 PM

YET

TC    **Tom Castellano** ▇▇▇▇▇▇                                    ▶ 9/9/2022, 6:22 PM

👍🏽

CONFIDENTIAL                                                    Catalent_02110865

# EXHIBIT 5

## Short Message Report

| Conversations: 1 | Participants: 2 |
|---|---|
| Total Messages: 18 | Date Range: 2/1/2023 |

### Outline of Conversations

💬     **CHAT - CB0000001 - 01586** · 18 messages on 2/1/2023 · Maselli, Alessandro ▌▌▌▌▌ · Tom Castellano ▌▌▌▌▌

CONFIDENTIAL

Catalent_02110861

**Messages in chronological order** (times are shown in GMT -05:00)

---

💬 **CHAT - CB0000001 - 01586**

**AM**   **Maselli, Alessandro** ▇▇▇▇▇                                          ◄ 2/1/2023, 12:17 PM
Aris told me that EY challenges also Acorda?

**TC**   **Tom Castellano** ▇▇▇▇▇                                              ► 2/1/2023, 12:21 PM
Yes. It never ends. My bigger issue is not EY or this item. I will manage these for the quarter. However what I learned this AM from Manja is realmproblem. They are way behind on BWI execution. Missed Jan by $25M and have a $55M total risk ($30 more in Feb and Mar) after $25M in Jan. She is heading to site and and Jesse is enroute back from BMT. They asked for 24 hours to sort through. BTW, Mike and Jesse did a nice job stabilizing the BMT issues and improving from $30M risk to $8M.

**AM**   **Maselli, Alessandro** ▇▇▇▇▇                                          ◄ 2/1/2023, 2:10 PM
Hope recovery in BMT was not inclusive of the 26m from Moderna which should cover other stuff

**AM**   **Maselli, Alessandro** ▇▇▇▇▇                                          ◄ 2/1/2023, 6:30 PM
Tom tried to call you to better understand what's going on

**AM**   **Maselli, Alessandro** ▇▇▇▇▇                                          ◄ 2/1/2023, 6:31 PM
I'm now in transit towards Boston

**AM**   **Maselli, Alessandro** ▇▇▇▇▇                                          ◄ 2/1/2023, 6:31 PM
Will try to call you again when I land

**TC**   **Tom Castellano** ▇▇▇▇▇                                              ► 2/1/2023, 6:32 PM
Ok thanks. Sorry was with EY and didn't see you call. I have an update. Call me when you land. Getting in car in 5.

**AM**   **Maselli, Alessandro** ▇▇▇▇▇                                          ◄ 2/1/2023, 6:33 PM
Okay I only have few minutes when I get there as I have an appointment for dinner

**AM**   **Maselli, Alessandro** ▇▇▇▇▇                                          ◄ 2/1/2023, 6:34 PM
Did we get in a better spot with EY?

**TC**   **Tom Castellano** ▇▇▇▇▇                                              ► 2/1/2023, 6:35 PM
Yes

**TC**   **Tom Castellano** ▇▇▇▇▇                                              ► 2/1/2023, 6:35 PM
Frustrating but okay spot.

**AM**   **Maselli, Alessandro** ▇▇▇▇▇                                          ◄ 2/1/2023, 6:35 PM
Exchange text with Zayas

**AM**   **Maselli, Alessandro** ▇▇▇▇▇                                          ◄ 2/1/2023, 6:36 PM
They are working on a plan to minimize gap

**AM**   **Maselli, Alessandro** ▇▇▇▇▇                                          ◄ 2/1/2023, 6:36 PM
But it won't be zero

**TC**   **Tom Castellano** ▇▇▇▇▇                                              ► 2/1/2023, 6:36 PM
Ok. I have a mtg with them in AM. Gave them the night.

**AM**   **Maselli, Alessandro** ▇▇▇▇▇                                          ◄ 2/1/2023, 6:36 PM
BWI, BMT and Bettera are killing us

---

CONFIDENTIAL                                                                          Catalent_02110862

AM    **Maselli, Alessandro** ▮▮▮▮▮▮▮▮                                    ◄ 2/1/2023, 6:37 PM
      F…in' nuts

TC    **Tom Castellano** ▮▮▮▮▮▮▮▮                                         ► 2/1/2023, 6:37 PM
      Exactly. Poor exchange with Aris' team today. Will fill you in.

