**CARELLA BYRNE CECCHI
BRODY & AGNELLO, PC**
James E. Cecchi
5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone: (973) 994-1700

*Liaison Counsel for the Proposed
Settlement Class*

**LABATON KELLER SUCHAROW LLP**
Christine M. Fox (*pro hac vice*)
Adam Federer (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700

**KESSLER TOPAZ MELTZER &
CHECK, LLP**
Matthew L. Mustokoff (*pro hac vice*)
Joshua E. D'Ancona
Jamie M. McCall (*pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

*Co-Lead Counsel for Lead Plaintiffs SEB
Investment Management AB and Public
Employees' Retirement System of
Mississippi, and Proposed Settlement Class*

*Additional Counsel on Signature Page*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF WARWICK RETIREMENT SYSTEM, Individually and on behalf of all others similarly situated, | Case No: 3:23-cv-01108-ZNQ-JTQ |
| Plaintiff, | Hon. Zahid N. Quraishi District Judge |
| v. | Hon. Justin T. Quinn Magistrate Judge |
| CATALENT, INC., JOHN CHIMINSKI, ALESSANDRO MASELLI, and THOMAS CASTELLANO, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND AUTHORIZATION TO DISSEMINATE <u>NOTICE OF SETTLEMENT</u>

# <u>TABLE OF CONTENTS</u>

**Page**

I.  PRELIMINARY STATEMENT ...................................................................1

II. FACTUAL BACKGROUND...................................................................4

    A.  Overview of the Action .......................................................................4

    B.  Settlement Negotiations and Terms of the Proposed Settlement..........8

III. THE SETTLEMENT MERITS PRELIMINARY APPROVAL ..................10

    A.  Standards Governing Approval of Class Action Settlements .............10

    B.  The Court "*Will Likely Be Able*" to Approve the Proposed
        Settlement Under Rule 23(e)(2) .........................................................13

        1.  Procedural Aspects of the Settlement Satisfy Rule
            23(e)(2).........................................................................13

            (a)  Lead Plaintiffs and Co-Lead Counsel Have
                Adequately Represented the Settlement Class ...............14

            (b)  The Settlement Was Reached Through Arm's-
                Length Negotiations Between Experienced
                Counsel and with the Assistance of an Experienced
                Mediator..........................................................................15

        2.  The Settlement's Terms Are Adequate.....................................16

            (a)  The Settlement Provides Substantial Relief,
                Especially in Light of the Costs, Risks, and Delay
                of Further Litigation .......................................................16

            (b)  The Settlement Treats All Class Members Fairly ..........21

            (c)  The Settlement Does Not Excessively Compensate
                 Counsel ...........................................................................22

             (d)  Agreements Made in Connection with the
                 Settlement .......................................................................23

IV. THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23.............23

A.  The Settlement Class Satisfies the Requirements of Rule 23(a)..........25

    1.  The Settlement Class Satisfies Numerosity ..............................25

    2.  There Are Common Questions of Law and Fact ......................26

    3.  Lead Plaintiffs' Claims Are Typical of the Settlement Class ....................................................................................27

    4.  Lead Plaintiffs and Co-Lead Counsel Are Adequate ..............28

B.  The Settlement Class Satisfies the Requirements of Rule 23(b)(3) .................................................................................29

    1.  Common Legal and Factual Questions Predominate................29

    2.  A Class Action Is Superior to Other Adjudication Methods ..................................................................................30

V.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ..............31

VI.  NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED .........................................................................................34

VII.  PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS........37

VIII.  CONCLUSION............................................................................38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens v. United States*,
  406 U.S. 128 (1972)...........................................................................30

*Alves v. Main*,
  2012 WL 6043272 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151
  (3d Cir. 2014)..................................................................................15

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).............................................................24, 25, 29, 30

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)...........................................................................29

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)...........................................................................30

*Beltran v. SOS Ltd.*,
  2023 WL 319895 (D.N.J. Jan. 3, 2023), *R. & R. adopted*,
  2023 WL 316294 (D.N.J. Jan. 19, 2023).................................................31

*Bredbenner v. Liberty Travel, Inc.*,
  2011 WL 1344745 (D.N.J. Apr. 8, 2011).................................................16

*In re Celgene Corp. Sec. Litig.*,
  2020 WL 8870665 (D.N.J. Nov. 29, 2020) ..............................................27

*City of Sterling Heights Gen. Ret. Sys. v. Prudential Fin., Inc.*,
  2015 WL 5097883 (D.N.J. Aug. 31, 2015) .........................................26, 27

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)..........................................................................8, 30

*Easterday v. USPack Logistics LLC*,
  2023 WL 4398491 (D.N.J. July 6, 2023) ................................................12

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) ...............................................................10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011)............................................................30

*Farrar v. Workhorse Grp., Inc.*,
    2023 WL 5505981 (C.D. Cal. July 24, 2023)....................................21

*Fernandez v. DouYu Int'l Holdings Ltd.*,
    2025 WL 972836 (D.N.J. Mar. 31, 2025) .......................................25

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ............................................. 12-13

*Hacker v. Elec. Last Mile Sols. Inc.*,
    2024 WL 5102696 (D.N.J. Nov. 6, 2024) .................................. 36-37

*In re Heckmann Corp. Sec. Litig.*,
    2013 WL 2456104 (D. Del. June 6, 2013) .......................................31

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245 (N.D. Cal. Sep. 4, 2018) ....................................23

*In re Hemispherx Biopharma, Inc., Sec. Litig.*,
    2011 WL 13380384 (E.D. Pa. Feb. 14, 2011) ............................. 20-21

*Huffman v. Prudential Ins. Co. of Am.*,
    2019 WL 1499475 (E.D. Pa. Apr. 5, 2019)......................................13

*In re Humanigen, Inc. Sec. Litig.*,
    2024 WL 4182634 (D.N.J. Sep. 13, 2024) ......................................37

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
    2023 WL 4981716 (D.N.J. Aug. 3, 2023) .......................................28

*In re Innocoll Holdings Pub. Ltd. Sec. Litig.*,
    2022 WL 717254 (E.D. Pa. Mar. 10, 2022) .....................................23

*In re Ins. Brokerage Antitrust Litig.*,
    282 F.R.D. 92 (D.N.J. 2012)..................................................13

*In re Ins. Brokerage Antitrust Litig.*,
    297 F.R.D. 136 (D.N.J. 2013)................................................22

*James v. Glob. Tel\*Link Corp.*,
  2020 WL 6197511 (D.N.J. Oct. 22, 2020) .........................................................11

*Kanefsky v. Honeywell Int'l Inc.*,
  2022 WL 1320827 (D.N.J. May 3, 2022).....................................................33, 37

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) ...............................................................................25

*In re Merck & Co. Sec., Derivative & ERISA Litig.*,
  2013 WL 396117 (D.N.J. Jan. 30, 2013)........................................................27, 28

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950)............................................................................................34

*Neale v. Volvo Cars of N. Am., LLC*,
  794 F.3d 353 (3d Cir. 2015) ..........................................................................29, 30

