**CARELLA BYRNE CECCHI BRODY & AGNELLO, PC**
James E. Cecchi
5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone: (973) 994-1700

*Liaison Counsel for the Proposed Settlement Class*

**LABATON KELLER SUCHAROW LLP**
Christine M. Fox (*pro hac vice*)
Adam Federer (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Matthew L. Mustokoff (*pro hac vice)*
Joshua E. D'Ancona
Jamie M. McCall (*pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

*Co-Lead Counsel for Lead Plaintiffs SEB Funds AB and Public Employees' Retirement System of Mississippi, and Proposed Settlement Class*

*Additional Counsel on Signature Page*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CITY OF WARWICK RETIREMENT SYSTEM, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CATALENT, INC., JOHN CHIMINSKI, ALESSANDRO MASELLI, and THOMAS CASTELLANO,<br><br>Defendants. | Case No: 3:23-cv-01108-ZNQ-JTQ<br><br>Hon. Zahid N. Quraishi<br>District Judge<br><br>Hon. Justin T. Quinn<br>Magistrate Judge<br><br>Hearing Date: June 10, 2026 |

**MEMORANDUM OF LAW IN SUPPORT OF CO-LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

## TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES .......... iii

PRELIMINARY STATEMENT .......... 2

ARGUMENT .......... 6

I. CO-LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND SHOULD BE APPROVED .......... 6

A. Plaintiffs' Counsel Are Entitled to a Reasonable Fee from the Common Fund .......... 6

B. The Court Should Award a Reasonable Percentage of the Common Fund .......... 7

C. The Requested Fee Is Reasonable Under Both the Percentage-of-Recovery Method and the Lodestar Method .......... 8

1. The Requested Fee Is Reasonable Under the Percentage-of-Recovery Method .......... 8

2. The Reasonableness of the Requested Fee Is Confirmed by a Lodestar Cross-Check .......... 11

D. The Factors Considered by Courts in the Third Circuit Confirm that the Requested Fee Is Fair and Reasonable .......... 14

1. The Size of the Common Fund Created and the Number of Beneficiaries .......... 15

2. Objections from Settlement Class Members to Date .......... 16

3. The Skill and Efficiency of the Attorneys Involved .......... 17

4. The Complexity and Duration of the Litigation .......... 19

5. The Risk of Non-Payment .......... 21

6. The Significant Time Devoted to this Case by Plaintiffs' Counsel .......... 23

7. The Fee Requested Is in Line with Fees Awarded in Similar Cases ........ 23

8. Impact of Governmental Investigations ........ 24

9. The Requested Fee Is in Line with Contingent Fee Arrangements Negotiated in Non-Class Litigation ........ 24

II. PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ........ 25

III. LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS UNDER THE PSLRA ........ 28

CONCLUSION ........ 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advance Auto Parts, Inc. Sec. Litig.*,
2022 WL 20806294 (D. Del. June 13, 2022) ....................9

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
2013 WL 12153597 (D.N.J. Jan. 30, 2013)....................10

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002)....................17

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006) ....................7, 11, 24

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
772 F.3d 125 (2d Cir. 2014) ....................30

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)....................7

*Blum v. Stenson*,
465 U.S. 886 (1984)....................25

*Bodnar v. Bank of Am., N.A.*,
2016 WL 4582084 (E.D. Pa. Aug. 4, 2016) ....................14

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)....................6

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005) ....................8, 17

*Dartell v. Tibet Pharms, Inc.*,
2017 WL 2815073 (D.N.J. June 29, 2017)....................19, 20

*In re Datatec Sys., Inc. Sec. Litig.*,
2007 WL 4225828 (D.N.J. Nov. 28, 2007) ....................20

*Dewey v. Volkswagen of Am.*,
728 F. Supp. 2d 546 (D.N.J. 2010), *rev'd*, 681 F. 3d 170 (3d Cir. 2012) ....................11

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
582 F.3d 524 (3d Cir. 2009) ....................15, 25

*Farrar v. Workhorse Grp., Inc.*,
2023 WL 5505981 (C.D. Cal. July 24, 2023)....................16

*Flynn-Murphy v. Jaguar Land Rover N. Am., LLC*,
2025 WL 3771284 (D.N.J. Dec. 31, 2025)....................13

*In re Genta Sec. Litig.*,
2008 WL 2229843 (D.N.J. May 28, 2008)....................20

*In re Gilat Satellite Networks, Ltd.*,
2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ....................30

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ....................8

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) ....................6, 14

*Harshbarger v. Penn Mut. Life Ins. Co.*,
2017 WL 6525783 (E.D. Pa. Dec. 20, 2017)....................8

*In re Hemispherx Biopharma, Inc., Sec. Litig.*,
2011 WL 13380384 (E.D. Pa. Feb. 14, 2011) ....................16

*Henderson v. Volvo Cars of N. Am., LLC*,
2013 WL 1192479 (D.N.J. Mar. 22, 2013) ....................11, 12

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)....................15

*In re Ikon Off. Sols., Inc. Sec. Litig*,
194 F.R.D. 166, 195 (E.D. Pa. 2000)....................................................19, 25

*In re Ins. Brokerage Antitrust Litig.*,
297 F.R.D. 136 (D.N.J. 2013)...................................................................8, 9

*Kanefsky v. Honeywell Int'l Inc.*,
2022 WL 1320827 (D.N.J. May 3, 2022)...................................................26

*La. Mun. Police Emps.' Ret. Sys. v. Sealed Air Corp.*,
2009 WL 4730185 (D.N.J. Dec. 4, 2009)......................................................9

*Local 703 v. Regions Fin. Corp.*,
2015 WL 5626414 (N.D. Ala. Sept. 14, 2015)............................................10

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..........................................................7

*In re Marsh & McLennan Cos. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............................................31

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
2010 WL 547613 (D.N.J. Feb. 9, 2010) .....................................................7

*Missouri v. Jenkins*,
491 U.S. 274 (1989).....................................................................................12

*In re Ocean Power Techs., Inc.*,
2016 WL 6778218 (D.N.J. Nov. 15, 2016) ..............................................7, 25

*In re Par Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013) ...................................................6

*In re Processed Egg Prods. Antitrust Litig.*,
2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) ...............................................25

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)..................................................................15, 24, 25

*In re Remicade Antitrust Litig.*,
2023 WL 2530418 (E.D. Pa. Mar. 15, 2023) ....................................12, 13

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ....................................7, 11

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
2008 WL 9447623 (D.N.J. Dec. 9, 2008)....................................30

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001)....................................26