CONFIDENTIAL                                                    Catalent_02110863

# EXHIBIT 6

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 9 | Date Range: 6/23/2023 |

## Outline of Conversations



**CHAT - CB0000001 - 01566** · 9 messages on 6/23/2023 · ████████ · Maselli, Alessandro ████
████████ · Ricky Hopson ████████

CONFIDENTIAL

Catalent_02341113

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **CHAT - CB0000001 - 01566**

**RH**    **Ricky Hopson** ███████████████
         ████████████████████                                    ▶ 6/23/2023, 3:47 PM

**AM**    **Maselli, Alessandro** ███████████
         ██████████                                              ◀ 6/23/2023, 4:01 PM

**AM**    **Maselli, Alessandro** ███████████                    ◀ 6/23/2023, 4:01 PM
         I'll tell you later what happened

**AM**    **Maselli, Alessandro** ███████████                    ◀ 6/23/2023, 4:01 PM
         I'm exhausted but also very worried about this FDA issue in Bloomington with Regeneron.

**RH**    **Ricky Hopson** ███████████                           ▶ 6/23/2023, 4:22 PM
         A new development today?

**AM**    **Maselli, Alessandro** ███████████                    ◀ 6/23/2023, 5:00 PM
         Yes

**RH**    **Ricky Hopson** ███████████                           ▶ 6/23/2023, 7:20 PM
         John is recommending we increase our hedge by $30-$40M, Sarepta risk. If we did, cash flow becomes break-even. I'd
         be comfortable with another $20M, our MIP target is $780M, still can go out with $800M if we get off to a good start in
         July and August.

**RH**    **Ricky Hopson** ███████████                           ▶ 6/23/2023, 8:03 PM
         Let me know when you free up to discuss

**AM**    **Maselli, Alessandro** ███████████                    ◀ 6/23/2023, 8:06 PM
         Have another call with Marty and will call you right after

# EXHIBIT 7

## Short Message Report

| Conversations: 1 | Participants: 2 |
|---|---|
| Total Messages: 14 | Date Range: 11/22/2022 |

## Outline of Conversations

 **19:2b8fb4e4-3fb5-491b-aa78-e42f0803226c_563a13a5-dd6c-4b9f-b7ae-fdd2828e5836@unq.gbl.spaces - 2022-11-22** · 14 messages on 11/22/2022 · Castellano, Thomas <Thomas.Castellano@catalent.com> · Grippo, Michael <Mike.Grippo@catalent.com>

CONFIDENTIAL                                                                                      Catalent_02263790

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬 **19:2b8fb4e4-3fb5-491b-aa78-e42f0803226c_563a13a5-dd6c-4b9f-b7ae-fdd2828e5836@unq.gbl.spaces - 2022-11-22**

| TC | Castellano, Thomas <Thomas.Castellano@catalent.com> | 11/22/2022, 9:43 AM |

This Sarepta stuff is concerning also. That is why Chris calls it out. It's binary.... and HUGE.

| TC | Castellano, Thomas <Thomas.Castellano@catalent.com> | 11/22/2022, 9:43 AM |

Again, in Mario's world.

| MG | Grippo, Michael <Mike.Grippo@catalent.com> | 11/22/2022, 9:44 AM |

█████████████████████████████████████████████

| MG | Grippo, Michael <Mike.Grippo@catalent.com> | 11/22/2022, 9:44 AM |

████████████

| TC | Castellano, Thomas <Thomas.Castellano@catalent.com> | 11/22/2022, 9:45 AM |

███

| TC | Castellano, Thomas <Thomas.Castellano@catalent.com> | 11/22/2022, 9:46 AM |

███████████████████████████

| TC | Castellano, Thomas <Thomas.Castellano@catalent.com> | 11/22/2022, 9:46 AM |

Looking fwd to tomorrow's 4:30 call.

| MG | Grippo, Michael <Mike.Grippo@catalent.com> | 11/22/2022, 9:48 AM |

OK. Let's connect at break. This meeting is turning into a shit show

| TC | Castellano, Thomas <Thomas.Castellano@catalent.com> | 11/22/2022, 9:53 AM |

Yup.