*In re Par Pharm. Sec. Litig.*,
  2013 WL 3930091 (D.N.J. July 29, 2013) ................................................... 16-17

*Pozzi v. Smith*,
  952 F. Supp. 218 (E.D. Pa. 1997).....................................................................24

*Reyes v. Netdeposit, LLC*,
  802 F.3d 469 (3d Cir. 2015) ...............................................................................26

*Roofer's Pension Fund v. Papa*,
  333 F.R.D. 66 (D.N.J. 2019)........................................................................27, 31

*In re Schering-Plough Corp./ENHANCE Sec. Litig.*,
  2012 WL 4482032 (D.N.J. Sep. 25, 2012) .........................................................28

*Schuler v. Meds. Co.*,
  2016 WL 3457218 (D.N.J. June 24, 2016)........................................................20

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ......................................................................... 10-11

*In re Wilmington Tr. Sec. Litig.*,
  2018 WL 6046452 (D. Del. Nov. 19, 2018).......................................................20

**Statutes and Rules**

15 U.S.C. § 78u-4(a)(4) ...........................................................................33

15 U.S.C. § 78u-4(a)(7) ...........................................................................36

Fed. R. Civ. P. 23 ..............................................................................*passim*

**Other Authorities**

Edward Flores and Svetlana Starykh, *Recent Trends in Securities
    Class Action Litigation: 2024 Full-Year Review*. (NERA Economic
    Research Associates, Inc. 2025) ...........................................................1

Edward Flores and Svetlana Starykh, *Recent Trends in Securities
    Class Action Litigation: H1 2025 Update* (NERA Economic
    Research Associates, Inc. 2025) ...........................................................2

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.14 (2025)..............................11

WILLIAM B. RUBENSTEIN, 4 NEWBERG & RUBENSTEIN ON CLASS
    ACTIONS § 13:13 (6th ed. 2025) ...........................................................12

Court-appointed Lead Plaintiffs SEB Investment Management AB ("SEB") and Public Employees' Retirement System of Mississippi ("MPERS," and together with SEB, "Lead Plaintiffs"), on behalf of themselves and the proposed Settlement Class (defined below), respectfully submit this Memorandum of Law in support of their Motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), for entry of the Parties' agreed-upon [Proposed] Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order").[1]

## I.    PRELIMINARY STATEMENT

After nearly three years of hard-fought litigation, Lead Plaintiffs have agreed to resolve the Settlement Class's claims against Catalent, Inc. ("Catalent"), John Chiminski, Alessandro Maselli, and Thomas Castellano (collectively, "Defendants") for a $78,000,000 cash payment—an amount that is more than five times the median federal securities class action settlement amount in 2024 and the first half of 2025.[2]

---

[1]    All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated December 22, 2025 ("Stipulation" or "Stip."), which is attached as Exhibit 1 to the Joint Declaration of Joshua E. D'Ancona and Christine M. Fox, dated December 23, 2025, filed herewith ("Joint Decl."). Internal citations, quotation marks, and footnotes have been omitted and emphasis has been added unless otherwise indicated.

[2]    *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review.*, at 1 (NERA Economic Research Associates, Inc. 2025) (noting median settlement value for 2024 was $14 million);

At this time, Lead Plaintiffs seek the Court's preliminary approval of the Settlement pursuant to Rule 23(e)(1) so that notice of the Settlement can be provided to the Settlement Class and the final Settlement Hearing can be scheduled.

Lead Plaintiffs and Co-Lead Counsel believe that the Settlement provides a substantial benefit to the Settlement Class. In agreeing to settle at this juncture, Lead Plaintiffs and their counsel made a fully-informed evaluation of the risks of continuing to litigate this complex case—through the completion of discovery, a ruling on class certification, summary judgment, and trial—against the benefits of a certain recovery for the Settlement Class at this time. Indeed, in the absence of settlement, Lead Plaintiffs faced the considerable risk that the Court would rule in Defendants' favor at either the class certification or summary judgment stage, or that a trial of the Action and the likely appeals that would follow could have precluded *any* recovery for the Settlement Class, let alone a recovery greater than the Settlement Amount.

Lead Plaintiffs and Co-Lead Counsel had a well-informed understanding of the strengths and weaknesses of the Settlement Class's claims and Defendants' defenses at the time of settlement. Lead Plaintiffs, through their counsel, developed

---

Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: H1 2025 Update*, at 2, 16 (NERA Economic Research Associates, Inc. 2025) (noting median settlement value for first half of 2025 was $12.5 million), attached as Exs. 6 and 7 to Joint Declaration.

a robust factual record through an extensive investigation into the claims at issue, including a detailed review of publicly available information, interviews with 93 former Catalent employees, and consultation with accounting experts. Lead Plaintiffs and Co-Lead Counsel also, among other things: (i) prepared an amended complaint based on their extensive investigation; (ii) opposed and defeated, in part, Defendants' motion to dismiss; (iii) conducted substantial fact discovery, including obtaining and analyzing approximately 3.8 million pages of documents produced by Defendants and third parties, taking or defending 17 fact depositions, and obtaining and/or serving extensive written discovery, including interrogatories and requests for admission; (iv) consulted with industry and economic experts on merits and discovery issues; and (v) moved for class certification (and were in the process of preparing a reply in response to Defendants' opposition at the time of settlement). Joint Decl. ¶¶ 5, 10-31.

Last month, the Parties engaged in arm's-length negotiations facilitated by a highly-experienced and well-respected mediator, David M. Murphy, Esq. of Phillips ADR Enterprises, P.C. *Id.* at ¶¶ 34- 35. This included a day-long, formal mediation and substantial briefing. Both sides ultimately accepted Mr. Murphy's recommendation (in a double-blind fashion) to resolve the Action for $78 million. *Id.* at ¶ 34.

At the Settlement Hearing, the Court will have before it more extensive

submissions in support of the Settlement, and will be asked to determine whether, in accordance with Rule 23(e)(2), the Settlement is "fair, reasonable, and adequate." Entry of the Preliminary Approval Order will begin the process for considering final approval of the Settlement by: (i) preliminarily approving the Settlement on the terms set forth in the Stipulation; (ii) approving the form and content of the notices that will inform the Settlement Class of the proposed Settlement and related information; (iii) approving the plan for disseminating notice to the Settlement Class; (iv) approving retention of Epiq Class Action & Claims Solutions ("Epiq") as the Claims Administrator; and (v) scheduling the Settlement Hearing and related deadlines.

As set forth in the proposed schedule in Section VII *infra*, Lead Plaintiffs request that the Court schedule the Settlement Hearing for a date no fewer than 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter, to allow time for providing notice to the Settlement Class and compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 *et seq*.