*In re: Saga Formations, Inc.*,
Case No. 24-11161 (BLS), ECF No. 1171 (D. Del. Bankr. April 16, 2026) ....................................13

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
2012 WL 1964451 (D.N.J. May 31, 2012)....................................22

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
2013 WL 5505744 (D.N.J. Oct. 1, 2013) ....................................11, 31

*Schuler v. Medicines Co.*,
2016 WL 3457218 (D.N.J. June 24, 2016)....................................15, 16

*Stevens v. SEI Invs. Co.*,
2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ....................................4, 14

*In re Suboxone Antitrust Litig.*,
2023 WL 8437034 (E.D. Pa. Dec. 4, 2023)....................................11, 13\

*Sullivan v. DB Invs., Inc.,*
667 F.3d 273 (3d Cir. 2011) ....................................7, 8, 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................................7

*In re ViroPharma Inc. Sec. Litig.*,
2016 WL 312108 (E.D. Pa. Jan. 25, 2016)....................................15, 17, 26

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
2017 WL 4167440 (E.D. Pa. Sept. 20, 2017) ....................20

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)..............19, 21

*In re Wilmington Tr. Sec. Litig.*,
2018 WL 6046452 (D. Del. Nov. 19, 2018) ....................*passim*

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ....................6, 7

**Docketed Cases**

*Chabot v. Walgreens Boots Alliance, Inc.*,
No. 1:18-cv-02118-JPW, slip op., ECF No. 327 (M.D. Pa. Feb. 7, 2024) ....................9

*In re EQT Corp. Sec. Litig.*,
No. 2:19-cv-00754-RJC, slip op., ECF No. 566 (W.D. Pa. Nov. 4, 2025) ....................9

*In re Equifax Inc. Sec. Litig.*,
No. 1:17-cv-03463-TWT, slip op., ECF No. 179 (N.D. Ga. June 26, 2020) ....................31

*Howard v. Arconic Inc.*,
No. 2:17-cv-01057-MRH, slip op., ECF No. 253 (W.D. Pa. Aug. 9, 2023) ....................9

*Knurr v. Orbital ATK, Inc.*,
No. 1:16-cv-01031-TSE-MSN, slip op., ECF No. 462 (E.D. Va. June 7, 2019) ....................10

*N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*,
No. 1:08-cv-5653-PAC, slip op., ECF No. 277 (S.D.N.Y. May 10, 2016) ....................10

*Odeh v. Immunomedics, Inc.*,
No. 2:18-cv-17645-ESK, slip op, ECF No. 286 (D.N.J. June 15, 2023) ....................9

*Pelletier v. Endo Int'l PLC*,
No. 2:17-cv-05114, slip op., ECF No. 417 (E.D. Pa. Apr. 8, 2022) ....................9

*San Antonio Fire & Police Pension Fund v. Dole Food Co.*,
No. 1:15-cv-1140-LPS, slip op., ECF No. 100 (D. Del. July 18, 2017) ....................9

*In re Snap Inc. Sec. Litig*., No. 2:17-cv-03679-SVW-AGR, slip op., ECF No. 400 (C.D. Cal. Mar. 9, 2021)....................10

*Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*,
No. 1:15-cv-3187-SJC, slip op., ECF No. 526 (N.D. Ill. Oct. 11, 2022) ....................10

**Statutes**

15 U.S.C. § 78u-4(a)(4) ....................28

15 U.S.C. § 78u-4(a)(6) ....................8

Pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil Procedure, Kessler Topaz Meltzer & Check, LLP ("KTMC") and Labaton Keller Sucharow LLP ("Labaton" and, together with KTMC, "Co-Lead Counsel"), on behalf of Plaintiffs' Counsel,[1] respectfully submit this Memorandum of Law in support of their Motion for: (i) an award of attorneys' fees in the amount of 25% of the Settlement Fund, which includes accrued interest; (ii) payment of $1,563,187.27, plus accrued interest, for expenses reasonably and necessarily incurred in prosecuting and resolving the Action; and (iii) reimbursement in the aggregate of $57,323.00 to Court-appointed Lead Plaintiffs SEB Funds AB (f/k/a SEB Investment Management AB) ("SEB") and Public Employees' Retirement System of Mississippi ("MPERS" and, together with SEB, "Lead Plaintiffs") for their costs (including lost wages) directly related to representing the Settlement Class in the Action, as authorized by the PSLRA.[2]

---

[1] "Plaintiffs' Counsel" refers collectively to Co-Lead Counsel; Carella, Byrne, Cecchi, Brody & Agnello, P.C.; and Davidson Bowie, PLLC.

[2] All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated December 22, 2025 (ECF No. 151-1) ("Stipulation" or "Stip."), or in the Joint Declaration of Joshua E. D'Ancona and Christine M. Fox ("Joint Declaration" or "Joint Decl."), filed herewith. Citations to "¶ _" herein refer to paragraphs in the Joint Declaration and references to "Ex. _" are to exhibits to the Joint Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Joint Declaration and the second alphabetical reference is to the exhibit designation within the exhibit itself.

## PRELIMINARY STATEMENT

Following nearly three years of dedicated litigation efforts, Co-Lead Counsel successfully negotiated a settlement of the Action with Catalent, Inc. ("Catalent" or the "Company"), John Chiminski, Alessandro Maselli, and Thomas Castellano (collectively, "Defendants"). The Settlement, if approved by the Court, will resolve this litigation in its entirety in exchange for Defendants' cash payment of $78 million. The Settlement represents a very favorable result for the Settlement Class. It not only eliminates the risks of continued litigation—including overcoming Defendants' challenges to class certification, liability, loss causation, and damages, as well as the uncertainty, delay, and expense of litigating the Action through the completion of discovery, summary judgment, trial, and post-trial appeals—but it recovers a meaningful portion of the Settlement Class's damages, as discussed herein. Notably, the Settlement represents more than 4.5 times the median federal securities class action settlement amount in 2025 and almost double the average settlement value.[3]

---

Internal citations, quotation marks, and footnotes have been omitted, and emphasis has been added unless otherwise indicated.

[3] *See* Edward Flores, Svetlana Starykh and Ivelina Velikova, *Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review*, at 1 (NERA Economic Research Associates, Inc. 2026) (Ex. 3) ("NERA") (noting average settlement value in 2025 was $40 million and median settlement value was $17 million (an increase of 21% from 2024 and a 10-year high)).