| MG | Grippo, Michael <Mike.Grippo@catalent.com> | 11/22/2022, 9:55 AM |

███████████████████████████████████████

| TC | Castellano, Thomas <Thomas.Castellano@catalent.com> | 11/22/2022, 9:57 AM |

100000000000000000000000000000000%

| TC | Castellano, Thomas <Thomas.Castellano@catalent.com> | 11/22/2022, 9:58 AM |

████████████████████████

| MG | Grippo, Michael <Mike.Grippo@catalent.com> | 11/22/2022, 10:01 AM |

███████████████████████████████████████

| TC | Castellano, Thomas <Thomas.Castellano@catalent.com> | 11/22/2022, 10:05 AM |

No doubt.

Catalent_02263791

CONFIDENTIAL

Catalent_02263792

# EXHIBIT 8



CONFIDENTIAL

MRILEY00003

# EXHIBIT 9

## Short Message Report

| | |
|---|---|
| Conversations: 1 | Participants: 2 |
| Total Messages: 8 | Date Range: 2/10/2023 |

### Outline of Conversations

    **CHAT - CB0565594 - 00015** · 8 messages on 2/10/2023 · Jesse Boyd ▆▆▆▆▆ · Riley, Mike ▆▆▆▆▆

**Messages in chronological order** (times are shown in GMT -05:00)

---

💬     **CHAT - CB0565594 - 00015**

**JB**    Jesse Boyd ▓▓▓▓▓▓▓▓        ▶ 2/10/2023, 6:07 AM

Good morning Mike, I need to revise my Q3 statement from yesterday, I cannot make up the January miss and Moderna call down in Q3. When I sent you the note, thought we had it but it is not the case. We are currently showing -$25M revenue and EBITDA in Q3 in Bloomington, meeting with the SLT at 7 to review and discuss possible actions but January performance was not helpful. This was my thinking not Jennifer's, should have waited to send you the note.

**JB**    Jesse Boyd ▓▓▓▓▓▓▓▓        ▶ 2/10/2023, 6:07 AM

Happy to discuss

**MR**    Riley, Mike ▓▓▓▓▓▓▓▓        ◀ 2/10/2023, 6:51 AM

Please work through with the team.  That would be a massive swing vs what we looked at a few days ago and doesn't seem possible just based on poor January performance.

**JB**    Jesse Boyd ▓▓▓▓▓▓▓▓        ▶ 2/10/2023, 6:53 AM

Will do, negative EBITDA in January and a subsequent Moderna forecast drive, will work with the team on recovery items at 7.

**MR**    Riley, Mike ▓▓▓▓▓▓▓▓        ◀ 2/10/2023, 6:54 AM

Need to understand the Moderna change as that should have been firm

**JB**    Jesse Boyd ▓▓▓▓▓▓▓▓        ▶ 2/10/2023, 6:54 AM

Agree in principle, will investigate with the team

**MR**    Riley, Mike ▓▓▓▓▓▓▓▓        ◀ 2/10/2023, 6:57 AM

Let's also include full P&L view in our review

**JB**    Jesse Boyd ▓▓▓▓▓▓▓▓        ▶ 2/10/2023, 6:57 AM

Liked "Let's also include full P&L view in our review "

MRILEY00033

# EXHIBIT 10

## Short Message Report

| Conversations: 1 | Participants: 2 |
|---|---|
| Total Messages: 2 | Date Range: 9/7/2021 |

## Outline of Conversations

 **CHAT - CB0565594 - 00099** · 2 messages on 9/7/2021 · Riley, Mike ███████ · Scott Gunther ████████

    MRILEY00034

**Messages in chronological order** (times are shown in GMT -04:00)

---

💬     **CHAT - CB0565594 - 00099**

SG     **Scott Gunther** ███████████                    ▶ 9/7/2021, 7:53 PM

another critical for ██.  we need to decide whats important in Bloomington and stop thinking we can do it all.