## II.    FACTUAL BACKGROUND

### A.    Overview of the Action

As explained in the Joint Declaration, this Action was filed on February 24, 2023. ECF No. 1. Following briefing, the Court, on June 12, 2023, appointed SEB and MPERS as Lead Plaintiffs, pursuant to the Private Securities Litigation Reform

Act of 1995 ("PSLRA"), and approved their selection of Kessler Topaz Meltzer & Check, LLP and Labaton Sucharow LLP (n/k/a Labaton Keller Sucharow LLP) as Co-Lead Counsel for the class and Carella, Byrne, Cecchi, Brody & Agnello, P.C. ("Carella Byrne") as Liaison Counsel for the class. ECF No. 30.[3]

Based on a thorough investigation conducted by Co-Lead Counsel, including interviews of 93 former Catalent employees regarding facts and circumstances pertinent to the Action, Lead Plaintiffs filed the 186-page Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint") on September 15, 2023. ECF No. 47. The Amended Complaint included information provided by thirteen former Catalent employees.

Lead Plaintiffs asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC"), against Defendants on behalf of all persons and entities who purchased or otherwise acquired publicly-traded Catalent common stock or exchange-traded call options or sold exchange traded put options of Catalent during the period from August 30, 2021 through May 7, 2023, inclusive, and were damaged thereby. *Id.* at ¶ 1. Lead Plaintiffs alleged that Defendants knowingly or recklessly misled investors about Catalent's

---

[3]     On June 21, 2023, the Action was reassigned from United States District Judge Robert Kirsch to United States District Judge Zahid N. Quraishi for all further proceedings. ECF No. 34.

true financial, accounting and operational condition in materially false and misleading public statements during the Class Period. Lead Plaintiffs grouped the allegedly actionable misstatements into three categories: (i) the Quality Control Statements; (ii) the GAAP Compliance Statements; and (iii) the Non-Vaccine Demand Statements. *Id.* at ¶¶ 3-5. Lead Plaintiffs further alleged that Catalent's common stock and call option prices were artificially inflated (and Catalent's put option prices artificially deflated) as a result of Defendants' misrepresentations and declined when the truth was revealed through a series of corrective disclosures, damaging Catalent investors. *Id.* at ¶¶ 5-17.

On November 15, 2023, Defendants moved to dismiss the Amended Complaint in its entirety. ECF No. 58. Lead Plaintiffs opposed Defendants' motion on January 12, 2024. ECF No. 66. Following full briefing, the Court entered its Opinion and Order granting in part and denying in part Defendants' motion to dismiss ("MTD Order"). ECF Nos. 70 & 71. By its MTD Order, the Court dismissed the alleged Non-Vaccine Demand Statements but sustained various Quality Control Statements and GAAP Compliance Statements, from within the full alleged Class Period. *Id.* On August 12, 2024, Defendants filed their Answer to the Amended Complaint and Affirmative Defenses, asserting that, *inter alia*, Defendants believed in good faith that their public statements were true, the alleged misstatements had caused no losses, and there were no cognizable damages. ECF No. 82.

Fact discovery began in August 2024. Among other things, in the fact discovery stage, Co-Lead Counsel: (i) served omnibus document requests on Defendants; (ii) served document subpoenas on 22 third parties, including Catalent's lead outside auditor, EY, LLP, Catalent's quality and/or accounting consultants PricewaterhouseCoopers, LLP and Lachman Consulting, the U.S. Food & Drug Administration, and several former Catalent management-level employees; (iii) obtained and reviewed over 3.6 million pages of documents from Defendants and another roughly 287,000 pages from third parties; (iv) served interrogatories and requests for admission on Defendants; (v) took the depositions of nine current or former Catalent senior-level employees, participated in the depositions of two of Lead Plaintiffs' external investment managers, and defended the depositions of corporate representatives of SEB and MPERS (two witnesses) and an additional witness from SEB; (vi) reviewed and produced documents in response to Defendants' discovery requests; and (vii) were preparing to take the depositions of up to eleven more witnesses, including Defendants Chiminski, Maselli, and Castellano and other current or former senior managers at Catalent, before the end of fact discovery in December 2025. Joint Decl. ¶¶ 24-28.

While pursuing fact discovery, Lead Plaintiffs moved for class certification on July 1, 2025 ("Motion to Certify")—serving their motion for class certification and supporting exhibits, including declarations from SEB and MPERS and a report

on issues of market efficiency and damages methodology by economic expert Chad Coffman of Peregrine Economics. *Id.* at ¶ 29. In accordance with the Court's Scheduling Order, ECF No. 85, Lead Plaintiffs were prepared to file their Motion to Certify with the Court once all of the related briefing was complete. *Id.*

Defendants deposed Mr. Coffman and witnesses from Lead Plaintiffs, and thereafter served their brief in opposition to the Motion to Certify on October 30, 2025. *Id.* at ¶ 30. In their opposition, Defendants argued that class certification should be denied on several grounds, including that Lead Plaintiffs: (i) could not establish the necessary element of class-wide reliance and thus were unable to satisfy the predominance requirement of Rule 23; and (ii) had failed to put forth a damages methodology that fit the asserted liability claims as required by *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) and its progeny. *Id.* In support, Defendants served numerous exhibits, including a 114-page report by their economic expert Paul Zurek, Ph.D. of Cornerstone Research, Inc. *Id.*

At the time of settlement, Lead Plaintiffs were preparing to take the deposition of Dr. Zurek in December 2025. Lead Plaintiffs were also preparing a reply in further support of their Motion to Certify, to be served on January 15, 2026. *Id.* at ¶ 31.

## B.    Settlement Negotiations and Terms of the Proposed Settlement

In its August 15, 2024 Scheduling Order, the Court directed counsel for the Parties to "be prepared to discuss settlement at every conference with the Court."

*See* ECF No. 85, ¶ 30. Accordingly, prior to each of the case management and status conferences following this Order, counsel conferred and discussed points related to settlement. Joint Decl. ¶ 32. During discussions in August 2025, the Parties agreed to mediate before Mr. David Murphy, Esq. and went on to schedule a mediation for November 19, 2025—a point in the litigation at which fact discovery would be well advanced and could reasonably inform the Parties' settlement discussions. *Id.* at ¶ 33.

On November 19, 2025, the Parties participated in a nearly 10-hour mediation session with Mr. Murphy in New York. *Id.* at ¶ 34. At the conclusion of the mediation, Mr. Murphy issued a mediator's double-blind proposal to resolve the Action for $78 million, which both sides accepted by the November 21, 2025 deadline. *Id.* The Parties memorialized their agreement in principle in a term sheet executed on November 21, 2025 ("Term Sheet") and notified the Court of their agreement on November 25, 2025. *Id.* at ¶ 35. Thereafter, the Parties engaged in negotiations over the specific terms of their agreement and ultimately executed the Stipulation on December 22, 2025. *Id.* at ¶ 36.[4]

The Stipulation provides that Catalent agrees to cause the payment of the Settlement Amount by its insurance carriers into an Escrow Account. Stip. ¶ 7. The

---

[4]    On the same day, Plaintiffs and Defendants also entered into a confidential Supplemental Agreement, which gives Catalent the right to terminate the Settlement if valid exclusion requests exceed an agreed-upon amount. *See* § III(B)(2)(d) herein.