To achieve this recovery, Co-Lead Counsel undertook significant efforts, vigorously pursuing this Action against a highly reputable defense firm on a fully contingent basis. As detailed in the Joint Declaration, the Settlement was reached only after Co-Lead Counsel conducted a far-reaching investigation (including interviews with approximately 90 former Catalent employees), drafted a detailed complaint, opposed (and defeated in part) a motion to dismiss, moved for class certification, and pursued myriad sources for discovery, including propounding document subpoenas on 22 third parties and litigating several discovery disputes before Magistrate Judge Justin T. Quinn. As a result of these efforts, Co-Lead Counsel obtained and analyzed approximately 3.8 million pages of documents produced by Defendants and third parties and participated in 17 depositions (while preparing to take 11 more). Co-Lead Counsel also engaged in hard-fought settlement negotiations with Defendants, including the exchange of mediation briefing and participation in a formal mediation session with the assistance of David M. Murphy, Esq. of Phillips ADR Enterprises, P.C., an experienced and highly respected mediator. *See generally* Joint Decl. § I-VII.[4] This dedicated effort has resulted in a significant cash recovery for the Settlement Class.

[4] The Joint Declaration is an integral part of this submission and, for the sake of brevity herein, Lead Plaintiffs respectfully refer the Court to the Joint Declaration for a detailed description of, *inter alia*: the history of the Action and Co-Lead Counsel's litigation efforts; the settlement negotiations; and the risks of continued litigation.

As compensation for these efforts and the commitment to bringing the Action to a successful conclusion for the Settlement Class, as well as the significant risk of prosecuting and funding this Action with no guarantee of recovery, Co-Lead Counsel, on behalf of Plaintiffs' Counsel, seek attorneys' fees in the amount of 25% of the Settlement Fund. As set forth herein, the requested 25% fee (i.e., $19,500,000 plus interest) is well within the range of fees awarded in other securities class actions. Further, the requested fee represents a multiplier of approximately 0.95 on Plaintiffs' Counsel's lodestar, which is at the lowest end of the range of multipliers typically awarded in class actions with significant contingency risk like this case.[5] Co-Lead Counsel also request payment from the Settlement Fund of $1,677,833.27, plus accrued interest, in Litigation Expenses (which *includes* the amount requested by Lead Plaintiffs). Moreover, Co-Lead Counsel's fee and expense request has been carefully reviewed and authorized by Lead Plaintiffs—sophisticated, institutional investors and precisely the type of fiduciaries envisioned by Congress when enacting the PSLRA.[6]

---

5 *Stevens v. SEI Invs. Co*., 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (noting multipliers "ranging from 1 to 8 are often used in common fund cases" to "compensate counsel for the risk of assuming the representation on a contingency fee basis").

6 *See* Declaration of Laken Ryals on behalf of MPERS (Ex. 1), ¶7; Declaration of Erik Sundgren on behalf of SEB (Ex. 2), ¶¶11-13.

The reaction of the Settlement Class to date also supports Co-Lead Counsel's fee and expense request. Pursuant to the Court's Preliminary Approval Order (ECF No. 152), more than 126,227 notices have been mailed and/or emailed to potential Settlement Class Members and their nominees.[7] These notices advise recipients that Co-Lead Counsel would be applying for attorneys' fees in an amount not to exceed 25% of the Settlement Fund, plus Litigation Expenses in an amount not to exceed $2 million, plus interest. Ex. 4-A & B. Although the May 20, 2026 objection deadline has not yet passed, to date, there have been no objections to the maximum fee and expense amounts set forth in the notices. ¶13.[8]

For the reasons discussed herein, Co-Lead Counsel respectfully submit that their requested fee is fair and reasonable under the applicable legal standards. Co-Lead Counsel also respectfully submit that the Litigation Expenses for which they seek payment were reasonable and necessary for the successful prosecution of the Action and that the request pursuant to the PSLRA for reimbursement to Lead Plaintiffs for the time they dedicated to the Action on behalf of the Settlement Class is likewise reasonable and appropriate. Accordingly, Co-Lead Counsel respectfully

---

[7] *See* Declaration of Morgan Kimball submitted on behalf of the Court-authorized Claims Administrator Epiq Class Action and Claims Solutions ("Epiq"), (Ex. 4), ¶13.

[8] Co-Lead Counsel will address any objections received in their reply to be filed on or before June 3, 2026.

request that their Motion for Attorneys' Fees and Litigation Expenses be granted in full.

## ARGUMENT

### I. CO-LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND SHOULD BE APPROVED

#### A. Plaintiffs' Counsel Are Entitled to a Reasonable Fee from the Common Fund

The propriety of awarding attorneys' fees from a common fund is well established. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *9 (D.N.J. July 29, 2013) ("[W]e agree with the long line of common fund cases that hold that attorneys whose efforts create, discover, increase, or preserve a common fund are entitled to compensation.") (alteration in original).

Further, as courts recognize, in addition to providing just compensation, awards of fair attorneys' fees from a common fund ensure that "competent counsel continue[s] to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000); *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide

appropriate financial incentives."). Indeed, the Supreme Court has emphasized that private securities actions, such as this Action, provide "a most effective weapon in the enforcement" of the securities laws and are "a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 373-74 (S.D.N.Y. 2002) ("fair and reasonable fee awards…[encourage] private attorneys to prosecute class actions on a contingent basis pursuant to the federal securities laws on behalf of those who otherwise could not afford to prosecute").

### B. The Court Should Award a Reasonable Percentage of the Common Fund

An award of attorneys' fees and the method used to determine that award are "within the discretion of the court." *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at *6 (D.N.J. Feb. 9, 2010). In the Third Circuit, the percentage-of-recovery method for evaluating fees is "generally favored" in cases, such as this one, involving a settlement that creates a common fund. *See Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 330 (3d Cir. 2011) (favoring percentage of recovery method "because it allows courts to award fees from the [common] fund 'in a manner that rewards counsel for success and penalizes it for failure'"); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). The percentage-of-recovery method is almost universally preferred in common fund cases because it closely aligns the

interests of counsel and the class. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005); *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *24 (D.N.J. Nov. 15, 2016).[9] In addition, the Third Circuit recommends that the percentage award be "cross-check[ed]" against the lodestar method to ensure its reasonableness. *See Sullivan*, 667 F.3d at 330; *Harshbarger v. Penn Mut. Life Ins. Co.*, 2017 WL 6525783, at *2 (E.D. Pa. Dec. 20, 2017) ("The reasonableness of attorneys' fee awards in common fund cases . . . is generally evaluated using a [percentage of recovery] approach followed by a lodestar cross-check.").