SG     **Scott Gunther** ███████████                    ▶ 9/7/2021, 7:54 PM

I sent you the email on the issue

CONFIDENTIAL                                                                    MRILEY00035

# EXHIBIT 11

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 1 | Date Range: 2/22/2023 |

## Outline of Conversations



**CHAT - CB0565594 - 00005** · 1 message on 2/22/2023 · Mario Gargiulo ▮▮▮▮▮▮▮▮▮ · Ricardo Zayas ▮▮▮▮▮▮▮ · Riley, Mike ▮▮▮▮▮▮▮▮

CONFIDENTIAL

**Messages in chronological order** (times are shown in GMT -05:00)

💬    **CHAT - CB0565594 - 00005**

RZ    **Ricardo Zayas** ███████████                                    ▶ 2/22/2023, 3:21 PM

Fyi, I never told AM that the Bloomington S&OP was bad, quite the contrary, it works. The problem is shopfloor execution. Over the past two weeks we've been around the 75% adherence. We need to get it into the 90's.

CONFIDENTIAL                                                      MRILEY00055

# EXHIBIT 12

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 11 | Date Range: 6/22/2021 |

**Outline of Conversations**

 **CHAT - CB0565594 - 00027** · 11 messages on 6/22/2021 · ███████████ · Karen Flynn ███████████ · Riley, Mike ███████████

CONFIDENTIAL

**Messages in chronological order** (times are shown in GMT -04:00)

---

💬 **CHAT - CB0565594 - 00027**

\#  ████████████    ▶ 6/22/2021, 1:10 PM

Two things: 1) team super frustrated by not meeting plans on fills , releases and Q issues. It is hard to trust the numbers and plans coming from Bloomington. We will miss the quarter by a lot and now danger to miss target in July. Scott was there this wk. Need to have a mtg again with Denis Scott you and m. Dont know what to expect.... 2) Italian gov reached out to us and open for vials and pfs. We should talk too. I am a bit confused. Will call by end of day.

\#  ████████████    ▶ 6/22/2021, 1:11 PM

From Juan

\#  ████████████    ▶ 6/22/2021, 1:11 PM

On point 1 need an update ASAP

**MR**  **Riley, Mike** ████████████    ◀ 6/22/2021, 1:22 PM

Just saw Scott in Bloomington and he and Denis just finished a 1:1 update.  Will debrief with Denis and provide an update

\#  ████████████    ▶ 6/22/2021, 1:22 PM

BTW I was told last week that our fills we're getting better and we were going to be only a few short from the target... that doesn't match message above

**MR**  **Riley, Mike** ████████████    ◀ 6/22/2021, 1:24 PM

That was also my understanding so will connect the dots

**KF**  **Karen Flynn** ████████████    ▶ 6/22/2021, 2:12 PM

Important that the two companies align on targets from here to end of quarter for fills (large and small) and releases (doses).

\#  ████████████    ▶ 6/22/2021, 2:12 PM

I thought we were

\#  ████████████    ▶ 6/22/2021, 2:13 PM

Denis had a lot of back and forth with them

**KF**  **Karen Flynn** ████████████    ▶ 6/22/2021, 5:29 PM

Yes seemed we aligned on number of batches but they are changing large vs small fill volume and we don't know exactly of the 300M if all of that is needed from CTLT, or what portion will come from Baxter, or how much of what we are making goes OUS...etc.

**MR**  **Riley, Mike** ████████████    ◀ 6/22/2021, 5:33 PM

Just emailed a summary

CONFIDENTIAL                                                        MRILEY00069

# EXHIBIT 13

## Short Message Report

| Conversations: 1 | Participants: 4 |
|---|---|
| Total Messages: 15 | Date Range: 2/9/2023 |

## Outline of Conversations



**CHAT - CB0565594 - 00006** · 15 messages on 2/9/2023 · ▊▊▊▊▊▊▊ · Andrew Espejo
▊▊▊▊▊▊▊ · Ricardo Zayas ▊▊▊▊▊▊▊ · Riley, Mike ▊▊▊▊▊▊▊

CONFIDENTIAL

MRILEY00070

**Messages in chronological order** (times are shown in GMT -05:00)

---

💬    **CHAT - CB0565594 - 00006**

**AE**    **Andrew Espejo** ▬▬▬▬▬▬                                          ▶ 2/9/2023, 5:37 AM

Good morning Mike, Ricardo,Scott: last night I spoke with Tim Mills, Moderna, who shared that their CTO, Jehr, would like to meet with the key members of the SLT to discuss the current issue with VL3. This meeting will take place on Friday 10FEB. We will talk more about this during our 7am call this morning.