Settlement is not a reversionary, or "claims-made," settlement. *Id*. at ¶ 12. Accordingly, if approved, the Settlement Class will receive the full benefit of the Settlement Amount, plus interest, after deducting Notice and Administration Expenses, Taxes, and Court-approved attorneys' fees and expenses ("Net Settlement Fund").

Distributions of the Net Settlement Fund to Authorized Claimants will begin after the Settlement becomes Final and the Effective Date occurs, and after all Claims received are processed in accordance with the Plan of Allocation approved by the Court. *Id.* The Plan of Allocation proposed by Lead Plaintiffs is set forth in the Notice. *See* Stip. Ex. A-1, ¶¶ 54-77. Settlement Class Members will release the "Released Plaintiffs' Claims," Stip. ¶¶ 1(hh), in exchange for the Settlement Amount and their right to receive a payment from the Net Settlement Fund.

## III.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.    Standards Governing Approval of Class Action Settlements

In the Third Circuit, there is a "strong presumption in favor of voluntary settlement agreements," which is "especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and

it should therefore be encouraged."); *James v. Glob. Tel\*Link Corp.*, 2020 WL 6197511, at \*4 (D.N.J. Oct. 22, 2020).

Rule 23(e) requires class action settlements to receive judicial approval. Such approval comes through a two-step process. First, the court performs a preliminary review of the proposed settlement terms to determine whether it is sufficient to warrant notice to the class and a hearing; and second, after notice is provided and a hearing held, the court determines whether to grant final approval of the settlement. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.14 (2025).

With respect to the first step, where, as here, the proposed class has not yet been certified, a court should grant preliminary approval and authorize notice to the class upon a finding that the court "*will likely be able*" to: (i) finally approve the settlement under Rule 23(e)(2) and (ii) certify the class for purposes of the settlement. *See* Rule 23(e)(1)(B).

In considering whether final approval is likely, Rule 23(e)(2) provides that courts should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

This standard for preliminary approval was revised through amendments to Rule 23 that effectively codified existing case law and retains the well-settled principle that preliminary approval should be granted where, as here, "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible [judicial] approval." WILLIAM B. RUBENSTEIN, 4 NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 13:13 (6th ed. 2025) (alteration in original); *see also Easterday v. USPack Logistics LLC*, 2023 WL 4398491, at \*5 (D.N.J. July 6, 2023) ("A proposed settlement falls within the range of possible approval so long as there is a conceivable basis for presuming that the standard applied for final approval— fairness, adequacy, and reasonableness—will be satisfied.").

At final approval, the Court's analysis of the Settlement will involve the Rule 23(e)(2) factors and, to a greater extent, the Third Circuit's approval factors:

> (1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability. . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (alterations in original); *see also, e.g.*, *Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *3-5 (E.D. Pa. Apr. 5, 2019) (granting final approval after analysis of amended Rule 23(e)(2) and *Girsh* factors). Because each of the foregoing factors are satisfied here, final approval of the Settlement under Rule 23(e)(2) is "*likely*," and preliminary approval is merited.

### B. The Court "*Will Likely Be Able*" to Approve the Proposed Settlement Under Rule 23(e)(2)

#### 1. Procedural Aspects of the Settlement Satisfy Rule 23(e)(2)

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. In evaluating these factors, courts may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." *Id.*

Courts will presume a settlement to be fair when it is reached following arm's-length negotiations by fully-informed, experienced, and competent counsel, particularly with the benefit of discovery. *See In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) ("[A] presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors.").

**(a)    Lead Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class**

In determining whether to approve a settlement, courts first consider whether class representatives and class counsel "have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Here, Lead Plaintiffs and Co-Lead Counsel have adequately served their fiduciary roles by actively and successfully prosecuting the Action since its inception on behalf of the Settlement Class–and they will continue to do so until the conclusion of the case and distribution of the Net Settlement Fund to eligible Settlement Class Members. Joint Decl. ¶ 39.

More specifically, both SEB and MPERS have devoted significant time to serving as Lead Plaintiffs and proposed class representatives—e.g., participating in regular communications with counsel; reviewing drafts, filings and orders; responding to Defendants' discovery requests, including collecting and producing documents and providing written discovery responses; preparing and sitting for depositions; and consulting with counsel during the Parties' settlement negotiations and ultimately approving the Settlement. *Id.* at ¶¶ 40-41. Lead Plaintiffs are sophisticated investors that suffered substantial losses as a result of their transactions in Catalent common stock during the Class Period and, as discussed below, have claims that are typical of other Settlement Class Members. *Id.* at ¶ 40. Lead Plaintiffs, like the rest of the Settlement Class, have an interest in obtaining the largest possible recovery. Likewise, Co-Lead Counsel, who have extensive

experience litigating securities class actions throughout the country, were cognizant of the strengths and weaknesses of the claims and defenses in this Action and conducted the settlement negotiations seeking to achieve the best possible result for the Settlement Class in light of the risks, costs, and delays of continued litigation. *See Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("[C]ourts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class."), *aff'd*, 559 F. App'x 151 (3d Cir. 2014).

> **(b)** **The Settlement Was Reached Through Arm's-Length Negotiations Between Experienced Counsel and with the Assistance of an Experienced Mediator**

Courts next consider whether the settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Here, the Parties' settlement discussions were at arm's length and facilitated by a well-respected and experienced mediator. The Parties began seriously discussing a possible resolution of the Action once the Parties had made significant progress into the fact discovery stage and during the briefing of Lead Plaintiffs' Motion to Certify, and participated in a full-day mediation in New York with Mr. Murphy based upon voluminous briefing on November 19, 2025. Joint Decl. ¶ 34. At the conclusion of the mediation, Mr. Murphy issued a proposal to settle the Action for $78 million, which both sides accepted through a double-blind process on November 21, 2025. *Id.*

The nature of the Parties' negotiations further supports that the Settlement is fair and not the product of collusion. *See Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

### 2.    The Settlement's Terms Are Adequate

Rules 23(e)(2)(C) and 23(e)(2)(D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." The Settlement represents a favorable result for the Settlement Class. Furthermore, Co-Lead Counsel have proposed a method for allocating the net Settlement proceeds that ensures all Settlement Class Members will be treated equitably relative to their respective damages. *See* Section V *infra*.

### (a)    The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation

A key factor to be considered in assessing the approval of a class action settlement under Rule 23(e)(2) is the plaintiff's likelihood of success on the merits, balanced against the relief offered in the settlement. "In making this assessment, the [c]ourt compares the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, with the amount of the proposed settlement." *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *7

(D.N.J. July 29, 2013). Here, the Settlement provides for a guaranteed near-term cash recovery of $78 million to be allocated among Settlement Class Members following the deduction of allowed costs, Taxes, and Court-approved fees and expenses.

Lead Plaintiffs believe that the Settlement Class's claims are meritorious and that substantial grounds exist for the Court to ultimately certify the proposed class in full, deny any defense motion for summary judgment, and for a jury to make findings of liability at trial. Nevertheless, Lead Plaintiffs acknowledge that Defendants had advanced (and would continue to advance) formidable arguments presenting significant risks for the Settlement Class—threatening to reduce or eliminate altogether any recovery for Catalent investors. Joint Decl. ¶ 45.