### C. The Requested Fee Is Reasonable Under Both the Percentage-of-Recovery Method and the Lodestar Method

#### 1. The Requested Fee Is Reasonable Under the Percentage-of-Recovery Method

The requested 25% fee is reasonable under the percentage-of-recovery method. While there is no absolute rule, courts in this Circuit have observed that fee awards generally range from 19% to 45% of the settlement fund (*see In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995)), and most commonly range from 25% to 33% of the recovery. *See In re Ins. Brokerage*

---

[9] The use of the percentage-of-recovery method also comports with the language of the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

*Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery."); *La. Mun. Police Emps.' Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) (same).

A review of recent attorneys' fees awarded in securities class actions in this Circuit strongly supports the reasonableness of a 25% fee. *See, e.g.*, Order, *In re EQT Corp. Sec. Litig.*, No. 2:19-cv-00754-RJC, slip op. at 2, ECF No. 566 (W.D. Pa. Nov. 4, 2025) (awarding 28% of $167.5 million settlement) (Ex. 8);[10] Order, *Chabot v. Walgreens Boots Alliance, Inc.*, No. 1:18-cv-02118-JPW, slip op. at 2, ECF No. 327 (M.D. Pa. Feb. 7, 2024) (awarding 30% of $192.5 million settlement) (Ex. 8); Order, *Howard v. Arconic Inc.*, No. 2:17-cv-01057-MRH, slip op. at 1, ECF No. 253 (W.D. Pa. Aug. 9, 2023) (awarding 33⅓% of $74 million settlement) (Ex. 8); Order, *Odeh v. Immunomedics, Inc.*, No. 2:18-cv-17645-ESK, slip op at 1, ECF No. 286 (D.N.J. June 15, 2023) (awarding 29.5% of $40 million settlement) (Ex. 8); *In re Advance Auto Parts, Inc. Sec. Litig.*, 2022 WL 20806294, at *1 (D. Del. June 13, 2022) (awarding 25% of $49.25 million settlement); Order, *Pelletier v. Endo Int'l PLC*, No. 2:17-cv-05114, slip op. at 1, ECF No. 417 (E.D. Pa. Apr. 8, 2022) (awarding 25% of $63.4 million settlement) (Ex. 8); *In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *8 (D. Del. Nov. 19, 2018) (awarding 28% of $210 million

[10] Unreported "slip" opinions are submitted herewith in a Compendium of Cases, in alphabetical order. *See* Ex. 8.

settlement); Order, *San Antonio Fire & Police Pension Fund v. Dole Food Co.*, No. 1:15-cv-1140-LPS, slip op. at 2, ECF No. 100 (D. Del. July 18, 2017) (awarding 25% of $74 million settlement) (Ex. 8); *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 2013 WL 12153597, at *1 (D.N.J. Jan. 30, 2013) (awarding 27.5% of $164 million settlement).

Co-Lead Counsel's fee request is also consistent with fees awarded in other Circuits. *See, e.g.*, Order, *Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, No. 1:15-cv-3187-SJC, slip op. at 2, ECF No. 526 (N.D. Ill. Oct. 11, 2022) (awarding 27.5% of $105 million settlement) (Ex. 8); Order, *In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR, slip op. at 1-2, ECF No. 400 (C.D. Cal. Mar. 9, 2021) (awarding 25% of $154.7 million settlement) (Ex. 8); Order, *Knurr v. Orbital ATK, Inc.*, No. 1:16-cv-01031-TSE-MSN, slip op. at 2, ECF No. 462 (E.D. Va. June 7, 2019) (awarding 28% of $108 million settlement) (Ex. 8); Order, *N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, No. 1:08-cv-5653-PAC, slip op. at 2, ECF No. 277 (S.D.N.Y. May 10, 2016) (awarding 28% of $110 million settlement) (Ex. 8); *Local 703 v. Regions Fin. Corp.*, 2015 WL 5626414, at *1 (N.D. Ala. Sept. 14, 2015) (awarding 30% of $90 million settlement).

Thus, Co-Lead Counsel respectfully submit that the 25% fee request is reasonable—and well within the range of fees customarily awarded in these types of cases.

### 2. The Reasonableness of the Requested Fee Is Confirmed by a Lodestar Cross-Check

As noted above, the Third Circuit recommends that district courts use counsel's lodestar as a "cross-check" to determine whether a requested fee is reasonable. *See Sullivan*, 667 F.3d at 330; *In re Suboxone Antitrust Litig.*, 2023 WL 8437034, at *17 (E.D. Pa. Dec. 4, 2023). "The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method." *Rite Aid*, 396 F.3d at 306. "Conversely, where the ratio of the [percentage-of-recovery] to the lodestar is relatively low, the cross-check can confirm the reasonableness of the potential award under the [percentage] method." *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *33 (D.N.J. Oct. 1, 2013).

In evaluating the lodestar for cross-check purposes, the Court need not engage in a "full blown lodestar inquiry." *In re AT&T*, *Corp*. 455 F.3d 160, 169 n.6 (3d Cir. 2006). Indeed, where there have been no objections to the lodestar calculation, "a full-blown lodestar analysis is an unnecessary and inefficient use of judicial resources." *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 592 (D.N.J. 2010), *rev'd*, 681 F. 3d 170 (3d Cir. 2012); *see also Henderson v. Volvo Cars of N. Am., LLC*, 2013 WL 1192479, at *15 (D.N.J. Mar. 22, 2013) (noting court "is not required to engage in [lodestar] analysis with mathematical precision of bean counting and

may rely on summaries submitted by the attorneys" without "scrutinize[ing] every billing record").

Through May 4, 2026, Plaintiffs' Counsel have devoted more than 36,442 hours to the prosecution of this Action. ¶157. A breakdown of this time by litigation task is provided in Plaintiffs' Counsel's supporting declarations. Exs. 5-B through 7-B. Plaintiffs' Counsel's lodestar—which is derived by multiplying the hours spent on the litigation by each firm's 2025 hourly rates for attorneys, paralegals, and support staff—is $20,488,921.50. *Id.*[11]

The hourly rates of Plaintiffs' Counsel here range from $805 to $1300 for partners, $350 to $975 for associates and counsel, $355 to $500 for staff attorneys and contract attorneys. *See* Exs. 5-A; 6-A; 7-A.[12] Co-Lead Counsel believe these hourly rates fall within the range of reasonable rates for attorneys working on sophisticated class action litigation in this Circuit. *See*, *e.g.*, *In re Remicade Antitrust*

---

[11] The Supreme Court has approved the use of current hourly rates to calculate the lodestar as a means of compensating for the delay in receiving payment, inflation, and the loss of interest. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).