**RZ**    **Ricardo Zayas** ▬▬▬▬▬▬                                          ▶ 2/9/2023, 6:29 AM

Who is this 812. I'm travelling Friday. With two flights. It would have to be very surgical, between flights.

**AE**    **Andrew Espejo** ▬▬▬▬▬▬                                          ▶ 2/9/2023, 6:35 AM

Hi Ricardo. Sorry it's Andrew. I had my business phone number on this text. But we'll work it out. If you let me know what times you're flying I can figure out where to put this meeting.

**#**    ▬▬▬▬▬▬                                                            ▶ 2/9/2023, 6:48 AM

fyi. I do have a 7am on my calender

**RZ**    **Ricardo Zayas** ▬▬▬▬▬▬                                          ▶ 2/9/2023, 7:00 AM

Scott this is yet another meeting with Moderna. Andrew when is the Moderna team going to take this over. When have almost 40 meetings a week with them.

**#**    ▬▬▬▬▬▬                                                            ▶ 2/9/2023, 7:01 AM

sorry. do not.

**MR**    **Riley, Mike** ▬▬▬▬▬▬                                            ◀ 2/9/2023, 8:44 AM

Alessandro spoke to Jerh last night and sounds like Jerh is leaving it to Tara and team to work with us on the issue. Not sure if we have heard more about another call with Jerh but he didn't mention it to Alessandro

**AE**    **Andrew Espejo** ▬▬▬▬▬▬                                          ▶ 2/9/2023, 8:44 AM

Ok. I will follow up with Tim M

**AE**    **Andrew Espejo** ▬▬▬▬▬▬                                          ▶ 2/9/2023, 8:51 AM

I just checked with Tim and the expectation is still there to meet with Jehr tomorrow morning for 30 minutes. Is there anytime that works for each of you? I will Coordinate a touch point with the site team and Tim Mills today to set expectations.

**MR**    **Riley, Mike** ▬▬▬▬▬▬                                            ◀ 2/9/2023, 8:54 AM

Sounds like Ricardo's schedule is tightest due to travel. I can be a bit more flexible

**#**    ▬▬▬▬▬▬                                                            ▶ 2/9/2023, 9:08 AM

I am flexible.

**RZ**    **Ricardo Zayas** ▬▬▬▬▬▬                                          ▶ 2/9/2023, 9:17 AM

I can while driving to the airport between 9 and 10.

**AE**    **Andrew Espejo** ▬▬▬▬▬▬                                          ▶ 2/9/2023, 9:28 AM

Liked "I can while driving to the airport between 9 and 1..."

**AE**    **Andrew Espejo** ▬▬▬▬▬▬                                          ▶ 2/9/2023, 9:29 AM

Jehr's availability is from 8:30-9 and 10 to Noon

**AE**    **Andrew Espejo** ▬▬▬▬▬▬                                          ▶ 2/9/2023, 9:54 AM

Let's go with 8:30am to 9am. Angie is scheduling a meeting with us and the team to align.

---

CONFIDENTIAL                                                                      MRILEY00071

CONFIDENTIAL

MRILEY00072

# EXHIBIT 14

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 24 | Date Range: 2/6/2023 - 2/7/2023 |

## Outline of Conversations

 **CHAT - CB0565594 - 00008** · 24 messages between 2/6/2023 - 2/7/2023 · Andrew Espejo ▓▓▓▓▓▓▓▓▓▓ · Ricardo Zayas ▓▓▓▓▓▓▓▓ · Riley, Mike ▓▓▓▓▓▓

CONFIDENTIAL

MRILEY00081

**Messages in chronological order** (times are shown in GMT -05:00)

---

💬    **CHAT - CB0565594 - 00008**

RZ    **Ricardo Zayas** ▬▬▬▬      ▶ 2/6/2023, 8:25 PM
Every batch has an issue Andrew. Is this what Tara refers to as AVI?

AE    **Andrew Espejo** ▬▬▬▬      ▶ 2/6/2023, 8:32 PM
AVI is automated visual inspection. Moderna needs the PFS PPQ batches 100% inspected for BLA submission where we were planning on 10% manual for BLA and 100% with AVI when the AVI is validated in late April

RZ    **Ricardo Zayas** ▬▬▬▬      ▶ 2/6/2023, 8:34 PM
Is this the covid PFS batch (3rd) that we said today was actually running now?