With respect to Lead Plaintiffs' Motion to Certify (which was being briefed at the time of settlement), Defendants argued that the proposed class should not be certified for several reasons, including that Lead Plaintiffs could not satisfy the predominance element of Rule 23. *Id.* Specifically, Defendants argued that the sustained Quality Control and GAAP Compliance misstatements did not affect Catalent's stock price (i.e., they had no "price impact") and that Lead Plaintiffs' proffered methodology for measuring damages failed because it did not fit the asserted theory of liability. *Id.* If accepted by the Court, either of these arguments could have defeated Lead Plaintiffs' Motion to Certify and ended (or substantially

delayed pending appeals) any prospect of a recovery for the Settlement Class. On the other hand, if the Motion to Certify was successful, Defendants likely would have sought to challenge the ruling through an interlocutory appeal under Rule 23(f), creating risk of de-certification or, at the very least, delaying resolution. *Id.*

Lead Plaintiffs also faced substantial risks with respect to establishing the elements of falsity and scienter, had the Action advanced further. For example, at the motion to dismiss stage, Defendants had successfully argued that many of the alleged misstatements were not false or misleading, and not made with scienter, including some of the alleged Quality Control and GAAP Compliance Statements. Joint Decl. ¶¶ 46-47. At summary judgment or trial, Defendants would most likely have asserted that their remaining sustained alleged misstatements were materially accurate and that Defendants Chiminski, Maselli, and Castellano believed them to be true when made, negating scienter. In particular, Defendants would likely assert that none of the GAAP Compliance Statements were actionable because, as a matter of law, they involved complex accounting and internal controls judgments, and, as a factual matter, they were supported by significant internal reviews and certification processes on which Catalent's senior management reasonably relied. *Id.* at ¶ 47. Likewise, Defendants would assert that the February 2022 Quality Control Statements (at least) were not actionable because they were materially accurate and genuinely believed to be true by Defendants Chiminski, Maselli, and Castellano. *Id.*

Moreover, essentially all of the witnesses who would testify on these issues were current or former Catalent employees, represented by Catalent's counsel.

Lead Plaintiffs also faced risks to establishing loss causation and damages, as indicated by Defendants' price impact arguments in their opposition to Lead Plaintiffs' Motion to Certify. *Id.* at ¶ 48. For example, Defendants' arguments that the alleged misstatements did not have any effect on Catalent's stock price, and the related economic evidence put forth by their expert, could, if accepted by the Court or a jury, support a finding of a complete absence of loss causation or damages. *Id.* Additionally, Defendants would likely assert that the stock declines following the alleged corrective disclosures were in fact largely or entirely attributable to other (i.e., non-fraud related) causes, significantly reducing or eliminating any damages tied to those disclosures, even if liability were established. *Id.* If any of the foregoing arguments were accepted by the Court at summary judgment or a jury at trial, the Settlement Class could recover less than the Settlement Amount or nothing at all. *Id.*

Here, the $78 million Settlement represents a reasonable percentage of the Settlement Class's potential recoverable damages, as estimated by Lead Plaintiffs' consulting expert. As explained in the accompanying Declaration of Chad Coffman, dated December 19, 2025, Joint Decl., Ex. 2, Mr. Coffman has estimated that the likely maximum recoverable aggregate common stock damages for the Class Period were approximately $2.8 billion, assuming Lead Plaintiffs' total success in

establishing liability, a need for only modest disaggregation of confounding information on just two of the alleged corrective disclosure dates, and that all damaged investors submit proper claims. Coffman Decl. ¶ 16. However, had this Action continued, these assumptions were far from certain to pan out, and Defendants would have likely raised robust challenges to Lead Plaintiffs' liability, causation, and disaggregation assumptions. In addition, Defendants were expected to argue that liability should be limited to, at most, an August 29, 2022 Quality Control statement and, as a result, the Class Period should start on August 29, 2022 and include only the alleged corrective disclosures related to the August 29, 2022 misstatement. Joint Decl. ¶ 49. Mr. Coffman estimates that such an outcome would reduce recoverable damages to $1.2 billion. Given this estimated range of recovery for estimated class-wide damages, $78,000,000 represents a recovery of 2.8% to 6.5% of the Settlement Class's potential recoverable damages. Coffman Decl. ¶ 17. While each securities class action has its own unique risks, the recovery obtained here compares favorably to recoveries achieved in other securities cases in this Circuit and approved by courts. *See, e.g.*, *In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *8 (D. Del. Nov. 19, 2018) (noting "Third Circuit median recovery of 5% of damages in class action securities litigation"); *Schuler v. Meds. Co.*, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (recovery of 4% of estimated recoverable damages "falls squarely within the range of previous settlement approvals"); *In re*

- 20 -

*Hemispherx Biopharma, Inc., Sec. Litig.*, 2011 WL 13380384, at *6 (E.D. Pa. Feb. 14, 2011) (approving settlement representing 5.2% of maximum damages and finding it "falls squarely within the range of reasonableness approved in other securities class action settlements"); *see also Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) ("a 3% recovery is within the range of the percentages of recovery approved in other securities class action settlements") (collecting cases).

Additionally, the $78 million Settlement is more than five times greater than the median reported recovery in securities class actions in 2024, which was $14 million, and more than six times greater than the median reported recovery in securities class actions in the first half of 2025, which was $12.5 million. *See* footnote 2 *infra*.

For these reasons, it is respectfully submitted that the Settlement provides a very favorable recovery for the Settlement Class.

**(b)    The Settlement Treats All Class Members Fairly**

The Court must also ultimately assess whether the Settlement equitably treats Settlement Class Members. Fed. R. Civ. P. 23(e)(2)(C)(ii) & (e)(2)(D). The proposed Settlement does not improperly grant preferential treatment to Lead Plaintiffs or any segment of the Settlement Class. All Settlement Class Members will be eligible to receive a *pro rata* distribution from the Net Settlement Fund in

accordance with a plan of allocation approved by the Court. *See* Section V *infra*.

### (c)     The Settlement Does Not Excessively Compensate Counsel

The proposed notices inform Settlement Class Members that Co-Lead Counsel, on behalf of Plaintiffs' Counsel, will apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund, plus payment of Litigation Expenses, payable upon approval by the Court. The Settlement is not conditioned on the Court's approval of these fee and expense requests. *See* Stip. ¶¶ 13-19.