[12] By way of comparison, one of the Defendants' Counsel firms in the Action, Quinn Emanuel Urquhart & Sullivan, LLP, reported hourly rates as high as $2,390 for a partner and $1,580 for an associate in a recent fee application. *See In re: Saga Formations, Inc.*, Case No. 24-11161 (BLS), ECF No. 1171 at 4 (D. Del. Bank. April 16, 2026). *See also* Exhibit 10, submitted herewith, for a table compiled by Labaton of hourly rates for defense firms from fee applications submitted by such firms nationwide, primarily in bankruptcy proceedings, in 2025. The analysis shows that across all types of attorneys, Plaintiffs' Counsel's hourly rates here are consistent with, or lower than, the firms surveyed.

*Litig.*, 2023 WL 2530418, at *28 (E.D. Pa. Mar. 15, 2023) (class counsel hourly rates ranging from $115 to $1,325 "fall well within the range of rates charged by other attorneys in this market"); *Wilmington Tr.*, 2018 WL 6046452, at *10 n.4 (hourly rates from $295 to $1,250 reasonable).[13]

Accordingly, the requested 25% fee (*i.e.*, $19.5 million plus interest), represents a negative multiplier of approximately 0.95 on Plaintiffs' Counsel's lodestar. ¶157. This multiplier falls at the bottom end of the range of lodestar multipliers regularly awarded by courts in this Circuit. *See Flynn-Murphy v. Jaguar Land Rover N. Am., LLC*, 2025 WL 3771284, at *17 (D.N.J. Dec. 31, 2025) (finding (over objection) a 2.15 multiplier to be "within the range of multipliers used by Courts within this Circuit"); *Suboxone*, 2023 WL 8437034, at *18 ("The Third Circuit has recognized that lodestar multipliers from one to four 'are frequently awarded' in class cases."); *Stevens*, 2020 WL 996418, at *13 (noting multipliers "ranging from 1 to 8 are often used in common fund cases"); *Bodnar v. Bank of Am., N.A.*, 2016 WL 4582084, at *6 (E.D. Pa. Aug. 4, 2016) (finding 4.69 multiplier "appropriate and reasonable").

---

[13] The fee and expense declarations submitted on behalf of KTMC, Labaton, and Carella Byrne (*see* Exs. 5-D, 6-E, and 7-D, submitted herewith) include a description of the legal background and experience of their attorneys, which support the rates submitted. Plaintiffs' Counsel's rates are fair and reasonable for this legal market.

Thus, the lodestar cross-check firmly supports the reasonableness of the 25% fee request.

**D. The Factors Considered by Courts in the Third Circuit Confirm that the Requested Fee Is Fair and Reasonable**

Under Third Circuit law, courts have considerable discretion in setting an appropriate percentage-based fee award in common fund cases. *See Gunter*, 223 F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees."). Nonetheless, in exercising that broad discretion, the Third Circuit has noted that a district court should consider the following factors in determining a fee award:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009); *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998). These factors "need not be applied in a formulaic way. . . and in certain cases, one factor may outweigh the

rest." *Diet Drugs*, 582 F.3d at 545; *Schuler v. Medicines Co.*, 2016 WL 3457218, at *9 (D.N.J. June 24, 2016). Here, each of these factors supports a 25% fee.

### 1. The Size of the Common Fund Created and the Number of Beneficiaries

The result achieved is a major factor to be considered in making a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re ViroPharma Inc. Sec. Litig.*, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016).

Here, Plaintiffs' Counsel, on behalf of Lead Plaintiffs, secured a Settlement that provides for a substantial and certain payment of $78 million. The Settlement provides a very favorable recovery when viewed both in the aggregate and as a proportion of estimated damages. Notably, the Settlement represents more than 4.5 times the median federal securities class action settlement amount in 2025 and almost double the average settlement value.[14] Based on expert estimates employing various reasonable assumptions, the Settlement Class's potential recoverable damages in this Action are between approximately $1.2 billion to $2.8 billion. ¶¶12, 112-13. The Settlement thus represents approximately 2.8% to 6.5% of this damages range. While each securities class action reflects its own unique risks, the recovery

[14] *See* NERA Report, at 1 (noting average settlement value in 2025 was $40 million and median settlement value was $17 million (an increase of 21% from 2024 and a 10-year high)), Ex. 3.

obtained in this Action is in line with recoveries obtained in other securities cases and approved by courts. *See In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *8 (noting "Third Circuit median recovery of 5% of damages in class action securities litigation"); *Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) ("a 3% recovery is within the range of the percentages of recovery approved in other securities class action settlements"); *Schuler*, 2016 WL 3457218, at *8 (4% recovery "falls squarely within the range of previous settlement approvals"); *In re Hemispherx Biopharma, Inc., Sec. Litig.*, 2011 WL 13380384, at *6 (E.D. Pa. Feb. 14, 2011) (similar and collecting cases).

This recovery will benefit a large number of investors. To date, Epiq has mailed and/or emailed 126,227 Postcard Notices to potential Settlement Class Members and Nominees. *See* Ex. 4, ¶13. While the claim-submission deadline is not until May 26, 2026, a large number of Settlement Class Members are expected to submit Claims in order to be eligible to receive a payment from the Net Settlement Fund.

### 2. Objections from Settlement Class Members to Date

The notices to the Settlement Class state that Co-Lead Counsel will apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund. Ex. 4-A & B. The notices also advised Settlement Class Members that they can object to the fee request and set forth the procedures for doing so. *Id.* While the

deadline for objecting has not yet passed, not a single objection to the fee and expense request has been received. ¶13; *see Cendant*, 264 F.3d at 235 ("[t]he vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement").

The fee and expense request also has the full support of the Lead Plaintiffs. *ViroPharma Inc. Sec. Litig.*, 2016 WL 312108, at *15 ("Where the [l]ead [p]laintiff approves the [l]ead [p]laintiff's counsel's request[ed] fee award – as [l]ead [p]laintiff does here – the Court should afford the fee requested a ***presumption of reasonableness***.").

### 3. The Skill and Efficiency of the Attorneys Involved

Plaintiffs' Counsel have achieved a favorable outcome for the benefit of the Settlement Class. *See In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 132 (D.N.J. 2002) ("[t]he single clearest factor reflecting the quality of class counsels' services to the class are the results obtained"). The recovery obtained is the direct result of the significant efforts of skilled attorneys and staff working at their direction who possess substantial experience in the prosecution of complex securities class actions. *See* Ex. 5-D (KTMC resume); Ex. 6-E (Labaton resume); Ex. 7-D (Carella Byrne resume).