AE    **Andrew Espejo** ▬▬▬▬      ▶ 2/6/2023, 8:34 PM
Yes it is. Sorry for leaving that out in a text.

RZ    **Ricardo Zayas** ▬▬▬▬      ▶ 2/6/2023, 8:35 PM
Why wasnt this brought up this AM. I asked Carissa for a recount, both stories not just ours.

AE    **Andrew Espejo** ▬▬▬▬      ▶ 2/6/2023, 8:37 PM
Apparently this came up in meetings with Moderna today. I got it at the 5pm meeting with Moderna

RZ    **Ricardo Zayas** ▬▬▬▬      ▶ 2/6/2023, 8:46 PM
We need to know these things before they do. No worries, I am taking it up with Carissa. We cant continue to be broadsided and always on the defensive.

RZ    **Ricardo Zayas** ▬▬▬▬      ▶ 2/7/2023, 7:15 AM
I don't get this. How can we be so far off: we thinking 10 and they 100?

MR    **Riley, Mike** ▬▬▬▬      ◀ 2/7/2023, 7:19 AM
This is a big deal that we need to figure out

MR    **Riley, Mike** ▬▬▬▬      ◀ 2/7/2023, 7:34 AM
Can we circle after this call?

AE    **Andrew Espejo** ▬▬▬▬      ▶ 2/7/2023, 7:35 AM
Yes

AE    **Andrew Espejo** ▬▬▬▬      ▶ 2/7/2023, 9:05 AM
We are meeting at 9:30am

RZ    **Ricardo Zayas** ▬▬▬▬      ▶ 2/7/2023, 9:30 AM
Andrew, a point from Tara:

We have a dedicated Moderna line VL3 that is not full currently. Can we divert resources from the line to help accelerate the AVI work? I know it is a different building but if the resources are not being used for production I am thinking there may be an opportunity. Also anything my team can do - also willing to help.

Ricardo

AE    **Andrew Espejo** ▬▬▬▬      ▶ 2/7/2023, 9:31 AM
Agreed and the Inspection team is working on that. We are meeting at 9:30am to hammer this out.

---

CONFIDENTIAL     

**RZ**  Ricardo Zayas ████████████                                    ▶ 2/7/2023, 9:34 AM

Text me when you're done. If we have to call the FDA district to renegotiate the AIM, we should consider that. Its that vs the covid season…

**RZ**  Ricardo Zayas ████████████                                    ▶ 2/7/2023, 10:16 AM

How many people do you need for manual inspection? And when.

**AE**  Andrew Espejo ████████████                                    ▶ 2/7/2023, 10:16 AM

I will ask the Team and revert.

**RZ**  Ricardo Zayas ████████████                                    ▶ 2/7/2023, 11:01 AM

Need this asap.

**AE**  Andrew Espejo ████████████                                    ▶ 2/7/2023, 11:01 AM

Sunil is following up on this right now

**RZ**  Ricardo Zayas ████████████                                    ▶ 2/7/2023, 11:25 AM

Pls tect me.

**AE**  Andrew Espejo ████████████                                    ▶ 2/7/2023, 11:28 AM

Liked "Pls tect me. "

**AE**  Andrew Espejo ████████████                                    ▶ 2/7/2023, 11:40 AM

First pass it will theoretically take  6.5 days with all manual booths fully staffed. This will require 94 resources.  Sunil is checking with Ops on resourcing and what impact this will have on existing commercial/project batches.

**RZ**  Ricardo Zayas ████████████                                    ▶ 2/7/2023, 12:46 PM

Thats alot of people. I'll call you to discuss other options. That said and assuming this is our only option given that the AIM's are a qualification, not a re-qualification, when will we know trade offs?