In light of Plaintiffs' Counsel's efforts over nearly three years on a fully contingent basis, a fee of up to 25% is reasonable and falls well within the range of attorneys' fees awarded in this Circuit. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery."). Further, Settlement Class Members will have an opportunity to address Co-Lead Counsel's fee request before the Settlement Hearing, and after Co-Lead Counsel have made submissions in support of their request. In these submissions, Co-Lead Counsel will, among other things, present Plaintiffs' Counsel's lodestar (time expended, multiplied by hourly rates), as well as the case law addressing fee awards in this jurisdiction.[5]

---

[5]     The proposal that Co-Lead Counsel receive their award of any attorneys' fees upon issuance of an order awarding such fees is appropriate and consistent with common practice in cases of this nature. The Stipulation (¶ 15) provides that if the

(d)    **Agreements Made in Connection with the Settlement**

In addition to the Term Sheet and Stipulation, the Parties have entered into a standard, confidential Supplemental Agreement that gives Catalent the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed certain agreed-upon thresholds. Stip. ¶ 41. This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See In re Innocoll Holdings Pub. Ltd. Sec. Litig.*, 2022 WL 717254, at *5 (E.D. Pa. Mar. 10, 2022); *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sep. 4, 2018) ("The existence of a termination option triggered by the number of class members opt out of the Settlement does not by itself render the Settlement unfair.").[6]

## IV.    THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

In preliminarily approving the proposed Settlement, the Court must consider whether it "will likely be able to" certify the proposed Settlement Class for purposes of final approval. Fed. R. Civ. P. 23(e)(1)(B). The proposed Settlement Class, which has been stipulated to by the Parties, consists of:

---

Settlement is ultimately terminated, or the fee award is later reduced or reversed, Co-Lead Counsel will refund or repay the subject amount to the Settlement Fund.

[6]    Also, as is standard in securities class actions, agreements of this kind are not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the opt-out threshold to exact individual settlements. In accordance with its terms, the Supplemental Agreement may be submitted to the Court *in camera*.

all persons and entities who or which, during the period from August 30, 2021 through May 7, 2023, inclusive, purchased or otherwise acquired the publicly traded common stock or exchange-traded call options or sold the exchange-traded put options of Catalent, Inc. and were allegedly damaged thereby.[7]

Stip. ¶ 1(kk).[8]

Courts have long acknowledged the propriety of certifying a class solely for purposes of settlement. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997); *see also Pozzi v. Smith*, 952 F. Supp. 218, 221 (E.D. Pa. 1997) ("The Third Circuit has declared that class actions created for the purpose of settlement are recognized under the general scheme of Federal Rule of Civil Procedure 23, provided that the class meets the certification requirements under the Rule."). A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), aside from the manageability concerns of Rule 23(b)(3). *See Amchem*, 521 U.S. at 593 ("Whether trial would present intractable management

---

[7]    Excluded from the Settlement Class are: (i) Defendants; (ii) members of the immediate families of any Defendant who is an individual; (iii) any person who was an officer, director, and/or control person of Catalent during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling or beneficial interest; (v) Catalent's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); (vi) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person or entity, in their capacities as such; and (vii) any persons or entities who or which exclude themselves by submitting a timely and valid request for exclusion that is accepted by the Court. Stip. ¶ 1(kk).

[8]    This is the same class Lead Plaintiffs were seeking to certify when the Settlement was reached.

problems . . . is not a consideration when settlement-only certification is requested[.]"). As demonstrated below, certification of the Settlement Class for purposes of the Settlement is appropriate here.

### A.    The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The proposed Settlement Class meets these requirements.

### 1.    The Settlement Class Satisfies Numerosity

To satisfy Rule 23(a)(1)'s numerosity requirement, the proposed Settlement Class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no minimum number of members needed for a suit to proceed as a class action[,]" but a showing that the "potential number of plaintiffs exceeds 40" generally satisfies this requirement. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012). Further, "courts in this Circuit have recognized a presumption that the numerosity requirement is satisfied when a class action involves a nationally traded security." *Fernandez v. DouYu Int'l Holdings Ltd.*, 2025 WL 972836, at *4 (D.N.J. Mar. 31, 2025). Here, Catalent common stock was traded

on the New York Stock Exchange during the Class Period and, as of March 30, 2023, there were more than 180 million shares of Catalent common stock outstanding. ECF No. 47, ¶ 515. The numerosity requirement is satisfied.

### 2.    There Are Common Questions of Law and Fact

Rule 23(a)(2)'s commonality requirement is met where there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is "not particularly demanding," *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5097883, at *8 (D.N.J. Aug. 31, 2015), and is satisfied where proposed class representatives share "at least one question of fact or law with the grievances of the prospective class." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015).

The core issues in this case concern whether Defendants defrauded the investing public, and implicate questions that are common to the proposed Settlement Class, including whether: (i) Defendants violated the federal securities laws by their acts and omissions; (ii) Defendants' Class Period public statements misrepresented or omitted material facts; (iii) Defendants acted with scienter; (iv) Defendants' misrepresentations and omissions artificially inflated the price of Catalent stock; and (v) members of the Settlement Class have sustained damages as a result of the alleged misconduct, and if so, the proper measure of damages. Similar questions in other securities class actions have sufficed to show commonality. *See,*

*e.g.*, *In re Celgene Corp. Sec. Litig.*, 2020 WL 8870665, at *4 (D.N.J. Nov. 29, 2020). Commonality is established here.

### 3. Lead Plaintiffs' Claims Are Typical of the Settlement Class

When "the claims or defenses of the representative parties are typical of the claims or defenses of the class[,]" the typicality requirement is met. Fed. R. Civ. P. 23(a)(3). This requirement is "undemanding" and requires only that "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant." *Prudential*, 2015 WL 5097883, at *9. Rule 23(a)(3) "does not require that the putative class members all share identical claims." *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 75 (D.N.J. 2019).

Here, Lead Plaintiffs' claims and the proposed Settlement Class's claims are based on the same legal theory: Defendants' liability under Sections 10(b) and 20(a) of the Exchange Act. The claims are also based on the same factual allegations: Defendants made false and misleading statements and omissions concerning Catalent's quality and operational issues as well as compliance with GAAP, which artificially inflated Catalent's stock price and resulted in losses for investors when the truth came to light. *See In re Merck & Co. Sec., Derivative & ERISA Litig.*, 2013 WL 396117, at *6 (D.N.J. Jan. 30, 2013) (typicality established where "[t]he class claims . . . arise out of the same conduct—transactions in Merck securities that were

based on an allegedly artificially inflated stock price as a result of Defendants' misrepresentations and omissions").[9] The typicality requirement is met.

### 4.     Lead Plaintiffs and Co-Lead Counsel Are Adequate

The adequacy requirement pursuant to Rule 23(a)(4) is satisfied where the class representative will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A proposed class representative must demonstrate both: (i) that "the class representatives' interests are not adverse to those of other members of the class"; and (ii) that "the class representative is represented by attorneys who are qualified, experienced, and generally able to conduct the litigation." *In re Schering-Plough Corp./ENHANCE Sec. Litig.*, 2012 WL 4482032, at *6 (D.N.J. Sep. 25, 2012).