Plaintiffs' Counsel achieved the Settlement through the tenacious prosecution of Lead Plaintiffs' claims on highly contested issues. Their efforts included:

- conducting a detailed investigation into the Settlement Class's claims, including interviews with approximately 90 former Catalent employees and the review and analysis of publicly available information such as Catalent's SEC filings, press releases, news articles, and other public statements issued by or concerning Defendants; and research reports issued by investment analysts concerning Catalent (Joint Decl. ¶21);

- preparing the detailed Amended Complaint (*id.* ¶¶22-26);

- briefing (and defeating in part) Defendants' motion to dismiss the Complaint (*id.* ¶¶27-33);

- conducting comprehensive fact and expert discovery, including taking or defending 17 depositions (and preparing to take 11 more); analyzing approximately 3.8 million pages of documents produced by Defendants and third parties; and obtaining and/or serving extensive interrogatories and requests for admission (*id.* ¶¶39-62);

- consulting with multiple industry and economic experts at various stages of the case and assisting their market efficiency expert, Chad Coffman, CFA, of Peregrine Economics, with the preparation of his report in support of class certification and in preparation for his deposition (*id.* ¶¶ _-_);

- litigating several discovery disputes before Magistrate Judge Quinn (*id.* ¶¶63-66);

- moving for class certification (*id.* ¶¶67-73); and

- preparing for and engaging in settlement negotiations with Defendants, including extensive mediation briefing and a formal mediation session with Mr. Murphy (*id.* ¶¶74-82).

These significant efforts laid the groundwork for Lead Plaintiffs' resolution of the case. In addition, the evident preparedness, experience, and skill of Plaintiffs'

Counsel to litigate the case through trial and appeals provided necessary leverage to secure the favorable recovery for the Settlement Class's benefit.

The quality of opposing counsel is also relevant in evaluating the services rendered by Plaintiffs' Counsel. *See, e.g.*, *Ikon Off. Sols., Inc.*, 194 F.R.D. 166, 195 (E.D. Pa. 2000); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."). Here, Plaintiffs' Counsel were opposed by Quinn Emanuel Urquhart & Sullivan, LLP, a prominent, nationally recognized law firm with deep experience and skill in the securities litigation arena. The ability of Plaintiffs' Counsel to obtain a favorable outcome for the Settlement Class despite this formidable opposition further confirms the quality of their representation. *See Wilmington Tr.*, 2018 WL 6046452, at *8 ("Plaintiffs' Counsel's ability to successfully litigate against and negotiate with [Defendants' Counsel] further shows Plaintiffs' Counsel's legal prowess.").

### 4. The Complexity and Duration of the Litigation

"Securities litigation is tough stuff." *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2017 WL 4167440, at *8 (E.D. Pa. Sept. 20, 2017) (approving counsel's fee request). Indeed, securities litigation is regularly acknowledged to be particularly complex and expensive, usually requiring expert testimony on issues including loss causation and damages. *See, e.g.*, *id.*; *Dartell v. Tibet Pharms, Inc.*,

2017 WL 2815073, at *10 (D.N.J. June 29, 2017) (approving counsel's one-third fee request and noting that "due to the complexity and nature of securities litigation, any further litigation would likely be time consuming as well as expensive due to the need for experts"); *In re Genta Sec. Litig.*, 2008 WL 2229843, at *3 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive."); *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *3 (D.N.J. Nov. 28, 2007) ("[R]esolution of [damages issues] would likely require extensive and conceptually difficult expert economic analysis. . . . Trial on [these] issues would [be] lengthy and costly to the parties").

Plaintiffs' Counsel prosecuted this Action for nearly three years and overcame numerous obstacles to defeat, in part, Defendants' motion to dismiss. The specific litigation risks Plaintiffs' Counsel faced in the Action—including overcoming Defendants' challenges to Lead Plaintiffs' Motion for Class Certification and in proving falsity, scienter, loss causation, and the maximum alleged damages—are fully addressed in the Joint Declaration (§VII.) and in the accompanying Settlement Memorandum (§ I.C.2).

Had this Action continued, Lead Plaintiffs, through Co-Lead Counsel, would have been required to carry their case through the completion of fact discovery (including additional depositions) and expert discovery, as well as a potential Rule 23(f) petition had Lead Plaintiffs succeeded on their Motion for Class Certification

(which was pending at the time of settlement). After the close of expert discovery, Defendants would likely have moved for summary judgment, which would have to be briefed and argued. Before trial, a pre-trial order would have to be prepared, proposed jury instructions submitted, and motions *in limine* filed and argued. Substantial time and expense would need to be expended in preparing the case for trial, and the trial itself would be expensive and highly uncertain.

Moreover, even if the jury returned a favorable verdict after trial, it is likely that any verdict would be the subject of post-trial motions and a risky appellate process. Indeed, in complex securities cases, "[e]ven a victory at trial is not a guarantee of ultimate success." *Warner Commc'ns*, 618 F. Supp. at 747-48 ("If [the class representative was] successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself."). Considering the magnitude, expense, complexity and risks of this securities case—especially when compared against the significant and certain recovery achieved by the Settlement—Co-Lead Counsel's 25% fee request is reasonable.

#### 5. The Risk of Non-Payment

Plaintiffs' Counsel undertook this Action on a contingent basis—fully assuming the risk that the case might yield no or very little recovery and leave

Plaintiffs' Counsel uncompensated for their time and expenses. As detailed in the Joint Declaration (*see* § VII.), Plaintiffs' Counsel faced numerous risks in this case that could have resulted in no recovery or a recovery less than the Settlement Amount. "Courts routinely recognize that the risks created by undertaking an action on a contingency fee basis militate[] in favor of approval." *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012).

Plaintiffs' Counsel have not been compensated for any of their time or expenses since the case began in February 2023. Since that time (through May 4, 2026), Plaintiffs' Counsel have expended more than 36,442 hours in the prosecution of this Action with a resulting lodestar of $20,488,921.50 and incurred $1,563,187.27 in expenses. ¶¶157, 160-171. Co-Lead Counsel will also continue to perform legal work on behalf of the Settlement Class, should the Court approve the Settlement. Co-Lead Counsel will expend additional resources assisting Settlement Class Members with their Claim Forms and working with Epiq to ensure the smooth progression of claims processing.

Moreover, any fee award has always been at risk, and completely contingent on the result achieved and on this Court's discretion in awarding fees and expenses. Unlike defense counsel—who typically receive payment on a timely and regular basis throughout a case, win or lose—Plaintiffs' Counsel bore the significant risk of

not only funding the expenses of this Action, but also that they would receive no compensation whatsoever. This factor strongly favors approval of the requested fee.