**AE**  Andrew Espejo ████████████                                    ▶ 2/7/2023, 12:47 PM

Sunil and his team are working this out for a meeting at 3:30

CONFIDENTIAL                                                                                    MRILEY00083

# EXHIBIT 15

## Short Message Report

| Conversations: 1 | Participants: 2 |
|---|---|
| Total Messages: 5 | Date Range: 11/16/2023 |

**Outline of Conversations**

 **CHAT - CB0193681 - 00427** · 5 messages on 11/16/2023 · Bruno Stutzmann Belgio ▇▇▇▇ · Sambuco, Barbara ▇▇▇▇

**Messages in chronological order** (times are shown in GMT +00:00)

---

💬    **CHAT - CB0193681 - 00427**

BS    **Sambuco, Barbara** ▮▮▮▮▮▮▮▮▮                                          ◀ 11/16/2023, 3:52 PM

6 observation in the BMT 483. I can send you but just for you. I received it by Andrea in a non authorized process. That is why the question from Ricardo

BB    **Bruno Stutzmann Belgio**▮▮▮▮▮▮▮▮                                     ▶ 11/16/2023, 3:56 PM

Do you have the details?

BS    **Sambuco, Barbara** ▮▮▮▮▮▮▮▮▮                                          ◀ 11/16/2023, 3:58 PM

Attachment Title: 483 received 15NOV23.pdf


*Attachment: 483 received 15NOV23.pdf (747 KB)*

BS    **Sambuco, Barbara** ▮▮▮▮▮▮▮▮▮                                          ◀ 11/16/2023, 3:58 PM

Attachment Title: 483 received 15NOV23.pdf


*Attachment: 483 received 15NOV23.pdf (747 KB)*

BS    **Sambuco, Barbara** ▮▮▮▮▮▮▮▮▮                                          ◀ 11/16/2023, 3:59 PM

See what's up

CONFIDENTIAL                                                                              Catalent_03592521

# EXHIBIT 16

## Short Message Report

| Conversations: 1 | Participants: 2 |
|---|---|
| Total Messages: 3 | Date Range: 7/25/2023 |

### Outline of Conversations

💬 **CHAT - CB0193681 - 01367** · 3 messages on 7/25/2023 · Ricardo Zayas ▉▉▉▉▉▉▉▉▉▉▉ · Sambuco, Barbara ▉▉▉▉▉▉

Catalent_03592549

**Messages in chronological order** (times are shown in GMT +00:00)

💬 **CHAT - CB0193681 - 01367**

\#   **Ricardo Zayas** ████████████████████                    ▶ 7/25/2023, 12:13 PM

How did it go with the OOS yesterday Barbara and any news on BRU releases?

BS  **Sambuco, Barbara** ███████████████                       ◀ 7/25/2023, 3:03 PM

Release attainament 60 %. We are not yet on track. Today I was in Anagni for Alessandro visit and I reviewed the moderna data with the team so I don't attend the brx steering com that despite promises is still in place… I will have a call with Bruno tomorrow morning but seems Scot was screaming for the deviations. They explained the plan and Scott asked to be included in the Friday call.

BS  **Sambuco, Barbara** ███████████████                       ◀ 7/25/2023, 3:06 PM

Moderna didn't help on those OOS. The team is working on different hypothesis tomorrow we could have more info's being a moderna rappresentative on site. We shared the point with Alessandro today as well

CONFIDENTIAL

Catalent_03592550

# EXHIBIT 17

Case 3:23-cv-01108-ZNQ-JTQ    Document 139    Filed 10/15/25    Page 71 of 75 PageID: 2729

Deposition of Wim Blendeman - Rough Draft    City of Warwick Retirement System v. Catalent, Inc., et al.

ROUGH DRAFT DISCLAIMER

NOTICE

This transcript is an UNCERTIFIED ROUGH DRAFT TRANSCRIPT ONLY.  It contains the raw output from the court reporter's stenotype machine translated into English by the court reporter's computer, without the benefit of proofreading.  It will contain untranslated steno outlines, mistranslations (wrong words), and misspellings.  These and any other errors will be corrected in the final transcript. Since this rough draft transcript has not been proofread, the court reporter cannot assume responsibility for any errors.

This rough draft transcript is intended to assist attorneys in their case preparation and is not to be construed as the final transcript.  It is not to be read by the witness or quoted in any pleading or for any other purpose and may not be filed with any court.

Case 3:23-cv-01108-ZNQ-JTQ    Document 139    Filed 10/15/25    Page 72 of 75 PageID: 2730

Deposition of Wim Blendeman - Rough Draft    City of Warwick Retirement System v. Catalent, Inc., et al.

any product where you are in a launch curve that would be a very bad timing.