As noted above, Lead Plaintiffs are sophisticated institutional investors that have and will continue to represent the interests of the Settlement Class fairly and adequately, and there is no antagonism or conflict of interest between Lead Plaintiffs and the other Settlement Class Members. Moreover, Lead Plaintiffs have retained

---

[9]     The inclusion of Settlement Class Members who purchased call options or sold put options does not alter the analysis. Courts in this District routinely find that stock purchasers can represent classes that include options traders because both groups have essentially identical interests. *See Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 2023 WL 4981716, at *3, 6-7 (D.N.J. Aug. 3, 2023) (finding stock traders adequate to represent options traders). Indeed, there is "no significant difference in the nature of the securities transactions that would destroy typicality or otherwise cause Lead Plaintiffs not to be similarly situated to purchasers of call options or sellers of put options." *Merck*, 2013 WL 396117, at *5

counsel highly experienced in securities litigation who have successfully prosecuted many securities and other complex class actions throughout the United States. *See* ECF Nos. 12 (Joint LP Motion); ECF No. 30 (LP Order). Thus, Lead Plaintiffs and Co-Lead Counsel satisfy the adequacy requirement.

## B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class meets these requirements.

### 1.    Common Legal and Factual Questions Predominate

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem* , 521 U.S. at 623. Where common questions of fact or law outnumber those affecting only individual class members, predominance is satisfied. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 371 (3d Cir. 2015); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) ("Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.") (emphasis in original). Common questions may predominate even where differences between class members exist.

- 29 -

*Neale*, 794 F. 3d at 371. This requirement is "readily met" in securities fraud cases. *Amchem*, 521 U.S. at 625.

The Settlement Class's claims arise from the same course of conduct and will be proven through common evidence. The Settlement Class's injuries are all predicated on the same false and misleading statements and omissions, artificial inflation (or, deflation), and the subsequent decline in Catalent's stock price that occurred after the relevant truth was revealed. Common questions further predominate because the Settlement Class is entitled to a presumption of reliance. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) (in federal securities fraud actions, "[w]hether common questions of law or fact predominate . . . often turns on the element of reliance").[10]

### 2.     A Class Action Is Superior to Other Adjudication Methods

The superiority requirement of Rule 23(b)(3) requires that class treatment be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In assessing superiority, courts consider: (i) the interest of class members in individually controlling separate actions; (ii) the extent and nature of any litigation already underway; (iii) the desirability of

---

[10]     Reliance can be presumed under the presumptions set forth in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) and *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), and damages are measurable using a common methodology as required by *Comcast*.

concentrating litigation in the forum; and (iv) manageability. *Id.* Each of these factors contributes to a finding of superiority here. *Id.*[11] Moreover, superiority "is easily satisfied in securities fraud cases where there are many individual plaintiffs who suffer damages too small to justify a suit against a large corporate defendant." *In re Heckmann Corp. Sec. Litig.*, 2013 WL 2456104, at *8 (D. Del. June 6, 2013). Indeed, courts in this district have recognized that "[a] class action is certainly the superior method for adjudicating" securities fraud claims because "[g]enerally, as a practical matter, investors defrauded by securities law violations have no recourse other than class relief." *Papa*, 333 F.R.D. at 78.

## V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

In considering the proposed Plan of Allocation ("Plan") for distributing the proceeds of the Settlement to eligible claimants (*see* Notice ¶¶ 54-58), the Court's review is governed by the same standards of review applicable to the Settlement itself—the Plan must be fair and reasonable. *See Beltran v. SOS Ltd.*, 2023 WL 319895, at *9 (D.N.J. Jan. 3, 2023), *R. & R. adopted*, 2023 WL 316294 (D.N.J. Jan. 19, 2023). Lead Plaintiffs will ask the Court to approve the Plan in connection with final approval.

Developed with the assistance of Lead Plaintiffs' damages expert, the Plan

---

[11]    As noted above, manageability is not an element relevant to the certification of a settlement class. In any event, this case presents no manageability concerns.

provides a fair, reasonable, and equitable basis to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claims.[12] Specifically, the Plan provides for distribution of the Net Settlement Fund to Settlement Class Members who demonstrate a loss on their transactions in Catalent common stock and exchange-traded call and put options during the Class Period.

The Plan follows the measure of damages for Section 10(b) claims and calculates losses based on the estimated amounts of artificial inflation in the prices of Catalent common stock and Catalent call options during the Class Period (and the artificial deflation in the prices of Catalent put options) that were allegedly caused by Defendants' misconduct. To have a loss under the Plan, a Settlement Class Member must have held Catalent common stock or call options purchased or acquired during the Class Period through at least one of the alleged corrective disclosure dates that removed artificial inflation from the price of Catalent common stock or call options, and with respect to Catalent put options, a Settlement Class

---

[12]    The Settlement will be effectuated with the assistance of an experienced claims administrator. If approved as Claims Administrator, Epiq will employ a standard and well-tested protocol for processing claims in securities class actions. Potential Settlement Class Members will submit Claims, either by mail or online using the Settlement Website, and, based on the information submitted, Epiq will determine each Claimant's eligibility to participate in the Settlement by calculating his, her, or its "Recognized Claim" under the Plan. *See* Stip. ¶ 30 (a)-(c). Claimants will be notified of (and given the chance to remedy) any defects in their Claims and will also have the opportunity to contest any rejection of their Claims. *Id*. at ¶ 30 (d). Any Claim disputes that cannot be resolved will be presented to the Court. *Id*. at ¶ 30 (e).

Member must have sold (written) those options during the Class Period and such option(s) must have remained open through at least one of the alleged corrective disclosure dates that removed the artificial deflation from the price of Catalent put options.[13] The Plan treats all Settlement Class Members, including Lead Plaintiffs, equitably, and eligible Settlement Class Members will receive a *pro rata* distribution from the Net Settlement Fund based on the amount of their recognized losses. *See Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at *6 (D.N.J. May 3, 2022) (finding plan of allocation fair, reasonable, and adequate where each authorized claimant would be reimbursed based on a pro rata share of the net settlement fund based upon each claimant's recognized loss).[14]

Ultimately, each Authorized Claimant's *pro rata* share of the Net Settlement Fund will be determined by dividing the Authorized Claimant's Recognized Claim (i.e., the sum of a Claimant's Recognized Loss Amounts calculated under the Plan) by the total Recognized Claims of all Authorized Claimants, multiplied by the total

---

[13]    The Plan limits the proceeds available for Catalent options to up to 2% of the Net Settlement Fund to reflect the percentage of the Settlement Class's estimated maximum damages attributed to transactions in options during the Class Period. Notice ¶ 67.

[14]    As set forth in the Notice, Co-Lead Counsel's request for Litigation Expenses may also include a request for Lead Plaintiffs' reasonable costs and expenses incurred in representing the Settlement Class, as permitted by the PSLRA. 15 U.S.C. § 78u-4(a)(4) (allowing the "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class").

amount of the Net Settlement Fund. Notice ¶ 72. Distributions to Authorized Claimants will occur following the Effective Date. *Id.* ¶ 75.