#### 6. The Significant Time Devoted to this Case by Plaintiffs' Counsel

As set forth above and detailed in the Joint Declaration, since the inception of the case, Plaintiffs' Counsel have expended substantial resources and effort towards the prosecution of this Action on behalf of the Settlement Class—over 36,000 hours. This includes, *inter alia*, working extensively with a damages expert and multiple industry experts; locating and interviewing former Catalent employees with information to support the allegations; researching complex issues of law; preparing and filing a detailed amended complaint; briefing a motion to dismiss and a motion for class certification; engaging in substantial discovery (including 17 depositions and the analysis of approximately 3.8 million pages of produced documents); and engaging in arm's-length settlement negotiations. The foregoing represents a significant commitment of time, personnel, and expenses by Plaintiffs' Counsel who took on the risk of recovering nothing for these efforts.

#### 7. The Fee Requested Is in Line with Fees Awarded in Similar Cases

As discussed above, a fee of 25% of the Settlement Fund is well within the range of fees awarded in similar cases, when considered as a percentage of the fund

(*see* Section II.C.1, *supra*) or on a lodestar basis (*see* Section II.C.2, *supra*). Accordingly, this factor strongly supports approval of the requested fee.

**8. Impact of Governmental Investigations**

The Third Circuit has advised district courts to examine whether class counsel benefited from governmental investigations or enforcement actions concerning the alleged wrongdoing, because this can indicate whether or not counsel should be given full credit for obtaining the value of the settlement fund for the class. *See Prudential*, 148 F.3d at 338. Here, there was no governmental civil or criminal investigation or prosecution of the alleged securities fraud that produced helpful testimony, admissions, or findings and, accordingly, the entire value of the Settlement is attributable to the efforts undertaken by Plaintiffs' Counsel in this Action. This fact further supports the reasonableness of the requested fee. *See, e.g.*, *AT&T*, 455 F.3d at 173.

**9. The Requested Fee Is in Line with Contingent Fee Arrangements Negotiated in Non-Class Litigation**

A 25% fee is also consistent with typical attorneys' fees in non-class contingent fee cases. *See Ocean Power*, 2016 WL 6778218, at *29. If this were an individual action, the customary contingent fee would likely range between 30 and 40 percent of the recovery. *See, e.g.*, *id.*; *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any

recovery"); *Blum v. Stenson*, 465 U.S. 886, 903 n.* (1984) (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."). Co-Lead Counsel's requested fee of 25% is fully consistent with these private standards.

Accordingly, the application of the Third Circuit factors makes clear that Co-Lead Counsel's fee request is fair and reasonable.[15]

## II. PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Co-Lead Counsel also respectfully request that this Court approve payment of $1,563,187.27 for the expenses that Plaintiffs' Counsel incurred in connection with this Action. All of these expenses, which are set forth in declarations submitted by Plaintiffs' Counsel, were reasonably necessary for the prosecution and settlement of this Action. Counsel in a class action are entitled to recover expenses that were "adequately documented and reasonable and appropriately incurred in the prosecution of the class action." *ViroPharma*, 2016 WL 312108, at *18; *accord In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001);

---

[15] Another factor the Third Circuit asks district courts to consider is whether the settlement contains "any innovative terms." *Diet Drugs*, 582 F.3d at 541; *Prudential*, 148 F.3d at 339-40. This Settlement does not and Co-Lead Counsel believe that an all-cash recovery is the best remedy for the injury suffered by the Settlement Class. In these circumstances, the lack of innovative terms "neither weighs in favor nor detracts from a decision to award attorneys' fees." *In re Processed Egg Prods. Antitrust Litig.*, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012).

*Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at *12 (D.N.J. May 3, 2022).

The expenses for which Co-Lead Counsel seek payment are the types of expenses that are necessarily incurred in litigation and routinely paid by clients in non-contingent cases. These expenses include, among others, document management costs, expert/consultant fees, online research, court reporting and transcripts, travel-related expenses, photocopying, postage/mail services, and mediation fees. *See* Ex. 5-C; Ex. 6-C & D; Ex. 7-C. These expense items are not duplicated in Plaintiffs' Counsel's hourly rates. *See* Ex. 5, ¶9; Ex. 6, ¶9; Ex. 7, ¶9.

The largest expense—totaling $934,223.29 or approximately 60% of Plaintiffs' Counsel's total expenses—was for the retention of Lead Plaintiffs' experts and consultants. ¶163. As detailed in the Joint Declaration, Co-Lead Counsel worked with industry and economic experts on merits and discovery issues. *Id*. For example, in connection with class certification, Co-Lead Counsel retained Mr. Coffman to opine on loss causation and market efficiency matters, and in connection with settlement, Mr. Coffman, along with his team at Peregrine Economics, provided analyses of aggregate damages and assisted in drafting the proposed Plan of Allocation. Co-Lead Counsel also consulted with additional experts on topics concerning accounting matters, Sarbanes Oxley compliance and internal controls, and FDA quality control practices. These experts were critical to the prosecution and resolution of the Action as their expertise allowed Co-Lead Counsel to fully

understand and frame the issues, gather relevant evidence, make a realistic assessment of provable damages, structure resolution of the claims, and develop a fair and reasonable plan for allocating the Settlement proceeds to the Settlement Class. *Id*. In addition, Mr. Coffman submitted an expert report and was deposed in connection with Lead Plaintiffs' Motion for Class Certification. *Id.*

The second largest component of Plaintiffs' Counsel's expenses—*i.e.,* $360,890.75, or roughly 23% of the total expenses—reflects the costs for an outside vendor to host the document database that enabled Plaintiffs' Counsel to effectively and efficiently search and analyze the approximately 3.8 million pages of documents produced by Defendants and third parties. ¶164. The ability to identify, code, search, and analyze documents to be utilized as exhibits at depositions, and eventually at summary judgment and trial, was of the utmost importance to the development of the record of evidence in the Action.

In addition to the foregoing expenses, Plaintiffs' Counsel also incurred: (i) $37,500.00 in connection with the Parties' settlement negotiations with Mr. Murphy; (ii) $47,385.00 for individual counsel hired to represent some of the confidential witnesses cited in the Complaint, in connection with responding to Defendants' discovery requests and requests for depositions; (iii) $34,433.27 for online factual and legal research; (iv) $56,091.99 for work-related transportation, hotel, and meal expenses; and (v) $71,187.31 for court reporters, videographers, and transcripts in

connection with the numerous depositions in the Action. *See* Ex. 5-C; Ex. 6-C & D; Ex. 7-C. The other expenses are the types of routine litigation expenses incurred by counsel in complex commercial litigation.