Q.  Launch curve, did you say?

A.  A launch curve, this is a very bad timing, because you put your product on the market and a few weeks later you need to stop distribution, or potentially stop distribution, because you don't have a sufficient amount of product for whatever reason, okay.  Then in addition to this being a product that was exceptionally interesting for the end consumers and patients, the pick up was even much bigger than Novo Nordisk had expected, or had anticipated for.

Q.  Did Novo --

A.  Making the impact more important.

Q.  Did Novo Nordisk put pressure on Catalent to restart sooner than it was ready to?

A.  It put pressure overall, if you looked through the different communications of the exhibits, they continued to put pressure.  Did they pressurize us to puts ourselves in a non-compliant state, if that's the question, or I anticipate that question, no.

Q.  You wrote that time should have been taken to ask certain requests and reflect on certain areas.  Was it your opinion that the restart occurred too soon?

A.  No.

Q.  Do you recall if it was the opinion of the FDA following the August 2022 inspection that Catalent Brussels had restarted too soon?

A.  I don't recall having them that opinion.

(Exhibit Blendeman 23    marked for identification)

Q.  I would like to introduce as exhibit 23-tab 47.  For the record tab 23 is a document bearing the Bates stamp Catalent_01252716, and it looks like a MS Teams chat between you and this Dzenana Cengic?

A.  Dzenana Cengic.

A.  Yes.

Q.  Is this a MS Teams chat?

A.  I don't know.  I have never seen a printout from a MS Teams chat, so if you say this is a MS Teams, I trust you on that, but I don't know.

Q.  Do you utilize MS Teams chats during your time as the GM of the Brussels facility?

A.  Yes.

Q.  Did you also use text messaging on Whatsapp?

A.  Occasionally.

Q.  On what frequent consist?

A.  We had a group, I believe it was a SLT or an OLT group, where we used text messages to -- what I would typically do is over the weekend, during the night, if you want to send a message across, so you send something out, it is

more direct or more accessible than an email; an email you need to open the computer, well, you can do it on a smartphone, but it is more cumbersome, so a quick coordination message ^, so during that time you need to understand we worked a lot over weekends, we worked nights, we communicated to the US and then wanted to get a quicker message across, so without being too much intrusive, I did communicate occasionally on Whatsapp to get a quick update ^.

Q. Using your telephone number?  Whatsapp use as telephone number, it doesn't use an email address?

A. Yes, yes, absolutely, yes.

Q. And do you recognize what I have marked as exhibit 23?

A. Let me read through this.

Okay, I went through it.

Q. Do you recognize what I marked as exhibit 23?

A. I do.

Q. And is this a chat you had with Ms. Cengic?

A. Dzenana Cengic.

Q. Dzenana Cengic.    Is this a chat you had with her on or about August 22 at 10 o'clock in the morning?

A. Yes, that's what it says.

Q. And do you remember discussing with Dzenana that she was:

"Quite concerned with most of our customers as they

Case 3:23-cv-01108-ZNQ-JTQ   Document 139   Filed 10/15/25   Page 75 of 75 PageID: 2733

Deposition of Wim Blendeman - Rough Draft                    City of Warwick Retirement System v. Catalent, Inc., et al.

are starting to look for other options.  GSK mentioned that the concern for their launch, we are putting Taq da at challenge with a launch without speaking of Samsung, Biogen, the cell yum, we are quite in read all over."

Do you see that ^?

A.   Yes I do.

Q.   And you respond:

"Yes, fully aware, just got a message from Samsung escalating."

Do you see that?

A.   Yes.

Q.   Does that refresh your recollection that following the FDA inspection in August 2022 customers were escalating issues with you?

A.   For me in doesn't reflect the link with the audit of the FDA, but the link with the extend cher down, which was it, 20 June we saw in the document before, until 15 July, and we did no, we sent a message somewhere in August, I can't recall the date, from gen Jean Greene, that we had not restarted yet.  So I have a belief that that is a trigger of that customer coming from a lengthy shutdown, restarting, shutdown within another extension.

Q.   And had you heard that customers of Catalent's Brussels facility were starting to look for other options for