## VI. NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

Rule 23(c)(2)(B) requires the Court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Similarly, Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement. Moreover, notice must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Through this Motion, Lead Plaintiffs seek the Court's authorization to retain Epiq as the Claims Administrator to supervise and administer the notice procedure in connection with the Settlement as well as to process Claims. Epiq has successfully administered numerous complex securities class action settlements throughout the country, including in this Circuit. *See* Declaration of Morgan Kimball in Support of Lead Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Authorization to Disseminate Notice of Settlement ("Kimball Decl."), Joint Decl., Ex. 3.

If the Settlement is preliminarily approved, Epiq will mail and/or email the Postcard Notice (Ex. A-4 to Stip.) to all potential Settlement Class Members who can be identified with reasonable effort.[15] The Postcard Notice provides important information regarding the Settlement, as well as the rights of Settlement Class Members in connection therewith, and includes a QR code that, when scanned, will bring recipients directly to www.CatalentSecuritiesSettlement.com. The Settlement Website will include downloadable copies of the long-form Notice and Claim Form (Exs. A-1 & A-2 to Stip.) and other Settlement-related documents. In addition, Epiq will cause the Summary Notice (Ex. A-3 to Stip.) to be published in *The Wall Street Journal* and transmitted over *PR Newswire*.

The proposed notices will collectively apprise recipients of (among other disclosures): (i) the essential terms of the Settlement; (ii) the considerations that caused Lead Plaintiffs and Co-Lead Counsel to conclude that the Settlement is fair, reasonable, and adequate; (iii) the Plan of Allocation; (iv) the binding effect of a

---

[15]    As explained in the Kimball Declaration, Epiq will utilize a proprietary list of the largest and most common banks, brokerage firms, and nominees ("Nominees") to facilitate the dissemination of notice. Epiq will send notice to all Nominees on its list. Nominees who purchased or otherwise acquired shares of Catalent common stock or exchange-traded call options or sold the exchange-traded put options of Catalent, during the Class Period on behalf of other beneficial owners will be required to either send the Postcard Notice to their customers or provide the names and addresses of the beneficial owners to Epiq, which will then promptly send the Postcard Notice by first-class mail (or email, if provided) to such identified beneficial owners. Kimball Decl. ¶¶ 5-7, 10-13.

class judgment under Rule 23(c)(3); (v) the date, time, and place of the Settlement Hearing; and (vi) the procedures and deadlines for submitting a Claim, requesting exclusion from the Settlement Class, and objecting to the Settlement.[16]

The Notice also satisfies the PSLRA's additional notice requirements, including provision of the Settlement amount in the aggregate and on an average per share basis, Co-Lead Counsel's contact information, and the reasons for settlement. 15 U.S.C. § 78u-4(a)(7). Further, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed long-form Notice and Postcard advise that Co-Lead Counsel will apply to the Court for attorneys' fees not to exceed 25% of the Settlement Fund and for expenses not to exceed $2 million. *See* Stip. Exs. A-1 & A-4. A copy of Co-Lead Counsel's application for attorneys' fees and expenses will be posted to www.CatalentSecuritiesSettlement.com, once it has been filed.

The proposed notice plan is the same plan used in numerous other securities class actions. Kimball Decl. ¶¶ 4-5. Courts have found comparable notice programs to meet the requirements of Rule 23 and due process. *See, e.g.*, *Hacker v. Elec. Last Mile Sols. Inc.*, 2024 WL 5102696, at *12 (D.N.J. Nov. 6, 2024) (approving

---

[16]    Settlement Class Members will be able to submit Claim Forms by mail or through the online claim-filing portal available on the Settlement Website.

comparable notice plan); *In re Humanigen, Inc. Sec. Litig.*, 2024 WL 4182634, at *3 (D.N.J. Sep. 13, 2024) (same); *Kanefsky*, 2022 WL 1320827, at *2-3 (same).

Lead Plaintiffs respectfully submit that the Court should approve the proposed manner and form of providing notice of the Settlement to the Settlement Class.

## VII.  PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

In connection with preliminary approval of the Settlement, the Court must also set dates for certain future events (i.e., the Settlement Hearing, dissemination of notice, and deadlines for submitting Claims, requesting exclusion from the Settlement Class, and objecting to the Settlement). Lead Plaintiffs respectfully propose the schedule set forth in the chart below, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order. Additionally, Lead Plaintiffs request that the Court schedule the Settlement Hearing for a date approximately 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

| **Event** | **Proposed Timing** |
|---|---|
| Deadline for mailing/emailing Postcard Notice to Settlement Class Members (the "Notice Date") and posting the Postcard Notice, long-form Notice and Claim Form on Website | On or before 10 business days after entry of Preliminary Approval Order ("PAO") (PAO ¶¶ 8, 11) |
| Deadline for publishing Summary Notice | Within 14 calendar days of the Notice Date (PAO ¶ 13) |
| Deadline for filing papers in support of final approval of the Settlement, Plan | On or before 35 calendar days prior to Settlement Hearing (PAO ¶ 25) |

| of Allocation, and Co-Lead Counsel's motion for attorneys' fees and expenses | |
|---|---|
| Deadline for receipt of requests for exclusion from the Settlement Class and objections | No later than 21 calendar days prior to Settlement Hearing (PAO ¶¶ 17, 20) |
| Postmark deadline for Claim Forms | No later than 15 calendar days before the Settlement Hearing (PAO ¶ 15(i)) |
| Deadline for filing reply papers | No later than 7 calendar days prior to Settlement Hearing (PAO ¶ 25) |
| Settlement Hearing | Approx. 100 calendar days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter (PAO ¶ 5) |

## VIII.  CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the Preliminary Approval Order, which was negotiated by the Parties.

Dated:  December 23, 2025

Respectfully submitted,

/s/   *Joseph N. Cotilletta*
**LABATON KELLER SUCHAROW LLP**
Christine M. Fox (*pro hac vice*)
Joseph N. Cotilletta
Adam M. Federer (*pro hac vice*)
Emily N. Gault (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
cfox@labaton.com
jcotilletta@labaton.com
afederer@labaton.com
egault@labaton.com

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Joshua E. D'Ancona
Matthew L. Mustokoff (*pro vice hac*)
Jamie M. McCall *(pro vice hac)*
David A. Bocian
Max S.S. Johnson (*pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
jdancona@ktmc.com
mmustokoff@ktmc.com
jmccall@ktmc.com
dbocian@ktmc.com
mjohnson@ktmc.com

*Co-Lead Counsel for Lead Plaintiffs SEB Investment Management AB and Public Employees' Retirement System of Mississippi, and Proposed Settlement Class*

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
James E. Cecchi
Michael A. Innes
Kevin G. Cooper
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com
minnes@carellabyrne.com
kcooper@carellabyrne.com

*Liaison Counsel for Proposed Settlement Class*

**DAVIDSON BOWIE, PLLC**
John L. Davidson (*pro hac vice*)
1062 Highland Colony Parkway
200 Concourse, Suite 275
Ridgeland, MS 39157
Telephone: (601) 932-0028
jdavidson@dbslawfirm.net

*Additional Counsel for Lead Plaintiff Public*
*Employees' Retirement System of Mississippi*