The notices informed recipients that Co-Lead Counsel would seek reimbursement of Litigation Expenses (which might include reimbursement of the reasonable costs incurred by Lead Plaintiffs as discussed below) in an amount not to exceed $2 million. The total amount of expenses requested is below the amount set forth in the notices and, to date, no objections to the maximum expense figure have been received. As such, payment of the requested Litigation Expenses should be approved.

## III. LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS UNDER THE PSLRA

Co-Lead Counsel also seek an aggregate award of $57,323.00 for Lead Plaintiffs, directly related to their representation of the Settlement Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Here, MPERS and SEB seek awards—in the amounts of $23,950.00 and $33,373.00, respectively—based on the time dedicated by their representatives in furthering and supervising the Action. Ex. 1, ¶¶8-10; Ex. 2, ¶¶8, 14-16.

Lead Plaintiffs have actively and diligently pursued the Settlement Class's claims for nearly three years. As set forth in their declarations filed herewith, both SEB and MPERS: (i) communicated regularly with Co-Lead Counsel regarding case developments and strategy; (ii) reviewed briefs, pleadings, and orders in the Action; (iii) supervised their production of discovery, including overseeing electronic searches of custodial files and in response to Defendants' document requests; (iv) responded to written discovery, including interrogatories; (v) consulted with Co-Lead Counsel regarding their review and assessment of the discovery obtained from Defendants and third parties; and (vi) prepared for and testified at depositions in connection with class certification. *See* Ex. 1, ¶¶4-5, 9; Ex. 2, ¶¶5-8, 14-16. In addition, both SEB and MPERS consulted with Plaintiffs' Counsel concerning the Parties' settlement negotiations, including the formal mediation with Mr. Murphy in December 2025. *See id*. These efforts required Lead Plaintiffs' representatives to dedicate considerable time and resources to the Action—time and resources that they would have otherwise devoted to their regular duties at SEB and MPERS. *See* Ex. 1, ¶8; Ex. 2, ¶¶14-16.

More specifically, SEB's requested award is based on 305 hours spent in connection with the Action by its employees, including SEB's Head of Legal, Financial Crime Prevention & Regulatory Office, Legal Counsel, Portfolio Manager, and Head of Legal. *See* Ex. 2, ¶16. MPERS's requested award is based on

103 hours spent in connection with the Action by its representatives, including Special Assistant Attorney General Ryal, Special Assistant Attorney General Tricia Beale, and CIO Charles Nielsen. *See* Ex. 1, ¶¶ 5, 9. *See Wilmington Tr.*, 2018 WL 6046452, at *10 (awarding institutional lead plaintiffs their costs related to time spent on case where "their employees took an active role in the litigation, including reviewing significant pleadings and briefs, communicating regularly with Lead Counsel, authorizing settlement discussions, monitoring the progress of settlement negotiations, and approving the settlements"); *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007) (granting PSLRA awards where, as here, "the tasks undertaken by employees of [l]ead [p]laintiffs reduced the amount of time those employees would have spent on other work and these tasks and rates appear reasonable to the furtherance of the litigation").

Courts in this Circuit routinely approve similar awards. *See, e.g.*, *In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 WL 9447623, at *29 (D.N.J. Dec. 9, 2008) (awarding $150,000 to lead plaintiffs); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 772 F.3d 125, 132-33 (2d Cir. 2014) (affirming $453,003.04 award to representative plaintiffs for time spent by employees); *Schering-Plough*, 2013 WL 5505744 (awarding aggregate of $109,865 to group of four plaintiffs); Order, *In re Equifax Inc. Sec. Litig.*, No. 1:17-cv-03463-TWT, slip op. at 4, ECF No. 179 (N.D. Ga. June 26, 2020) (awarding $121,375 to lead plaintiff) (Ex. 8); *In re Marsh &*

*McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding $144,657 to New Jersey Attorney General's Office and $70,000 to certain Ohio pension funds).

Accordingly, the awards sought by Lead Plaintiffs are reasonable and justified and should be granted.

## CONCLUSION

For the reasons stated herein and in the Joint Declaration, Co-Lead Counsel respectfully request that the Court award: (i) attorneys' fees in the amount of 25% of the Settlement Fund; (ii) $1,563,187.27 for Plaintiffs' Counsel's reasonable expenses (plus interest); and (iii) an aggregate amount of $57,323.00 for Lead Plaintiffs for their efforts in representing the Settlement Class in the Action. A proposed order will be submitted with Co-Lead Counsel's reply papers, after the objection deadline has passed.

Dated: May 6, 2026

Respectfully submitted,

*/s/ Joseph N. Cotilletta*

**LABATON KELLER SUCHAROW LLP**
Christine M. Fox (*pro hac vice*)
Joseph N. Cotilletta
Adam M. Federer (*pro hac vice*)
Emily N. Gault (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
cfox@labaton.com
afederer@labaton.com
egault@labaton.com

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Joshua E. D'Ancona
Matthew L. Mustokoff (*pro hac vice*)
Jamie M. McCall (*pro hac vice*)
David A. Bocian
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
jdancona@ktmc.com
mmustokoff@ktmc.com
jmccall@ktmc.com
dbocian@ktmc.com

*Co-Lead Counsel for Lead Plaintiffs SEB Funds AB and Public Employees' Retirement System of Mississippi, and Proposed Settlement Class*

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
James E. Cecchi
Michael A. Innes
Kevin G. Cooper
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com
minnes@carellabyrne.com
kcooper@carellabyrne.com

*Liaison Counsel for Settlement Class*

**DAVIDSON BOWIE, PLLC**
John L. Davidson (*pro hac vice*)
1062 Highland Colony Parkway
200 Concourse, Suite 275
Ridgeland, MS 39157
Telephone: (601) 932-0028
jdavidson@dbslawfirm.net

*Additional Counsel for Lead Plaintiff Public Employees' Retirement System of Mississippi*

# CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing to be electronically filed with the CM/ECF system. Those attorneys registered with the Electronic Filing System will receive notice of this filing by ECF and email. I further certify that a courtesy copy of this filing will be served upon the Court.

Dated: May 6, 2026

*/s/ Joseph N. Cotilletta*

**LABATON KELLER SUCHAROW LLP**
Joseph N. Cotilletta
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jcotilletta@labaton.com

*Co-Lead Counsel for Lead Plaintiffs and Proposed Settlement Class*